UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JESSICA BERGIN,<br><br>Plaintiff,<br><br>v.<br><br>NEW YORK STATE UNIFIED COURT SYSTEM,<br><br>Defendant. | **Case No. 22-CV-5264**<br><br>**COMPLAINT**<br><br>**ECF CASE** |

COMES NOW PLAINTIFF Jessica Bergin, by her undersigned attorneys, for her complaint against Defendant New York State Unified Court System, and alleging as follows:

## NATURE OF THE ACTION

1. This is an action for religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, on the grounds that Defendant failed to reasonably accommodate Plaintiff's sincerely held religious objections to a mandatory COVID-19 vaccination policy, wrongly denied her requested religious exemption, and as a result illegally terminated her employment. This is not an action challenging the legality of the policy itself. By this action, Plaintiff seeks all legal and equitable relief available, including back pay, front pay/reinstatement, out of pocket costs, compensatory damages, attorney's fees and costs, and appropriate injunctive relief. Plaintiff demands trial by jury.

## PARTIES

2. Plaintiff **Jessica Bergin** is an adult resident of Staten Island, New York. At all relevant times, Bergin was an "employee" of Defendant within the meaning of Title VII.

3. Defendant **New York State Unified Court System (UCS)** is the judicial branch of the government of the State of New York. At all relevant times, UCS had more than 500 employees. At all relevant times, UCS was Plaintiff's "employer" within the meaning of Title VII.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 2000e-5(f)(3) (Title VII).

5. This Court has venue over this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) and 42 U.S.C. § 2000e-5(f)(3) (Title VII), because Defendant resides in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## ADMINISTRATIVE EXHAUSTION

6. Plaintiff properly exhausted her administrative remedies under Title VII prior to filing this action.

7. On January 28, 2022, within 180 days of the alleged discriminatory acts, Bergin filed a charge of discrimination against UCS with the U.S. Equal Employment Opportunity Commission. The charge was assigned charge number 520-2022-03318.

8. On June 21, 2022, the U.S. Department of Justice (to which agency the charge was assigned because it involved a government respondent) issued a Notice of Right to Sue, a copy of which is attached hereto as Exhibit A.

9. This action was filed within 90 days of Bergin's receipt of the Notice of Right to Sue.

**ALLEGATIONS**

10. Bergin was employed by UCS from July 14, 2016, until her termination on April 7, 2022.

11. Bergin was deemed unfit for service and not allowed to report to work beginning January 10, 2022.

12. Bergin was a full-time Court Officer, most recently assigned to the Richmond Criminal Court, 26 Central Avenue, Staten Island, New York, 10301.

13. At all relevant times, Bergin was qualified for her position and performed her duties in a satisfactory manner.

14. On September 10, 2021, employees were notified by official memorandum that "the Unified Court System will require all judges and non-judicial personnel to be vaccinated by September 27, 2021, unless otherwise approved for an exemption due to medical reasons or sincerely held religious beliefs."

15. In a section with the heading Exemptions, the memorandum stated, in relevant part, that "[e]exemptions to the mandatory vaccination requirement will be considered for . . . employees with sincerely held religious beliefs and practices that prohibit them from receiving a COVID-19 vaccine." The memorandum further stated that "[a]pplications for religious exemption must contain the employee's

written, signed and notarized statement detailing the religious basis for his/her objection to COVID-19 vaccination and the religious principle(s) that guide the objections to COVID-19 vaccination."

16. The memorandum set September 27, 2021, as the deadline for submitting a request for an exemption, using the prescribed form, which was to be uploaded through the employee portal.

17. The memorandum stated that "[e]mployees who timely file a request for exemption will be subject to the Mandatory Testing Program while their request is being reviewed. Those employees who are granted a medical or religious exemption to vaccination will be subject to the Mandatory Testing Program during the specified exemption period."

18. The Mandatory Testing Program had been implemented starting September 7, 2021, and only applied to non-vaccinated personnel. The testing was done on a weekly basis.

19. Because Bergin has not taken the COVID-19 vaccine, she participated in the weekly COVID-19 testing, which was always negative.

20. Bergin is a baptized Christian.

21. On September 26, 2021, Bergin submitted a request for a religious exemption to the UCS COVID-19 vaccination policy, using the prescribed forms and following the prescribed procedure.

22. Bergin's three-page personal statement explained that "I am sincerely devoted to God, His Word and the Holy Trinity"; that "I have been a practicing, devoted servant of Christ my entire life"; "I have a right of conscience to choose what enters my body"; that being forced to take the COVID-19 vaccine "disobeys my religious faith"; that "I try to live each day as pure as possible and most of my

consumption is organic or from the earth"; that "I strongly believe in the sanctity of human life" and "cannot, with a clear conscience, take these vaccines as it has been confirmed that they have been developed using ingredients and methods, which unequivocally violate my ethics"; and that "after extensive prayer, and moral and spiritual counseling, my family and I have decided not to put anything into our bodies against our sincere beliefs."

23. Bergin supported her personal statement with an extensive list of scriptural citations and a personalized, signed letter from her pastor. The letter stated that "the following teaching of International Christian Center demonstrates the principled religious basis on which Jessica Bergin holds a conscientious religious objection to the current Covid-19 vaccines" and specifically noted that "International Christian Center supports its religious belief [that] receiving a vaccine that uses aborted fetal cell lines in the development or testing of the vaccine violates their sincerely held religious beliefs regarding the sanctity and protection of pre-born children."

24. On November 8, 2021, the "UCS Vaccination Exemption Committee" sent Bergin a form letter and questionnaire requesting "more information before it can make a final determination," including about various other medications and vaccines that were allegedly developed using fetal cell lines that Bergin may have taken in the past.

25. Bergin submitted her answers to the questionnaire, in the form of another personal statement, on or about November 16, 2021. In her response, Bergin emphasized that "God created me in His image and made me a vessel of the Holy Spirit. I cannot take this vaccine as it conflicts with my sincerely held religious beliefs. Upon praying to Jesus, I was directed to His truth and divine wisdom and I

would like to exercise my religious freedoms." Bergin declined to answer the questions about her prior use of other medications and vaccines on the grounds that "[m]y family and I strive to keep our individual medical information private." She emphasized that "I do not believe I pose a direct threat as I can and will continue to abide by reasonable accommodations" and that "I do not believe my notification of sincere religious beliefs proposes a significant undue hardship." She closed by reiterating "[p]olitely, I will never stray from my sincere beliefs because it has been prayed upon between myself and my God."

26. UCS never engaged in a good faith interactive process with Bergin to determine whether or not her religious exemption should be granted.

27. Upon information and belief, the follow-up questions UCS posed to Bergin were asked of every UCS employee who applied for a religious exemption, regardless of the nature of the employee's particular religious belief or objection, and were designed to elicit information that could be used to "impeach" the employee and deny his or her request, rather than understand his or her belief and whether or not it could be accommodated.

28. On December 29, 2021, Bergin received a form letter from the UCS Vaccination Exemption Committee stating that her request for a religious exemption "was considered by the UCS Vaccination Exemption Committee and denied." No reason was given. Bergin was given until January 10, 2022, to submit proof of taking the first dose of a COVID-19 vaccine.

29. In the denial letter, UCS did not question or deny the sincerity of Bergin's religious objections to the COVID-19 vaccines.

30. In the denial letter, UCS did not state that Bergin's religious exemption was denied because it would have caused an undue hardship.

31. Upon information and belief, UCS never conducted an individualized review of Bergin's job site or job duties to determine if her religious objections to the COVID-19 vaccines could be reasonably accommodated.

32. Concerned that her exemption request may have been denied because she did not answer the questionnaire in the spaces provided (rather, Bergin submitted another personal statement), Bergin submitted another set of answers to the questionnaire on or about January 3, 2022.

33. On January 4, 2022, her supervisor received an email from UCS Administrative Counsel, Mindy M. Jeng, Esq., stating that "[t]he Committee's decisions are final, and the new request will not be considered." The email reiterated that Bergin was required "to submit proof of vaccination by January 10."

34. UCS provided no appeal process for exemption denials.

35. Bergin did not and will not get the COVID-19 vaccine.

36. On January 10, 2022, Bergin was served with a memorandum advising Bergin that she was "unfit for service because of your failure to comply with the Vaccination Mandate." Bergin was instructed "not to report to work until you have submitted the required proof of vaccination and the submission has been confirmed by your supervisor." Notably, although she was served with the memorandum when she reported to work that morning, Bergin was allowed to finish her shift on January 10.

37. It would not have caused an undue hardship on the conduct of UCS's business to grant Bergin the exemption.

38. Prior to issuance of the mandatory COVID-19 vaccination policy, all non-vaccinated employees were required to follow extensive COVID-19 safety precautions, including: temperature taken upon entering the courthouse, daily

health self-assessment forms, weekly testing, wearing a mask at all times during the workday, and social distancing protocols. All of these precautions were deemed adequate to mitigate the risk of catching or transmitting COVID-19.

39. Bergin followed these COVID-19 safety protocols conscientiously. She worked the entire pandemic period with no health or safety problems, including many overtime shifts due to staffing shortages.

40. Bergin continued to work full-time while her request for a religious exemption was pending, which did not impose any undue hardship on UCS.

41. It would not have caused an undue hardship to allow Bergin to continue to follow these or similar precautions in lieu of the mandatory COVID-19 vaccination policy.

42. Furthermore, nothing changed about the dangers of COVID-19 in the Fall 2021 to render these precautions ineffective. On the contrary, rates of hospitalizations and deaths under the “Delta” variant were declining by October 2021, and the “Omicron” variant, which became dominant in December 2021, is widely acknowledged to be *less virulent* than previous waves have been.

43. Upon information and belief, UCS has no scientific studies, data, or other objective evidence demonstrating that an employee who follows the same health and safety protocols that were in place before UCS announced its mandatory vaccination policy, but who is not vaccinated, poses an increased risk of spreading COVID-19 to courthouse staff and visitors. This is pure speculation and fear-mongering.

44. Significantly, it was well-established by the Fall 2021 that the available COVID-19 vaccines do not prevent the transmission of the virus.

45. On August 5, 2021, during a televised interview with CNN's Wolf Blitzer, CDC Director Dr. Rochelle Walensky stated that the COVID-19 vaccines "continue to work well for Delta, with regard to severe illness and death – they prevent it. But what they can't do anymore is prevent transmission."

46. This was confirmed recently by Dr. Deborah Birx, former White House Coronavirus Response Coordinator, who told Fox News on July 22, 2022, that she "knew these vaccines were not going to protect against infection. . . ."

47. Even Dr. Anthony Fauci has admitted, during an interview with Fox News on July 12, 2022, that the "vaccines – because of the high degree of transmissibility of this virus – don't protect overly well, as it were, against infection . . . ."

48. To the best of her knowledge, Bergin is aware of other employees, including fellow Court Officers at her courthouse, who were granted religious or medical exemptions to the mandatory COVID-19 vaccination policy. If other employees were granted exemptions, it would not have caused an undue hardship to grant Bergin an exemption.

49. Starting on January 10, 2022, Bergin remained on administrative leave, using her accrued paid leave days, until she was terminated effective April 7, 2022, for "fail[ing] to timely comply with the Vaccination Mandate." Her health insurance benefits were terminated at that time as well.

50. Since her termination by UCS, Bergin has diligently pursued alternative employment and further law enforcement training. She recently obtained a full-time position as a court services officer at a courthouse in New Jersey, which does not require the COVID-19 vaccine.

51. This entire experience has caused Bergin significant mental and emotional distress and financial hardship.

**COUNT ONE: VIOLATION OF TITLE VII**

52. By denying her request for a religious exemption to the mandatory COVID-19 vaccination policy and terminating her employment, Defendant violated Bergin's rights under Title VII.

53. Title VII provides, *inter alia*, that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . . ." 42 U.S.C. § 2000e-2(a)(1). Title VII further defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."

54. Accordingly, under Title VII it is unlawful "for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees . . . ." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977); *see also Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986) ("The employer violates the statute unless it 'demonstrates that [it] is unable to reasonable accommodate . . . an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business.'") (quoting 42 U.S.C. § 2000e(j)).

55. Defendant was recklessly indifferent to Bergin's federally protected rights.

56. As a direct and proximate result of Defendant's discriminatory conduct, Bergin has suffered pecuniary and non-pecuniary damages, including lost income and benefits and mental and emotional distress, for which she is entitled to an award of back pay, front pay/reinstatement, out of pocket costs, compensatory damages, attorney's fees and costs, and appropriate injunctive relief.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury as to all issues triable by jury in the above-captioned civil action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that the Court enter judgment against Defendant on her claim under Title VII, and award her the following relief:

A. Back pay in an amount to be determined at trial;

B. Front pay (or reinstatement) in an amount to be determined at trial;

C. Out of pocket costs in an amount to be determined at trial;

D. Compensatory damages in an amount to be determined at trial;

E. Pre-judgment and post-judgment interest;

F. Attorney's fees and costs;

G. Appropriate injunctive relief; and

H. Such other relief as justice may require.

***For Plaintiff Jessica Bergin:***

/s/ *Steven M. Warshawsky*

Steven M. Warshawsky
The Warshawsky Law Firm
100 South Bedford Road, Suite 340
Mount Kisco, NY 10549
Tel: (914) 514-2329
Email: smw@warshawskylawfirm.com
Web: www.warshawskylawfirm.com

Andrea Paparella
Law Office of Andrea Paparella, PLLC
(pandemic mailing address)
4 Dunlap Street
Salem, MA 01970
Tel: (617) 680-2400
Fax: (914) 462-3287
Email: amp@andreapaparella.com
Web: www.andreapaparella.com

Dated: September 2, 2022