Law Firm of Steven M. Warshawsky
www.warshawskylawfirm.com

118 North Bedford Road, Suite 100
Mount Kisco, New York 10549

Tel: (914) 864-3353
Email: smw@warshawskylawfirm.com

October 14, 2022

**VIA ELECTRONIC CASE FILING**
Hon. Brian M. Cogan
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201
(718) 613-2230

**Re: Jessica Bergin v. NYS Unified Court System**
**Case No. 22-CV-5264 (BMC) (EDNY)**

Dear Judge Cogan:

This letter is being filed jointly by counsel for the parties in the above-referenced civil action in accordance with Your Honor's initial conference order dated September 7, 2022. The initial conference is scheduled for October 21, 2022, at 10:30 a.m. via telephone.

**Plaintiff's Description of the Case**

Plaintiff asserts a claim for religious discrimination in violation of Title VII of the Civil Rights Act of 1964, on the grounds that Defendant New York State Unified Court System (UCS) failed to reasonably accommodate Bergin's sincerely held religious objections to a mandatory COVID-19 vaccination policy and as a result illegally terminated her employment. Importantly, Plaintiff is not challenging the validity of the policy itself. Rather, Plaintiff is asserting her individual right to a reasonable accommodation to the policy, which is guaranteed by Title VII. Specifically, Plaintiff is asserting the right to be exempted from the mandatory COVID-19 vaccine, which conflicts with her sincerely held religious beliefs, and to be allowed to continue her regular employment (following reinstatement) while following other appropriate health and safety protocols (testing, masking, social distancing, sanitizing, etc.).

Title VII declares it unlawful, *inter alia*, "for an employer . . . to discharge any individual . . . because of such individual's . . . religion . . . ." 42 U.S.C. § 2000e-2(a)(1). Title VII further defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 2000e(j).

Significantly, the U.S. Supreme Court has emphasized: "Title VII does not demand mere neutrality with regard to religious practices – that they be treated no worse than other practices. Rather, it gives them favored treatment, affirmatively obligating employers not 'to fail or refuse to hire or discharge any individual . . . because of such individual's' 'religious observance and practice.' . . . Title

VII requires otherwise neutral policies to give way to the need for an accommodation." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015); *see also Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986) ("The employer violates the statute unless it 'demonstrates that [it] is unable to reasonably accommodate . . . an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business.") (quoting 42 U.S.C. § 2000e(j)).

To make out a prima facie case of discriminatory failure to accommodate, a plaintiff must show (1) she held a bona fide religious belief conflicting with an employment requirement; (2) she informed her employer of this belief; and (3) she was disciplined for failing to comply with the conflicting employment requirement. *See Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006) (citation omitted). Once a prima facie case is established by the employee, the employer must offer her a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship. *Id.* (citation omitted).

The EEOC has published extensive guidance relating to COVID-19. In "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws," (updated July 12, 2022) (available at www.eeoc.gov), the EEOC has explained:

> An employee who does not get vaccinated due to a disability (covered by the ADA) or a sincerely held religious belief, practice, or observance (covered by Title VII) may be entitled to a reasonable accommodation that does not pose an undue hardship on the operation of the employer's business. For example, as a reasonable accommodation, an unvaccinated employee entering the workplace might wear a face mask, work at a social distance from coworkers or non-employees, work a modified shift, get periodic tests for COVID-19, be given the opportunity to telework, or finally, accept a reassignment.

*Id.* § K.2 (Vaccinations – Overview); *see also id.* § L.3 ("In many circumstances, it may be possible to accommodate those seeking reasonable accommodations for religious beliefs, practices, or observances without imposing an undue hardship."). These are precisely the reasonable accommodations at issue here – testing, masking, social distancing, and sanitizing – that Plaintiff could have followed in lieu of the COVID-19 vaccine. As the EEOC recognizes, an employee who follows these protocols does *not* pose an undue risk of spreading COVID-19.

When UCS denied Bergin's request for a religious exemption, they did not provide any reasons, simply stating that her request "was considered by the UCS Vaccination Exemption Committee and denied." (Compl. ¶ 28.) They did not question the sincerity of her religious belief. They did not allege an undue hardship. Presumably in this lawsuit they will make both arguments. Plaintiff is especially interested in discovering why some court officers were granted religious exemptions and others, like Bergin, were not. (Compl. ¶ 48.)

**<u>Defendant's Description of the Case</u>**

Plaintiff is an employee of UCS. UCS is the judiciary branch of the New York State government, comprised of twelve separate trial and appellate courts, in over 300 locations, throughout all sixty-two New York State counties, with more than 16,000 employees. In response to the ongoing COVID-19 pandemic, UCS implemented a mandatory vaccination policy for all its employees, regardless of title, job

duties, or work location – including elected judges – with exceptions for supported religious and medical reasons.

UCS' COVID-19 Vaccine Policy

Beginning on March 16, 2020, in response to the COVID-19 pandemic, non-essential UCS operations were suspended and essential matters, such as certain court proceedings, were performed virtually by employees working remotely. In late May 2020, UCS operations around the State began the process of a four-phase reopening of courthouses and resumption of in person administrative operations. UCS employees who do not work directly in court operations returned to a rotating, in person work schedule either during Phase 3 on July 8, or Phase 4 on July 23, 2020. With limited exceptions, all UCS employees were expected to return to in person work, whether full-time or on a rotating basis. **In May 2021, UCS directed that all employees return to full-time in-person work, which continues to this day.**

On August 23, 2021, the FDA announced its approval of the Pfizer COVID-19 vaccine. The same day, UCS announced that it would implement a mandatory vaccine policy for all employees who do not receive an approved medical or religious exemption. Shortly thereafter, UCS administration announced that that the mandatory vaccine policy would take effect on September 27, 2021. On September 10, 2021, UCS issued a memorandum to its employees detailing the implementation of the policy and information on submitting requests for medical or religious exemptions.

The UCS policy directed individuals to submit proof through a UCS online portal that they were either (1) vaccinated, or (2) had received at least one dose of any COVID-19 vaccine on or before September 27, 2021. Any employee seeking a medical or religious exemption was required to submit the request by 5 p.m. on September 27, 2021 (extended to October 18, 2021) using the provided exemption request forms. If an employee timely submitted an exemption request, then they were subject to mandatory weekly COVID-19 testing while their request was reviewed and considered. The UCS policy does not *require* employees to get vaccinated. Any employee who is not vaccinated and has not been approved for an exemption cannot access UCS courthouses and other buildings and was subject to employee disciplinary action, including termination of employment.

As part of its vaccination policy, UCS established a Vaccine Exemption Committee ("VEC") to review employee exemption requests. The VEC was tasked with reviewing and making determinations for over 1200 requests and is comprised of eleven UCS officials and two advisory members from OCA Counsel's Office. After UCS employees submitted their written requests, each written request was then redacted by non-VEC UCS employees to remove employee identifying information before being forwarded to the VEC. The VEC members responsible for reviewing applications had no way to identify the employee-requestors. Working in two separate groups, each VEC member was assigned to review half of the submissions and, as part of their respective working groups, determine whether to grant or deny each request based on the information submitted and the applicable laws. Of the over 1200 requests submitted by UCS employees, approximately 1000 sought an exemption for religious reasons. The VEC granted over 500 religious exemption requests.

Plaintiff's Employment and Exemption Request

Plaintiff is employed by UCS as a Court Officer in Staten Island, New York. Pursuant to the UCS vaccination policy, plaintiff submitted a request for an exemption from vaccination on September 24, 2021. Plaintiff stated therein that she is a practicing member of the International Christian Center, a "General Council Church of the Assemblies of God." By her letter, plaintiff stated that:

> According to my faith, any coerced medical treatment will infringe on my right of conscience, to manage my personal medical treatments, free of outside pressure. In addition to my religious beliefs, [I] try to live each day as pure as possible and most of my consumption is organic or from the earth.
>
> . . .
>
> I strongly believe in the sanctity of human life. I cannot, with a clear conscience, take these vaccines as it has been confirmed that they have been developed using ingredients and methods, which unequivocally violate my ethics.

In support of her request, she attached a letter from her church pastor. The pastor's letter states that the church's members are opposed to abortion and stem cell research and that, since the COVID-19 vaccines were developed with the use of fetal stem cells, taking the vaccine would violate its members' sincerely held beliefs.

In response thereto, on November 8, 2021, the VEC emailed a letter to plaintiff instructing plaintiff to complete the attached Supplemental Affidavit to provide the VEC with more information before it could make its final determination on her request. Specifically, plaintiff was requested to complete Sections A and B of the affidavit because she and her pastor had expressed concerns about the use of fetal cells in the creation of the COVID-19 vaccines. In its review of UCS employees' religious exemption requests, the VEC asked requesters to complete the affidavit to learn more about their beliefs. Section A of the affidavit seeks information from the requesters about their use of prescription and over-the-counter medications known to have been developed and tested with fetal stem cells. Section B of the affidavit seeks information from the requesters about which other, if any, medical treatments, procedures, vaccines, and foods that they abstain from due to the religious beliefs and what beliefs direct their abstention.

Plaintiff submitted her Supplemental Affidavit on or about November 10, 2021. Plaintiff, rather than completing the affidavit form, attached a letter. Plaintiff's letter does not address any of the questions from the affidavit. Instead, plaintiff stated, in part:

> God created me in His image and made me a vessel of the Holy Spirit. I cannot take this vaccine as it conflicts with my sincerely held religious beliefs. Upon praying to Jesus, I was directed to His truth and divine wisdom and I would like to exercise my religious freedoms. My free will and right of conscience as an individual created by God is of the highest important and the greatest gift. Any undesirable intrusions will defile His design. This letter is to notify the committee of my sincere religious beliefs regarding this specific demand. My family and I strive to keep our individual medical information private. I do not put anything into

> my body that violates my deeply held religious beliefs. I have been educated on my medical/religious decisions by my medical professionals/religious counselors, with the ultimate decision to put anything in my body being solely my own.

By refusing to respond to the affidavit's specific questions plaintiff refused to engage in the interactive process. Accordingly, the VEC was unable to determine the sincerity of her alleged religious beliefs. By letter dated December 29, 2021, UCS denied plaintiff's requests to be exempt from vaccination. Plaintiff was directed to submit proof of vaccination on or before January 10, 2022 and to submit to weekly testing until fully vaccinated.

Plaintiff chose not to be vaccinated and remained off-duty from work until April 4, 2022, when her employment with UCS was terminated along with approximately 100 other employees for failure to comply with the vaccine mandate. *See* https://www.reuters.com/legal/government/new-york-courts-fire-103-employees-over-lack-covid-vaccine-2022-04-06/ (last visited August 15, 2022).

UCS Did Not Discriminate Against Plaintiff Based on Religion

Plaintiff alleges that UCS discriminated against her based on religion by denying her exemption request. Under Title VII, the EEOC has adopted the definition of "religious belief" found in the Supreme Court's *Seeger* case, which essentially requires that the belief must be sincere and that it must occupy a place in the possessor's life that is parallel to the place filled by God in traditional religions.[1] Accordingly, the issue here is not whether plaintiff holds a "sincerely-held" religious belief, but whether she demonstrated such a belief as part of her request for an accommodation. Notably, although plaintiff's pastor stated that the church's members are opposed to abortion and the use of fetal stem cells, plaintiff did not allege in either her original exemption request or her supplemental affidavit that she agrees with or follows this belief.

More importantly, however, plaintiff failed to comply with the VEC's request for information by ignoring the questions in both sections of the supplemental affidavit. The VEC was not obligated to grant an incomplete application. Bald affirmations that religious beliefs are "genuine and sincere" are insufficient to earn an exemption. *Mason v. General Brown Cent. Sch. Dist.*, 851 F.2d 47, 51-52 (2d Cir. 1988). The VEC was not acting in a discriminatory manner when it denied plaintiff's vaccination exemption request, but rather denied the request because it lacked sufficient information to make a merits-based determination.

Plaintiff cannot offer any evidence or otherwise demonstrate that UCS and the VEC denied her vaccine exemption request based on her alleged religious beliefs in contrast to her failure to provide the requested information. The fact that UCS and the VEC have granted exemptions to others for their religious beliefs – each of which was reviewed anonymously – demonstrates that plaintiff's request was denied solely on her failure to articulate a consistently-applied belief that prevents her from being vaccinated. Her refusal to discuss her use of other medications and medical treatments strongly suggests that she does not apply her alleged beliefs in a consistent manner.

---

[1] Employment Coordinator § 4:10; *Int'l Soc. For Krishna Consciousness, Inc. v. Barber*, 650 F.2d 340, 440 (2d Cir. 1981) (quoting *United States v. Seeger*, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965)).

Under Title VII, plaintiff must show that UCS actions were *motivated by a discriminatory intent*. *See Ricci v. DeStafano*, 557 U.S. 557, 577-78 (2009) (Title VII). There was no such discriminatory intent on the part of UCS and no basis to believe such intent existed. In the absence of discrimination, it is not the province of courts or anti-discrimination agencies to sit as a "super personnel department to second-guess an employer's business judgment," even if it is poor or erroneous. *See Williams v New York City Dept. of Sanitation,* 2001 WL 1154627, at *18 (S.D.N.Y. Sept. 28, 2001) (collecting cases). Indeed, the District Court of the Northern District of New York recently found that UCS' process for reviewing vaccine exemption requests, including the use of the supplemental affidavit, was facially neutral and narrowly tailored for purposes of determining applicants' sincerely-held religious beliefs. *Ferrelli v. State of New York Unified Court System*, 2022 WL 673863, at *3 (N.D.N.Y. March 7, 2022).

Plaintiff does not have a legally actionable claim against UCS under Title VII because she did not inform UCS of what, if any, bona fide religious belief she had by providing the requested information.

UCS has not yet responded to the complaint, which is due on or before November 6, 2022. UCS will either move to dismiss the complaint for failure to state a claim or, alternatively answer the complaint and move to dismiss on the pleadings or move for summary judgment after completion of discovery.

We thank Your Honor for your time and consideration.

| **For Plaintiff Jessica Bergin:** | **For Defendant New York State Unified Court System:** |
|---|---|
| /s/ *Steven M. Warshawsky*<br>____________________<br>Steven M. Warshawsky, Esq.<br>The Warshawsky Law Firm<br>118 North Bedford Road, Suite 100<br>Mount Kisco, NY 10549<br>(914) 864-3353<br>smw@warshawskylawfirm.com | /s/ *Michael Siudzinski*<br>____________________<br>Michael Siudzinski<br>Assistant Deputy Counsel<br>NYS Office of Court Administration<br>25 Beaver Street<br>New York, NY 10004<br>(212) 428-2185<br>msiudzin@nycourts.gov |