UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
JESSICA BERGIN,

Plaintiff, Ind. No. 22-CV-5264 (BMC)

-against-

NEW YORK STATE UNIFIED COURT SYSTEM,

Defendants.
---------------------------------------------------------------------X

**MEMORANDUM OF LAW ON BEHALF OF DEFENDANT NEW YORK STATE UNIFIED COURT SYSTEM IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

ANTHONY R. PERRI
Acting Counsel
Office of Court Administration

Attorney for UCS
25 Beaver Street
New York, New York 10004
(212) 428-2150

MICHAEL J. SIUDZINSKI
Assistant Deputy Counsel
Of Counsel

ROBYN L. ROTHMAN
Associate Counsel
EDNY Admission Pending
Of Counsel

**TABLE OF CONTENTS**

Page

Table of Authorities ..... ii

Preliminary Statement ..... 1

Statement of the Facts ..... 1

Background ..... 2

A. Plaintiff's Employment with UCS ..... 2
B. Plaintiff's Request for a Religious Exemption ..... 2
C. Plaintiff's Separation from Service with UCS ..... 4

Argument ..... 5

POINT I ..... 5

Plaintiff's Title VII Claims Should Be Dismissed Against UCS ..... 5

A. Plaintiff fails to allege facts sufficient to state a claim under Title VII ..... 5

B. Plaintiff's statements to UCS evince non-religious reasons for her exemption request ..... 9

Conclusion ..... 11

# TABLE OF AUTHORITIES

Page

**Cases**

*Baker v. Home Depot*
445 F. Supp. 3d 541 (2d Cir. 2006) ... 5

*Chauhan v. MM Hotel Management, LLC*,
2019 WL 6118006 (E.D.N.Y. Nov. 18, 2009) ... 5

*Check ex rel. MC v. New York City Dept of Edu.*
2013 WL 2181045 (E.D.N.Y. May 20, 2013) ... 9, 10

*Cosme v. New York City Dept of Edu.*
2000 WL 1682755 (S.D.N.Y. Nov. 9, 2000) ... 6

*Elmanayer v. ABF Freight Sys.*
2001 WL 1152815 (E.D.N.Y. Sept. 20, 2001) ... 5

*Ferrelli v. State of New York Unified Court Sys.*
2022 WL 673863 (N.D.N.Y. Mar. 7, 2022) ... 8, 9

*Mason v. Gen. Brown Cent. Sch. Dist.*
851 F.2d 47 (2d Cir. 1988) ... 9, 10

*Ricci v. DeStefano*,
557 U.S. 557 (2009) ... 9

*Thomas v. Nat'l Assoc. of Letter Carriers*
225 F.3d 1149 (10th Cir. 2000) ... 5

*Thompson v. City of New York*,
2002 WL 31760219 (S.D.N.Y. Dec. 9, 2002) ... 8

*Williams v. City of New York*,
2001 WL 1154627 (S.D.N.Y. Sept. 28, 2001) ... 9

Page

**Statutes**

42 U.S.C. § 2000e ........................................................................................................................ 1

FED. R. CIV. P. 12(b)(6) ................................................................................................................. 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
JESSICA BERGIN,

Plaintiff,

Ind. No. 22-CV-5264 (BMC)

-against-

NEW YORK STATE UNIFIED COURT SYSTEM,

Defendants.
---------------------------------------------------------------------X

**MEMORANDUM OF LAW ON BEHALF OF DEFENDANT NEW YORK STATE UNIFIED COURT SYSTEM IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

## Preliminary Statement

Plaintiff, Jessica Bergin, brings this employment discrimination action against the New York State Unified Court System (hereinafter "UCS"). Plaintiff alleges a single claim under 42 U.S.C. §§2000e, *et seq.* ("Title VII"), contending that UCS discriminated against her based on her religion. Plaintiff seeks an unspecified amount in compensatory and punitive damages and injunctive relief.

This memorandum of law is submitted on behalf of UCS in support of its motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) on the grounds that Plaintiff has failed to allege sufficient facts to support a Title VII claim for discrimination.

## Statement of the Facts

For purposes of this motion only the well-pleaded facts of the complaint, dated September 2, 2022, may be considered. The complaint numbers 12 pages (56 paragraphs), with the factual allegations detailing UCS' COVID-19 vaccination policy, Plaintiff's request for a

religious exemption, and UCS' denial of her request. The relevant and non-conclusory factual allegations are repeated and summarized below. Additionally, the Court may also take judicial notice of the Declaration of Michael J. Siudzinski ("Siudzinski Decl.") and the exhibits annexed thereto that have been referenced in Plaintiff's Complaint as integral to the pleadings or incorporated in the complaint by reference.

**Background**

**A. Plaintiff's Employment with UCS**

Plaintiff alleges that from July 2016 through April 2022, she served as a full-time court officer assigned to the Richmond County Criminal Court. *See* Compl. ¶¶ 10, 12.[1] In or about January 10, 2022 Plaintiff was deemed "unfit for service" on the basis that she was not vaccinated against COVID-19. ¶ 11; *See* Siudzinski Decl., Exhibit E.[2] On April 7, 2022, UCS terminated Plaintiff's employment. ¶ 10.

**B. Plaintiff's Request for a Religious Vaccine Exemption**

On September 10, 2021, employees of UCS were notified by official memorandum that UCS would "require all judges and non-judicial personnel to be vaccinated by September 27, 2021, unless otherwise approved for an exemption due to medical reasons or sincerely held religious beliefs." ¶ 14; Ex. A. The memorandum stated that "exemptions to the mandatory vaccination requirement will be considered for…employees with sincerely held religious beliefs and practices that prohibit them from receiving a COVID-19 vaccine." ¶ 15; Ex. A. The memorandum further stated that "applications for religious exemption must contain the employee's written, signed, and notarized statement detailing the religious basis for his/her

1 All further citations to the complaint are abbreviated herein to "¶," for the relevant paragraph(s).
2 All further citations to the exhibits annexed to the Siudzinski Declaration are abbreviated herein to "Ex." For the relevant exhibit(s).

objection to COVID-19 vaccination and the religious principle(s) that guide the objections to COVID-19 vaccination." ¶ 15; Ex. A. The deadline for judges and non-judicial personnel to apply for the religious or medical vaccine exemption was set for September 27, 2021. ¶ 16; Ex. A. Employees were directed to upload their exemption requests on or before September 27, 2021, through the online employee portal. ¶ 16; Ex. A.

The memorandum also stated that "employees who timely file a request for exemption will be subject to the Mandatory Testing Program while their request is being reviewed. Ex A. Those employees who are granted a medical or religious exemption to vaccination will be subject to the Mandatory Testing Program during the specified exemption period." ¶ 17; Ex. A. The Mandatory Testing Program was implemented on September 7, 2021 and applied only to non-vaccinated personnel. ¶ 18; Ex. A. It was conducted on a weekly basis. ¶ 18; Ex. A. Plaintiff was a participant in the Mandatory Testing Program because she was unvaccinated. ¶ 19.

On September 26, 2021, Plaintiff submitted a request for a religious exemption to the UCS COVID-19 vaccination policy using the forms annexed to the September 10, 2021, UCS Vaccination Policy Memorandum. ¶ 21; Exs. A, B. Included with her vaccination exemption request, Plaintiff annexed a letter from her pastor at the International Christian Center, which stated, in relevant part, that the "International Christian Center supports its religious belief [that] receiving a vaccine that uses aborted fetal cell lines in the development or testing of the vaccine violates their sincerely held religious beliefs regarding the sanctity and protection of pre-born children." ¶ 23; Ex. B. Plaintiff did not include similar language in her request, presumably relying on her pastor's statements.

On November 8, 2021, the UCS Vaccination Exemption Committee sent Plaintiff a letter and questionnaire requesting "more information before it can make a final determination." ¶ 24;

Ex. C. UCS requested further information from Plaintiff regarding her history of taking or abstaining from medications and vaccines that were developed and tested with fetal cell lines, and specifically requested that Plaintiff complete both Sections A and B thereof. ¶ 24; Ex. C.

On November 26, 2021, Plaintiff submitted her response to UCS' request for more information. ¶ 25; Ex. D. Within her submission, Plaintiff declined to answer the questions regarding her prior use of other medications and vaccinations on the grounds that, "my family and I strive to keep our individual medical information private." ¶ 25; Ex. D. The questions regarding prior medication and vaccination history were requested by each employee who sought a religious vaccine exemption. ¶ 27.

On December 29, 2021, Plaintiff was informed by letter from UCS that her religious vaccination exemption request was denied. ¶ 28; Ex. E. As a result, Plaintiff was required to submit proof of taking her first dose of a COVID-19 vaccination on or before January 10, 2022. ¶ 28; Ex. E. On January 3, 2022, Plaintiff attempted to submit a revised set of answers to the questionnaire. ¶ 32. On January 4, 2022, Plaintiff's supervisor received an email from UCS Counsel, Mindy M. Jeng, Esq., informing Plaintiff that "the Committee's decisions are final, and the new request would not be considered." ¶ 33. The email from Ms. Jeng stated that Plaintiff was required to "submit proof of vaccination by January 10, 2022." ¶ 33. To date, Plaintiff has not taken a COVID-19 vaccination. ¶ 35.

**C. Plaintiff's separation from service with UCS**

On January 10, 2022, Plaintiff was sent a memorandum stating that Plaintiff was "unfit for service before of your failure to comply with the Vaccination Mandate." ¶ 36; Ex. E. Plaintiff was instructed that she could not "report to work until you have submitted the required proof of vaccination and the submission has been confirmed by your supervisor." ¶ 36; Ex. E. On

January 10, 2022 Plaintiff was placed on administrative leave using her accrued paid leave days until she was terminated on April 7, 2022 for failing to "comply with the Vaccination Mandate." ¶ 49.

## ARGUMENT

## POINT I

### PLAINTIFF'S TITLE VII CLAIM SHOULD BE DISMISSED AGAINST UCS

Plaintiff alleges one claim against UCS pursuant to Title VII, for alleged discrimination (Count 1) based on Plaintiff's religion. *See* ¶¶52-56. Plaintiff's claim, however, should be dismissed because she fails to sufficiently plead facts supporting a claim of discrimination against UCS as a result of its denial of her religious vaccine exemption request.

To rise to the level of religious discrimination under Title VII, a plaintiff must demonstrate three elements: 1) she held a bona fide religious belief conflicting with an employment requirement; 2) she informed her employers of this belief; and 3) she was disciplined for failure to comply with the conflicting employment requirement. *See Chauhan v. MM Hotel Management, LLC* 2019 WL 6118006 (E.D.N.Y. Nov. 11, 2019) (*citing Baker v. Home Depot*, 445 F.3d 541, 543 (2d Cir. 2006)).

#### A. Plaintiff failed to inform UCS of any alleged religious beliefs

Plaintiff does not have a prima facie claim of Title VII religious discrimination because she failed to inform UCS of her religious beliefs through the interactive process. The process of finding a reasonable accommodation is intended to be an interactive process in which both the employer and employee participate. *See Elmanayer v. ABF Freight Sys*., 2001 WL 1152815, at *5 (E.D.N.Y. Sept. 20, 2001) (*citing Thomas v. Nat'l Assoc. of Letter Carriers*, 225 F.3d 1149 (10th Cir. 2000)). Once an employer shows it has made a good faith effort to accommodate, the

employer need not further show that each of the employee's alternative accommodations would result in undue hardship. *Id.*; *see also Cosme v. Henderson*, 2000 WL 1682755, at *6 (S.D.N.Y. Nov. 9, 2000). UCS was unable—and not required—to provide Plaintiff a reasonable accommodation when she refused to provide the requested information. *See Elmenayer*, 2001 WL 1152815, at *5; *Cosme*, 2000 WL 1682755, at *6.

Plaintiff's own allegations demonstrate that she is responsible for the breakdown of the interactive process. Plaintiff acknowledges and concedes that UCS set up a policy for a process to apply for an exemption. ¶16. She concedes that this policy mandated an initial deadline of September 27, 2021. ¶16. Plaintiff further concedes that she was asked to provide additional information in furtherance of her religious exemption through a supplemental affidavit and questionnaire. ¶24-25. Plaintiff's initial request included references to a moral and ethical objection to the ingredients used in the development of the COVID-19 vaccinations. Ex. B. While Plaintiff did not specifically state she objected to abortion in her written submission, she referred to a letter written by her pastor attached to the request. ¶23; Ex. B. In a letter authored by Ronald Squibb, Senior Pastor at the International Christian Center, he referred to abortion, stem-cell research, the use of fetal stem-cells in the development and testing of the COVID-19 vaccines, and the church's objection to such use. ¶23; Ex. B. Due to this reference, UCS sought further information from Plaintiff regarding her past use of certain medications and treatments that also used fetal stem-cell lines in development and testing. Ex. C. UCS also included a firm deadline to submit the supplemental affidavit and questionnaire, requiring Plaintiff to submit the documents by end of business on November 22, 2021. Ex. C. Plaintiff submitted her supplemental affidavit and questionnaire on November 16, 2021. ¶25; Ex. D. Plaintiff, however, refused to fill out the questionnaire and instead submitted another personal statement. ¶25.

Plaintiff made no further submissions prior to the November 22 deadline.

The supplemental affidavit contained two sections. Ex. C. Section A contained informational statements with respect to fetal cell lines in the development of COVID-19 vaccines and requests a signature from the employee affirming or swearing that taking the COVID-19 vaccine would violate her religious beliefs regardless of the informational statements. Ex. C. Section A also includes a chart with two groupings of pharmaceutical products that tested on the HEK-293 Cell Line. Ex. C. The first grouping is for over-the-counter medications and the second grouping is for prescription drugs. Ex. C. Each employee is then asked to answer "yes" or "no" to a series of questions inquiring whether the employee has ever used any of these products in each category, whether the employee has used the products in a grouping within the last two years, and whether the employee would use any of the products in a grouping, even if prescribed by a physician. Ex C. Section B of the supplement affidavit asked each employee a series of questions to assist UCS in further understanding the religious beliefs of the employee. Ex. C. Plaintiff annexed and referred all answers to a personal statement instead of providing any responses to the supplemental affidavit. Ex. D.

Plaintiff's personal statement submitted with her supplemental affidavit contained non-religious reasons for refusing to respond to the questionnaire in addition to reiteration of the statements made in her initial exemption request. ¶25 ("Bergin **declined to answer the questions** about her prior use of other medications and vaccines on the grounds that '[m]y family and I strive to keep our individual medical information private'.")(emphasis added); Ex. D. Plaintiff's statement also indicated that her medical decisions were based, in part, by medical professionals and that any decisions regarding what she puts into her body are "solely of my own." Ex. D. Plaintiff's refusal to answer the supplemental affidavit was a sufficient—and non-

discriminatory—reason for UCS to deny her exemption request.

In assessing the parties' engagement in an interactive process, "a court should look for signs of good faith or bad faith…" *See Thompson v. City of New York* 2002 WL 31760219 at *8 (S.D.N.Y. Dec. 9, 2002). "A party that fails to communicate or withholds important information solely within the knowledge of that party, can be found to have obstructed the process in bad faith." *Id*. By Plaintiff's own admission in her Complaint, she chose to withhold information solely within her own knowledge from UCS prior to both deadlines provided to Plaintiff by UCS. ¶25; Ex. C. UCS denied Plaintiff's religious exemption request after reviewing her incomplete submissions. ¶28; Ex. E.

Accordingly, the complaint is devoid of any allegation that UCS engaged in discriminatory conduct and there is no basis to find that UCS or the VEC specifically targeted her or held any discriminatory animus. Plaintiff concedes that the initial request form, the supplemental affidavit, and questionnaire were provided to all UCS employees who sought such a request. ¶27. There is no basis for Plaintiff's legal conclusion that UCS used the documents to "impeach" its employees in order to deny their requests. ¶27. The questionnaire was used to assist UCS in understanding an applicant's objections to the vaccine and whether it was a motivating factor in an applicant's request for exemption. *See Ferrelli v. State of New York Unified Court System*, 2022 WL 673863, at *8 (N.D.N.Y. March 7, 2022). Lastly, UCS granted religious exemption requests of other employees using the same forms, seeking the same information that was asked of Plaintiff, a fact which Plaintiff concedes. ¶48. Plaintiff cannot make out a prima facie case of religious discrimination because she did not inform UCS of her alleged religious beliefs in either her original exemption request or her follow-up submission, instead relying on bald statements that she had sincerely-held beliefs against the COVID-19

vaccine.

Under Title VII, a Plaintiff must show that UCS' actions were motivated by a discriminatory intent. *See Ricci v. DeStefano*, 557 US 557, 577-78 (2009). There was no such discriminatory intent on the part of UCS and no basis to believe such intent existed. In the absence of discrimination, it is not the province of courts or anti-discrimination agencies to sit as a "super personnel department to second-guess an employer's business judgment," even if it is poor or erroneous. *See Williams v. New York City Dept. of Sanitatio*n, 2001 WL 1154627, at *18 (S.D.N.Y Sept. 28, 2001) (collecting cases). Without question, UCS' process for reviewing vaccination exemption requests, including the use of the supplemental affidavit, was facially neutral and narrowly tailored for purposes of determining applicants' sincerely-held religious beliefs. *Ferrelli*, 2022 WL 673863, at *3. Plaintiff does not have a legally actionable claim against UCS under Title VII because she did not inform UCS of what bona fide religious belief she had, if any, during the interactive process.

### B. Plaintiff's statements to UCS evince non-religious reasons for her exemption request

In addition to failing to provide UCS with the requested information, Plaintiff's statements suggest alternative, non-religious reasons for why she wanted an exemption from UCS vaccine policy. Entities are not obligated under Title VII to grant accommodation requests based on non-religious reasons, such as ethics or unsupported concerns about medical interventions. *See Mason v. General Brown Cent. Sch. Dist.,* 851 F.2d 47, 51-52 (2d Cir. 1988); *Check ex. rel. MC v. New York City Dept. of Educ.,* 2013 WL 2181045 (E.D.N.Y. May 20, 2013)

Plaintiff submitted her initial request on September 26, 2021. ¶21; Ex. B. Her initial request contained a personal statement that included non-religious reasons for seeking an exemption to the vaccination requirement. Ex. B. Specifically, Plaintiff advised that she and her

family followed "Holistic Chinese Medicine" and she was "educated in healing though natural remedies and therapeutics." Ex. B. Plaintiff also stated that she was "trying to conceive the precious gift of life," implying that she was concerned over the effects of the vaccine on her fertility. Ex. B. Lastly, Plaintiff indicated that she was also concerned about experiencing side-effects or injuries from the vaccine. (*See*, Ex. B, "[r]espectfully and humbly, any forced medical mandates would raise questions as far as whether or not side effects or direct injuries from said vaccine would be covered by the institution mandating it.").

Plaintiff's response to UCS' request for more information, submitted on November 16, 2021, also included non-religious reasons for wanting to be exempt from the vaccine policy. ¶25; Ex. D. In doing so, she refused to fill out the questionnaire and instead submitted another personal statement. ¶25; Ex. D. Plaintiff stated therein that "[m]y family and I strive to keep our individual medical information private." ¶25; Ex. D. In contrast to Plaintiff's allegations, her refusal to answer the questions in the supplemental affidavit, claiming that she would not provide medical information, strongly suggests that she sought the vaccine exemption for non-religious reasons. Although UCS' decision to deny Plaintiff's request was based on her failure to provide the necessary information, UCS could have deemed that her request was based on non-religious reasons and denied it on those grounds. *Mason.,* 851 F.2d at 51-52; *Check ex. rel. MC,* 2013 WL 2181045.

It is clear from the totality of her responses that Plaintiff had several non-religious purposes for abstaining from the COVID-19 vaccination. Plaintiff's Title VII discrimination claim should be dismissed because she cannot show that the rejection of her exemption request and termination were a result of religious discrimination.

## CONCLUSION

For all of the reasons set forth herein, UCS respectfully requests that this Court grant its motion to dismiss the complaint in its entirety, and for such other and further relief the Court deems just and proper.

Dated: New York, New York
November 4, 2022

Respectfully submitted,

ANTHONY R. PERRI
Acting Counsel
Attorney for UCS
By:

/S/
MICHAEL J. SIUDZINSKI
Assistant Deputy Counsel
25 Beaver Street
New York, New York 10004
(212) 428-2150

MICHAEL J. SIUDZINSKI
Assistant Deputy Counsel
Of Counsel

ROBYN L. ROTHMAN
Associate Counsel
EDNY Admission Pending
Of Counsel