UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JESSICA BERGIN,

Plaintiff,

v.

NEW YORK STATE UNIFIED
COURT SYSTEM,

Defendant.

**Case No. 22-CV-5264(BMC)**

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Steven M. Warshawsky, Esq.
The Warshawsky Law Firm

Andrea Paparella, Esq.
Law Office of Andrea Paparella, PLLC

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

TABLE OF CONTENTS....1

TABLE OF AUTHORITIES....2

PRELIMINARY STATEMENT....3

STANDARD OF REVIEW....4

STATEMENT OF FACTS....4

LEGAL FRAMEWORK....7

ARGUMENT....8

1. Plaintiff Plausibly Alleges A Prima Facie Case Of Discriminatory Failure To Accommodate....8

2. Plaintiff Plausibly Alleges Bergin Has A Bona Fide Religious Objection To The COVID-19 Vaccination Policy....9

3. Bergin Satisfied Her Minimal Duty To Participate In The Interactive Process....12

4. Bergin Cured Any Deficiency In Her Application When She Submitted A Second Set Of Questionnaire Answers....15

5. Plaintiff Should Be Allowed Appropriate Discovery, Including On Whether UCS Approved Religious Exemptions For Any Employees Who Did Not Answer The Supplemental Questionnaire....17

CONCLUSION....19

## TABLE OF AUTHORITIES

### Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......... 11

*Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60 (1986) .......... 7,8,14

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) .......... 4,9

*Bell Atlantic Corp. v. Twombley*, 550 U.S. 544 (2007) .......... 4

*Baker v. Home Depot*, 445 F.3d 541 (2d Cir. 2006) .......... 7,13

*Bushouse v. Local Union 2209, UAW*, 164 F. Supp.2d 1066 (N.D. Ind. 2001) .......... 11

*Cosme v. Henderson*, 98-CV-2754(VM), 2000 WL 1682755 (S.D.N.Y. Nov. 9, 2000) .......... 13

*EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015) .......... 7

*EEOC v. Abercrombie & Fitch Stores, Inc.*, 798 F. Supp.2d 1272 (N.D. Okla. 2011), *rev'd*, 731 F.3d 1106 (10th Cir. 2013), *rev'd and remanded*, 575 U.S. 768 (2015) .......... 11

*EEOC v. Aldi, Inc.*, 06-CV-1210(NBF), 2008 WL 859249 (W.D. Pa. Mar. 28, 2008) .......... 12

*EEOC v. Unión Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49 (1st Cir. 2002) .......... 10,11

*Elmenayer v. ABF Freight Sys.*, 98-CV-4061(JG), 2001 WL 1152815 (E.D.N.Y. Sept. 20, 2001) .......... 12,13

*Ferrelli v. New York State Unified Court Sys.*, 22-CV-68(LEK), 2022 WL 673863 (N.D.N.Y. Mar. 7, 2022) .......... 14,16,17

*Jamil v.* Sessions, 14-CV-2355(PKC), 2017 WL 913601 (E.D.N.Y. Mar. 6, 2017) .......... *passim*

*Miranda v. South Country Cent. Sch. Dist.*, 461 F. Supp.3d 17 (E.D.N.Y. 2020) .......... 4

*Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476 (2d Cir. 1985), *aff'd and remanded*, 479 U.S. 60 (1985) .......... 10,11

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) .......... 8

*Thomas v. National Assoc. of Letter Carriers*, 225 F.3d 1149 (10th Cir. 2000) .......... 13

*United States v.* Seeger, 380 U.S. 163 (1965) .......... 10

*Welsh v. United States*, 398 U.S. 333 (1970) .......... 9

### Statutes, Regulations, and Rules

42 U.S.C. § 2000e-2(a)(1) .......... 7

42 U.S.C. § 2000e(j) .......... 7

29 C.F.R. § 1605.1 .......... 14

Fed. R. Civ. P. 56(a) .......... 11

## PRELIMINARY STATEMENT

Plaintiff Jessica Bergin, by her undersigned attorneys, respectfully submits this memorandum of law in opposition to Defendant's motion to dismiss filed November 4, 2022 (ECF Docs. 12-14).

This is an action for religious discrimination in violation of Title VII of the Civil Rights Act of 1964, on the grounds that Defendant failed to reasonably accommodate Plaintiff's sincerely held religious objection to a mandatory COVID-19 vaccination policy, wrongly denied her requested religious exemption, and as a result illegally terminated her employment. Defendant moves to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), "on the grounds that Plaintiff has failed to allege sufficient facts to support a Title VII claim for discrimination." (Def. Memo. at 1).

Defendant's motion should be denied in its entirety. The Complaint plausibly alleges each element of Plaintiff's prima facie case for discriminatory failure to accommodate (Point One), including that Bergin has a bona fide religious objection to the UCS COVID-19 vaccination policy (Point Two). This is sufficient to state a claim for relief. With respect to Defendant's argument concerning the interactive process, Bergin satisfied her minimal duty to participate in the interactive process (Point Three). To the extent that Bergin's initial response to the supplement questionnaire was legally deficient, which Plaintiff denies, she cured this deficiency when she submitted her revised answers, which should have been accepted and considered by UCS (Point Four). Lastly, if the motion is not denied on the merits, Plaintiff should be allowed appropriate discovery into factual issues raised by Defendant's arguments, including whether UCS approved religious exemptions for any employees who did not answer the supplemental questionnaire (Point Five).

## STANDARD OF REVIEW

The "plausibility" standard of review applicable to the present motion is well established. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) (following *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)); *Miranda v. South Country Cent. Sch. Dist.*, 461F. Supp.3d 17, 23 (E.D.N.Y. 2020) (summarizing standard). In the interest of brevity, this language will not be repeated here, except to underscore that "the Court assumes a plaintiff's well-pleaded factual allegations to be true and draws all reasonable inferences in the plaintiff's favor." *Miranda, supra* (citation omitted).

## STATEMENT OF FACTS

Plaintiff's Complaint filed September 2, 2022 (ECF Doc. 1) provides a detailed chronology of the events in this case. For purposes of the present motion, the essential facts are as follows:

Plaintiff Jessica Bergin was employed by Defendant New York State Unified Court System (UCS) as a court officer beginning July 14, 2016. Compl. ¶¶ 10,12. Bergin most recently was assigned to the Richmond Criminal Court in Staten Island. *Id.* ¶ 12.

On September 10, 2021, UCS notified non-judicial employees that they "must be fully vaccinated against COVID-19 by September 27, 2021." Compl. ¶ 14; Siudzinski Decl., Exh. A (UCS policy memorandum). The policy allowed for exemptions due to medical reasons or sincerely held religious beliefs. *Id.* ¶¶ 14,15. The deadline to apply for an exemption was September 27, 2021. *Id.* ¶ 16.

On September 26, 2021, Bergin, who is a baptized Christian, submitted a request for a religious exemption, using the prescribed forms and following the prescribed procedures. *Id.* ¶¶ 20,21. Bergin supported her request with a three-page personal statement that included an extensive list of scriptural citations, along with a personalized, signed letter

from her pastor. *Id.* ¶¶ 22,23. Bergin objected to the COVID-19 vaccine on a variety of religious grounds, including the right of conscience, the sanctity of human life, and the body as the temple of the Holy Spirit. *Id.* In the interest of brevity, these arguments will not be detailed here. A copy of Bergin's exemption application is included with Defendant's motion. *See* Siudzinski Decl., Exh. B (Bergin exemption application).[1]

On November 8, 2021, UCS sent Bergin a form letter and supplemental questionnaire requesting "more information before it can make a final determination," including (Section A) about other medications and vaccines that were allegedly developed using fetal cell lines that Bergin may have taken in the past and (Section B) about other medications and vaccines that Bergin abstains from taking due to concerns about the sanctity or purity of her body. Compl. ¶ 24; Siudzinski Decl., Exh. C. The deadline for Bergin to submit her answers was November 22, 2021. *Id.*

Bergin submitted her answers to the questionnaire, in the form of another personal statement, on or about November 16, 2021. Compl. ¶ 25; Siudzinski Decl., Exh. D. In her response, Bergin emphasized that "God created me in His image and made me a vessel of the Holy Spirit. I cannot take this vaccine as it conflicts with my sincerely held religious beliefs. Upon praying to Jesus, I was directed to His truth and divine wisdom and I would like to exercise my religious freedoms." *Id.* Bergin declined to answer the questions about her use of other medications and vaccines on the grounds that "[m]y family and I strive to keep our individual medical information private." *Id.* She closed by reiterating "[p]olitely, I

[1] In its motion, Defendant oddly notes that Bergin did not use the words "abortion" or "aborted" in her personal statement (Def. Memo. at 3,6), but Bergin stated that she "strongly believe[s] in the sanctity of human life" and then referenced her pastor's letter, which discusses the issue of aborted fetal cells being used for the COVID-19 vaccines. Obviously, UCS understood that Bergin was objecting to the vacccine on these grounds.

will never stray from my sincere beliefs because it has been prayed upon between myself and my God." *Id.*

On December 29, 2021, UCS sent Bergin a form letter stating that her request for a religious exemption "was considered by the UCS Vaccination Exemption Committee and denied." Compl. ¶ 28; Siudzinski Decl., Exh. E. No reason was given for the denial. *Id.* [2] Bergin was given until January 10, 2022, to submit proof of taking the first dose of a COVID-19 vaccine. *Id.*

On or about January 3, 2022, Bergin submitted another set of answers to the supplemental questionnaire. Compl. ¶ 32; Warshawsky Decl., Exh. 1. As demonstrated in Plaintiff's Exhibit 1 (which was not included with Defendant's motion), Bergin answered each of the questions posed in the spaces provided. *Id.*

On January 4, 2022, Bergin's supervisor received an email from UCS Administrative Counsel, Mindy M. Jeng, Esq., stating that "[t]he Committee's decisions are final, and the new request will not be considered." Compl. ¶ 33. The email reiterated that Bergin was required "to submit proof of vaccination by January 10." *Id.*

When Bergin continued to abide by her good faith religious objections to the COVID-19 vaccination policy, on January 10, 2022, she was deemed "unfit for service" and instructed not to report to work thereafter. Compl. ¶ 36. Her employment was terminated on April 7, 2022. *Id.* ¶ 10.

---

[2] Contrary to Defendant's assertions that "UCS denied Plaintiff's religious exemption request after reviewing her incomplete submissions" (Def. Memo. at 8) and "UCS's decision to deny Plaintiff's request was based on her failure to provide the necessary information" (Def. Memo. at 10), there are no allegations in the Complaint and no exhibits before the Court that provide any reasons why Bergin's exemption was denied.

## LEGAL FRAMEWORK

Title VII declares it unlawful, *inter alia*, "for an employer . . . to discharge any individual . . . because of such individual's . . . religion . . . ." 42 U.S.C. § 2000e-2(a)(1). Title VII further defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 2000e(j).

Significantly, the Supreme Court has emphasized: "Title VII does not demand mere neutrality with regard to religious practices – that they be treated no worse than other practices. Rather, it gives them favored treatment, affirmatively obligating employers not 'to fail or refuse to hire or discharge any individual . . . because of such individual's' 'religious observance and practice.' . . . Title VII requires otherwise neutral policies to give way to the need for an accommodation." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015) (citation omitted).

To make out a prima facie case of discriminatory failure to accommodate, a plaintiff must show (1) she held a bona fide religious belief conflicting with an employment requirement; (2) she informed her employer of this belief; and (3) she was disciplined for failing to comply with the conflicting employment requirement. *See Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006) (citation omitted); *Jamil v. Sessions*, 14-CV-2355(PKC), 2017 WL 913601, at *7 (E.D.N.Y. Mar. 6, 2017) (applying *Baker*).

Once a prima facie case is established by the employee, the employer "must offer [him or her] a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *Baker*, 445 F.3d at 546 (citation omitted); *see also Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986) ("The employer violates the statute unless it

‘demonstrates that [it] is unable to reasonably accommodate . . . an employee’s . . . religious observance or practice without undue hardship on the conduct of the employer’s business’.”) (quoting 42 U.S.C. § 2000e(j)). “A reasonable accommodation is one that ‘eliminates the conflict between employment requirements and religious practices’.” *Jamil*, 2017 WL 913601, at *10 (quoting *Ansonia*, 479 U.S. at 70) (additional quotation marks and citation omitted).

In the case at bar, the reasonable accommodation in question was exempting Bergin from the COVID-19 vaccine requirement – which was the only way to eliminate the conflict between the policy and her religious beliefs and practices – while following other COVID-19 safety precautions (temperature taken upon entering the courthouse, daily health self-assessment forms, weekly COVID-19 testing, wearing a mask at all times during the workday, and social distancing protocols). Compl. ¶¶ 38,39.

## ARGUMENT

### 1. Plaintiff Plausibly Alleges A Prima Facie Case Of Discriminatory Failure To Accommodate.

In the Complaint, Plaintiff plausibly alleges a prima facie case of discriminatory failure to accommodate, based on specific, factual allegations that must be accepted as true for purposes of this motion, while drawing all reasonable inferences in Plaintiff’s favor. Plaintiff has alleged a bona fide religious belief conflicting with an employment requirement (*see* Compl. ¶¶ 20-25); she has alleged that she informed her employer of this belief (*see* Compl. ¶¶ 21,25,32); and she has alleged that she was disciplined for failing to comply with the conflicting employment requirement (*see* Compl. ¶¶ 10,11,36). This is more than sufficient at the 12(b)(6) stage. *Cf. Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) (“an employment discrimination plaintiff need not plead a prima facie case of discrimination”). All that is required is “sufficient factual matter, accepted as true, to state

a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. The Complaint obviously satisfies this low burden. Nevertheless, in its motion to dismiss, Defendant challenges the first and second prongs of Plaintiff's prima facie case. (Notably, Defendant does not assert an undue hardship defense in its motion.)

### 2. Plaintiff Plausibly Alleges Bergin Has A Bona Fide Religious Objection To The COVID-19 Vaccination Policy.

In its motion to dismiss, Defendant challenges the first prong of Plaintiff's prima facie case by arguing that "Plaintiff's statements suggest alternative, non-religious reasons for why she wanted an exemption from UCS vaccine policy." (Def. Memo. at 9.) After quoting some of Bergin's statements that it characterizes as "non-religious," Defendant argues that "[i]t is clear from the totality of her responses that Plaintiff had several non-religious purposes for abstaining from the COVID-19 vaccination." (Def. Memo. at 10.) Defendant offers no case law in support of this "totality" test, which has nothing to do with how this Court reviews the Complaint under Fed. R. Civ. P. 12(b)(6). Furthermore, Defendant offers no case law for the implied proposition that an employee who raises both religious and "non-religious" objections to an employment requirement has thereby not asserted a bona fide religious objection. This is not the law. *Cf. Welsh v. United States*, 398 U.S. 333, 342 (1970) (conscientious objector case) (explaining that defendant asserted valid religious objection to military draft although objection "was undeniably based in part on his perception of world politics"; conscientious objector status does not "exclude those who hold strong beliefs about our domestic and foreign affairs or even those whose conscientious objection to participation in all wars is founded to a substantial extent upon considerations of public policy").

Essentially, Defendant is inviting the Court to decide, as a matter of law, that Bergin lacks a bona fide religious objection to the COVID-19 vaccination policy. This is highly improper on a motion to dismiss.

As an initial matter, Bergin's application is replete with patently religious ideas, arguments, and references, and is supported by a letter from her pastor, which likewise contains patently religious ideas, arguments, and references. *See* Siudzinski Decl., Exh. B. Bergin's initial answers to the supplemental questionnaire also express religious ideas and arguments. *See* Siudzinski Decl., Exh. D. As do her second set of answers to the supplemental questionnaire. *See* Warshawsky Decl., Exh. 1. Assuming the truth of these statements and drawing all reasonable inferences in Plaintiff's favor, it is clear that Plaintiff plausibly alleges that Bergin has a bona fide religious objection to the COVID-19 vaccination policy. *Cf. United States v. Seeger*, 380 U.S. 163, 184 (1965) (conscientious objector case) ("it must be remembered that in resolving these exemption problems one deals with the beliefs of different individuals who will articulate them in a multitude of ways. In such an intensely personal area, of course, the claim of the registrant that his belief is an essential part of a religious faith must be given great weight. . . . The validity of what he believes cannot be questioned."); *see also EEOC v. Unión Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002) ("The statute [Title VII] thus leaves little room for a party to challenge the religious nature of an employee's professed beliefs.").

To the extent Defendant is arguing that there are statements in Bergin's exemption materials that raise a question as to the *sincerity* of her religious objection to the COVID-19 vaccination policy, Plaintiff acknowledges that this is a legitimate area of inquiry. *See Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481-82 (2d Cir. 1985) ("it is entirely

appropriate, indeed necessary, for a court to engage in analysis of the sincerity – as opposed, of course, to the verity – of someone's religious beliefs in both the free exercise context and the Title VII context") (internal citations omitted), *aff'd and remanded*, 479 U.S. 60 (1986). *But such inquiry is not appropriate on a motion to dismiss*, which simply asks whether the plaintiff has alleged a plausible claim for relief – which Plaintiff has done here. Significantly, Bergin supported her application with a personalized letter from her pastor describing "the principled religious basis on which Jessica Bergin holds a conscientious religious objection to the current Covid-19 vaccines." *See* Siudzinski Decl., Exh. B. This is prima facie evidence of the sincerity of Bergin's religious objection. *Compare Bushouse v. Local Union 2209, UAW*, 164 F. Supp.2d 1066, 1077-78 (N.D. Ind. 2001) (dismissing plaintiff's reasonable accommodation claim because he failed to provide employer with "independent corroboration" of his alleged religious belief).

Even on a motion for summary judgment, the question is whether "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jamil*, 2017 WL 913601, at *6 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Given that "[t]he burden on the plaintiff [to prove sincerity] . . . is not a heavy one," *Philbrook*, 757 F.2d at 482, this Court cannot say, as a matter of law, that no reasonable jury could find in favor of Plaintiff on this issue. As the First Circuit has explained: "The finding on this issue generally will depend on the factfinder's assessment of the employee's credibility." *Unión Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d at 56; *see also EEOC v. Abercrombie & Fitch Stores, Inc.*, 798 F. Supp.2d 1272, 1284-85 (N.D. Okla. 2011) ("the sincerity of a Title VII claimant's religious belief goes to credibility"), *rev'd*, 731 F.3d 1106 (10th Cir. 2013), *rev'd*

*and remanded*, 575 U.S. 768 (2015); *EEOC v. Aldi, Inc.*, 06-CV-1210(NBF), 2008 WL 859249, at *6 (W.D. Pa. Mar. 28, 2008) ("the sincerity of Plaintiff's belief . . . turns on the fact-finder's determination of her credibility"). If summary judgment cannot be granted on this issue, neither can a motion to dismiss.

This Court should decline Defendant's invitation to judge Bergin's credibility, which is the province of the jury, and reject Defendant's argument on this point. Plaintiff has satisfied the first prong of her prima facie case.

#### 3. Bergin Satisfied Her Minimal Duty To Participate In The Interactive Process.

In its motion to dismiss, Defendant challenges the second prong of Plaintiff's prima facie case by arguing that "Plaintiff does not have a prima facie claim of Title VII religious discrimination because she failed to inform UCS of her religious beliefs through the interactive process." (Def. Memo. at 5.) Similarly, Defendant argues that "Plaintiff does not have a legally actionable claim against UCS under Title VII because she did not inform UCS of what bona fide religious belief she had, if any, during the interactive process." (Def. Memo. at 9.) The crux of Defendant's argument is that "Plaintiff's refusal to answer the supplemental affidavit was a sufficient – and non-discriminatory – reason for UCS to deny her exemption request." (Def. Memo. at 7-8.)

For the reasons that follow, Defendant's argument on this point is meritless.

First, the Complaint and exhibits conclusively demonstrate that Bergin in fact informed UCS of her religious objections to the COVID-19 vaccination policy. *See* Compl. ¶¶ 21,25,32; Siudzinski Decl., Exh. B; Siudzinski Decl., Exh. D; Warshawsky Decl., Exh. 1. *Compare Elmenayer v. ABF Freight Sys.*, 98-CV-4061(JG), 2001 WL 1152815, at *5 (E.D.N.Y. Sept. 20, 2001) (plaintiff could not make out prima facie case with respect to suspension for returning late from lunch because he did not inform management of his

religious practice of participating in Friday prayers until after he was disciplined). The contention that Bergin "failed to inform UCS of her religious beliefs" is baseless. Plaintiff satisfied the second prong of her prima facie case.

Second, Defendant mischaracterizes Bergin's initial response to the supplemental questionnaire. She did not "refus[e]" to answer the questionnaire; rather, she objected to some of the questions and then responded in the form of another personal statement. Defendant may consider Bergin's response to be unsatisfactory – although there is no evidence in the record that Bergin's response was the reason her exemption was denied – but her response again informed her employer of her religious objection to the COVID-19 vaccine, which further supports the second prong of her prima facie case.

Third, the contention that Bergin's initial answers to the supplemental questionnaire violated a duty to engage in the "interactive process" such that *her claim should be dismissed* is preposterous. Notably, Defendant does not cite a single case where a plaintiff's claim was thrown out on such grounds. This is hardly surprising. Participating in the interactive process, per se, is not an element of a religious accommodation claim under Title VII. *See Baker*, 445 F.3d at 546; *Jamil*, 2017 WL 913601, at *7. There is no "interactive process" requirement in the statute or regulations governing Title VII religious accommodation claims. *See* 42 U.S.C. § 2000e *et seq.*; 29 C.F.R. Part 1605. Moreover, the judicially created duty under Title VII is minimal: "While the employer bears the burden of making a reasonable accommodation for the religious beliefs of an employee, the employee, too, must make some effort to cooperate with an employer's attempt at accommodation." *Jamil*, 2017 WL 913601, at *10 (internal quotation marks and citation omitted); *Elmenayer*, 2001 WL 1152815, at *5 (same); *Cosme v. Henderson*, 98-CV-2754(VM), 2000 WL 1682755, at *6 (S.D.N.Y. Nov. 9, 2000) (same); *Thomas v. National Assoc. of Letter Carriers*, 225 F.3d 1149, 1154 (10th Cir. 2000) (same – the original source for all three district court opinions).

Here, Bergin made "some effort" to cooperate with UCS in connection with the supplemental questionnaire. She did not reject or ignore it altogether. She responded to the questionnaire in writing on November 16, 2021. Compl. ¶ 25; Siudzinski Decl., Exh. D Although Bergin objected to answering detailed questions about her past and present practices with respect to other medications and vaccines, she provided a personal statement reiterating her religious objections to the COVID-19 vaccination policy. Defendant can argue to the jury that her lack of responsiveness raises a question about her credibility, but it is nonsensical to argue that Bergin "did not inform UCS of what bona fide religious belief she had, if any, during the interactive process." Obviously, she did. This satisfies her prima facie case.

What Bergin did not do – initially – was answer the specific questions about her past and present practices with respect to other medications and vaccines. These questions presumably were designed to explore the sincerity and consistency with which employees followed their professed religious beliefs. *See Ferrelli v. New York State Unified Court Sys.*, 22-CV-68(LEK), 2022 WL 673863, at *3 (N.D.N.Y. Mar. 7, 2022) ("Because the [UCS vaccination exemption review] committee often found the information in applicants' personal statements insufficient to assess the basis for and sincerity of the belief, it created a supplemental form.").

Importantly, the fundamental purpose of the interactive process is to assist the employer in *identifying a reasonable accommodation* – which here was known from the start, i.e., an exemption – it is not to assist the employer in investigating, and possibly impeaching, the employee's religious beliefs, which as a general rule "is not at issue." 29 C.F.R. § 1605.1. As the Supreme Court explained in *Ansonia Board of Education v. Philbrook*: "courts have noted that bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the

employer's business." 479 U.S. at 69 (internal quotation marks and citation omitted); *see Jamil*, 2017 WL 913601, at *10 ("The process of finding a reasonable accommodation is 'intended to be an interactive process in which both the employer and employee participate.'") (quoting *Elmenayer*, 2001 WL 1152815, at *5). Here, the supplemental questionnaire had nothing to do with finding a reasonable accommodation. It was a discovery request, pure and simple.[3] While UCS had the right to ask Bergin these questions, her refusal – initially – to answer some of them does not disqualify her from pursuing her claim, for which she has plausibly alleged each element of her prima facie case. At most, it goes to her credibility, which is a question for the jury.

**4. Bergin Cured Any Deficiency In Her Application When She Submitted A Second Set Of Questionnaire Answers.**

As alleged in the Complaint, shortly after Bergin was notified that her exemption was denied, she submitted another set of answers to the supplemental questionnaire. This time she answered all of the questions, which cured any alleged deficiency in her initial responses. *See* Warshawsky Decl., Exh. 1. Bergin received the denial notice on December 29, 2021, and she submitted her revised answers five days later on January 3, 2022. Compl. ¶¶ 28,32. The very next day, UCS rejected Bergin's submission. Compl. ¶ 33.

UCS should have accepted and considered Bergin's revised answers to the supplemental questionnaire, which were submitted five days before her final vaccination deadline of January 10, 2022, and while UCS was still actively considering and deciding requests for religious exemptions from other employees. *See* Warshawsky Decl., Exh. 2.

[3] For example, the questionnaire asked employees if they "ever" had received various vaccines or used various medications, which includes when they were children. How it it relevant, or even appropriate, for an employer to ask adult employees about vaccines and medications they may have taken as children? What does this have to do with the employees' objections to the COVID-19 vaccination policy?

There would have been no undue hardship on UCS to consider Bergin's revised answers. It was unreasonable and discriminatory for UCS to reject Bergin's submission out of hand.

Plaintiff's Exhibit 2 summarizes timeline information for 35 UCS employees, plus Jessica Bergin, who applied for religious exemptions to the COVID-19 vaccination policy. This information was obtained from the amended verified petition in another religious exemption lawsuit against the New York State Unified Court System, an Article 78 proceeding in Albany Supreme Court captioned *Nicole Ventresca-Cohen et al. against Janet M. DiFiore, et al.*, Index No. 901953-22. *See* Warshawsky Decl., Exh. 3.

Although Exhibit 2 represents a small subset of the approximately 900 employees who applied for religious exemptions, *see Ferrelli*, 2022 WL 673863, at *2 (noting that UCS "had granted 536 requests for religious exemptions and denied 363"[4]), it sheds relevant and helpful light on the present question. Exhibit 2 shows that UCS was actively deciding employee exemption requests throughout January 2022 and at least until February 9, 2022 (employee W. Ingraham). Exhibit 2 also shows that several employees, including those whose applications were approved, submitted their answers to the supplemental questionnaire in December 2021, long after the November 22, 2021 deadline imposed on Bergin. Indeed, Exhibit 2 shows that one employee (Z. Church) – whose application was approved – submitted his answers to the questionnaire on January 3, 2022, the *same day* that Bergin submitted her revised answers.

In light of the fact that UCS was still actively considering and deciding requests for religious exemptions when Bergin submitted her revised answers to the supplemental

[4] The fact that UCS granted more than 500 religious exemptions undercuts any argument it may try to assert later that approving Bergin's exemption would have caused it to suffer an undue hardship.

questionnaire, there would have been no undue hardship on UCS to consider Bergin's submission, which cured any alleged deficiency in her initial responses.

### 5. Plaintiff Should Be Allowed Appropriate Discovery, Including On Whether UCS Approved Religious Exemptions For Any Employees Who Did Not Answer The Supplemental Questionnaire.

As previously noted, Defendant argues that Bergin's incomplete initial response to the supplemental questionnaire "was a sufficient – and non-discriminatory – reason for UCS to deny her exemption request." (Def. Memo. at 7-8.) This argument raises an important question, however, as to whether UCS approved religious exemptions for any other employees who did not answer the supplemental questionnaire, either because they were not asked the questions or failed or refused to answer them. Only UCS knows the answer to this question.

From the district court's decision in *Ferrelli v. State of New York Unified Court System*, *supra*, a case challenging the UCS vaccine mandate, we learn that "[t]he vast majority of applicants for religious exemptions were required to complete the supplemental form." 2022 WL 673863, at *3. This means that some applicants were *not* required to answer the supplemental questionnaire, but we do not know the actual number.[5] We also do not know *why* some employees were not required to answer the questionnaire. Plaintiff should be allowed discovery on these issues.

We also do not know if any of the applicants who were not required to complete the questionnaire had their exemptions approved. If so, this raises questions about the role,

[5] Plaintiff's Complaint incorrectly alleges (¶ 27) that "[u]pon information and belief, the follow-up questions UCS posed to Bergin were asked of every UCS employee who applied for a religious exemption." Defendant parroted and relied upon this allegation in its motion (Def. Memo. at 4,8), despite knowing it was not accurate.

relevance, and importance of the questionnaire to the decision-making process in Bergin's case. Plaintiff should be allowed discovery on this issue.

Furthermore, it is possible that other employees who objected to the supplemental questionnaire, like Bergin did initially, nevertheless had their exemptions *approved*. If so, this likewise raises questions about the role, relevance, and importance of the questionnaire to the decision-making process in Bergin's case. Indeed, Plaintiff has reason to believe that, in fact, there were employees who objected to the questionnaire but whose exemptions were approved. *See* Warshawsky Decl., Exh. 4.

Plaintiff's Exhibit 4 contains copies of two questionnaire responses that Plaintiff obtained from a fellow UCS employee who is involved in an anti-mandate group. This person represented that these responses were submitted by UCS employees whose exemptions had been approved. (The employees allowed their responses to be shared with others, provided their names were redacted.) The documents show that one employee mostly objected to the questionnaire, and the other employee completely objected to the questionnaire. Yet their exemptions allegedly were approved. Plaintiff should be allowed discovery on this issue.[6]

Lastly, Plaintiff should be allowed discovery on whether any employees were allowed to submit untimely answers to the supplemental questionnaire, were allowed to submit revised answers to the questionnaire, and/or were allowed to submit additional exemption materials after receiving a denial notice. Such information would shed light on the degree to which UCS followed its own purported rules and procedures, and whether or not Bergin was treated fairly and reasonably in the case at bar.

---

[6] Plaintiff is offering these documents, not for "evidentiary" purposes, but to show that she has non-speculative grounds to seek discovery on the issue of whether UCS granted exemptions to any other employees who objected to the supplemental questionnaire.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss should be denied in its entirety and this case should be allowed to proceed on the merits. If the motion is not denied, Plaintiff asks that she be allowed appropriate discovery into the factual issues raised by Defendant's arguments, which may reveal these arguments to be unfounded and/or pretextual.

Respectfully submitted,

/s/ *Steven M. Warshawsky*


Steven M. Warshawsky
The Warshawsky Law Firm
118 North Bedford Road, Suite 100
Mount Kisco, NY 10549
Tel: (914) 864-3353
Email: smw@warshawskylawfirm.com

Andrea Paparella
Law Office of Andrea Paparella, PLLC
(pandemic mailing address)
4 Dunlap Street
Salem, MA 01970
Tel: (617) 680-2400
Fax: (914) 462-3287
Email: amp@andreapaparella.com


Dated: November 18, 2022