Law Firm of Steven M. Warshawsky
www.warshawskylawfirm.com

118 North Bedford Road, Suite 100
Mount Kisco, New York 10549

Tel: (914) 864-3353
Email: smw@warshawskylawfirm.com

June 14, 2023

**VIA ELECTRONIC CASE FILING**
Hon. Brian M. Cogan
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201
(718) 613-2230

**Re: Jessica Bergin v. NYS Unified Court System**
**Case No. 22-CV-5264 (BMC) (EDNY)**

Dear Judge Cogan:

I represent Plaintiff Jessica Bergin in the above-referenced Title VII action, which alleges that Ms. Bergin was wrongfully terminated after her employer, Defendant New York State Unified Court System ("UCS"), wrongly denied her request for a religious accommodation (exemption) to UCS's COVID-19 vaccination policy. I am writing to oppose Defendant's premotion letter dated June 14, 2023, (ECF No. 24) and to advise the Court and Defendant that Plaintiff intends to file a cross-motion for summary judgment on the issue of Defendant's liability for violating Title VII in this case.

**Plaintiff's Theory of Liability: Failure to Accommodate**

As an initial matter, Defendant's premotion letter reflects a fundamental conceptual error in conflating Plaintiff's failure to accommodate claim with a disparate treatment claim requiring proof of intentional discrimination. There is no requirement that Plaintiff prove intentional discrimination in this case.

Title VII provides, *inter alia*, that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . . ." 42 U.S.C. § 2000e-2(a)(1).

It is well-established that Title VII provides *three* separate grounds on which to assert a claim for religious discrimination: (i) disparate treatment; (ii) disparate impact; and (iii) failure to accommodate. *See Muhammad v. New York City Trans. Auth.*, 52 F. Supp.3d 468, 479 (E.D.N.Y. 2014) (citing cases).

Most pertinent here, multiple courts have noted that failure to accommodate claims and disparate treatment claims are distinct theories of liability under Title VII. *See, e.g., Marmulszteyn v. Napolitano*, No. 08-CV-4094(DLI), 2012 WL 3645776, at *1 (E.D.N.Y. Aug. 22, 2012) (construing complaint to assert religious accommodation claim and disparate treatment claim), *aff'd*, 523 Fed. Appx. 13 (2d Cir. 2013) (sum.) (same); *Augustus v. Brookdale Hosp. Med. Ctr.*, No. 13-CV-5374(DLI), 2015 WL

5655709, at *3 (E.D.N.Y. Sept. 24, 2015) ("Under a Title VII religious discrimination claim, a plaintiff may claim a violation 'under theories of either denial of reasonable accommodation or disparate treatment.'") (citations omitted); *Goldschmidt v. New York State Affordable Hous. Corp.*, 380 F. Supp.2d 303, 310 (S.D.N.Y. 2005) ("A plaintiff may claim a violation of religious discrimination under Title VII under theories of either denial of reasonable accommodation or disparate treatment.") (citing cases); *EEOC v. Greyhound Lines, Inc.*, 554 F. Supp.3d 739, 751 (D. Md. 2021) ("Generally, courts recognize two theories in asserting religious discrimination claims. They are denominated as the disparate treatment and failure to accommodate theories.") (internal quotation marks and citations omitted); *EEOC v. Aldi, Inc.*, No. 06-CV-01210(NBF), 2008 WL 859249, at *5 (W.D. Pa. Mar. 28, 2008) ("Under Title VII, employees may assert two different theories of religious discrimination: disparate treatment and failure to accommodate.") (citation omitted).

Here, Plaintiff asserts a claim for failure to accommodate, which derives from the statutory definition of "religion" under Title VII to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). Nearly 50 years ago the Supreme Court explained that "[t]he intent and effect of this definition was to make it an unlawful employment practice under § 703(a)(1) for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees . . . ." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977); *see also Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986) ("[t]he employer violates the statute unless it 'demonstrates that [it] is unable to reasonably accommodate . . . an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business."). Significantly, nowhere in *Hardison* and *Philbrook* did the Supreme Court state that intentional discriminatory animus is an element of a failure to accommodate claim under Title VII.

The leading case in the Second Circuit for the elements of a failure to accommodate claim under Title VII is *Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006), in which the court explained:

> [A]ll plaintiffs who seek to make out a prima facie case of religious discrimination must show that "(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement." *Knight v. Conn. Dep't of Pub. Health,* 275 F.3d 156, 167 (2d Cir.2001). Once a prima facie case is established by the employee, the employer "must offer [him or her] a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *Cosme v. Henderson,* 287 F.3d 152, 158 (2d Cir.2002).

Nowhere in *Baker* did the Second Circuit state that intentional discriminatory animus is an element of a failure to accommodate claim under Title VII. Plaintiff counsel is aware of no cases involving failure to accommodate claims in which such a requirement is articulated. *See, e.g., Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985) (first case adopting *Baker* framework), *remanded on other grounds*, 479 U.S. 60 (1986); *Jamil v. Sessions*, No. 14-CV-2355(PKC), 2017 WL 913601, at *6-7 (E.D.N.Y. Mar. 6, 2017); *Elmenayer v. ABF Freight Sys.*, No. 98-CV-4061(JG), 2001 WL 1152815, at *5 (E.D.N.Y. Sept. 20, 2001); *see also* cases cited above.

Defendant's reliance on *Ricci v. DeStefano*, 557 U.S. 557 (2009) is misplaced. *Ricci* did not involve any failure to accommodate claims under Title VII; rather, *Ricci* involved, *inter alia*, disparate

treatment claims. Indeed, the passage cited by Defendant expressly discusses "[d]isparate treatment cases" and states: "A disparate-treatment plaintiff must establish that the defendant had a discriminatory intent or motive for taking a job-related action." *Id.* at 577 (internal quotation marks and citations omitted). Nothing in *Ricci* remotely suggests, let alone holds, that a plaintiff asserting a failure to accommodate claim under Title VII likewise must show discriminatory intent or motive. Consequently, there is no requirement that Plaintiff prove intentional discrimination in this case. This is not the law.

**<u>Plaintiff Is Entitled To Summary Judgment</u>**

The undisputed evidence in this case – the answer (which admits most of Plaintiff's allegations), the documentary record of Ms. Bergin's application for a religious exemption, Defendant's verified interrogatory responses (attached), and Defendant's 30(b)(6) deposition testimony (still waiting for transcript) – proves as a matter of law that Ms. Bergin had a bona fide religious belief that conflicted with UCS's COVID-19 vaccination policy, that she informed her employer of this belief, and that she was fired for failing to comply with the vaccination policy. *See Baker, supra*. Importantly, UCS does <u>not</u> dispute the legitimacy of Ms. Bergin's religious objections to the COVID-19 vaccine. Furthermore, UCS does <u>not</u> allege that it would have caused them an undue hardship to grant Ms. Bergin's exemption. On this evidence, no reasonable jury could find in favor of Defendant. *See Philbrook*, 479 U.S. at 68 ("[t]he employer violates the statute unless it 'demonstrates that [it] is unable to reasonably accommodate . . . an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business."). Accordingly, Plaintiff is entitled to summary judgment on the issue of Defendant's liability for violating Title VII in this case.

**<u>Plaintiff Satisfied Her Burden Of Putting Defendant On Notice</u>**

Defendant's only argument in support of denying Ms. Bergin's application for a religious exemption, and for summary judgment, is that she "did not inform UCS of her alleged religious beliefs through the interactive process . . . ." Def. Premotion Letter at 1; *see also* Def. Interrogatory Response No. 6. ("Plaintiff failed to provide sufficient information about her beliefs which would have allowed the committee to grant her request."). Besides being factually incorrect – Ms. Bergin provided substantial written explanation of her religious objections to the COVID-19 vaccine – Defendant's argument misunderstands the plaintiff's burden in a Title VII failure to accommodate case and erroneously invokes the interactive process.

Beginning with the interactive process – which is a judge-made doctrine that does not appear in Title VII or the EEOC regulations (29 C.F.R. Part 1605) – it does <u>not</u> refer to a process whereby the employee is required to answer detailed questionnaires about his or her religious beliefs. There is no such requirement (discussed next). Rather, it refers to the mutual obligation of the employer and the employee to work cooperatively to find an *appropriate accommodation* for the employee's religious beliefs – not to determine whether or not the employee's religious beliefs are worthy of accommodation in the first place.

As the Supreme Court explained in *Philbrook, supra*, at 69: "courts have noted that 'bilateral cooperation is appropriate in the search for an *acceptable reconciliation* of the needs of the employee's religion and the exigencies of the employer's business.'" (citation omitted) (italics added); *see also, e.g., Miller v. Port Auth. of NY & NJ*, 351 F. Supp.3d 762, 779 (D.N.J. 2018) ("the employee has a duty to cooperate with the employer's good faith efforts to accommodate"); *Jamil, supra*, at *10 (same);

*Elmenayer, supra*, at *5 (same); *Cosme v. Henderson*, No. 98-CV-2754(VM), 2000 WL 1682755, at *6 (S.D.N.Y. Nov. 9, 2000) ("The process of finding a reasonable accommodation is intended to be an interactive process in which both the employer and employee participate.") There's literally nothing in these cases about requiring the employee to submit detailed written explanations of his or her religious beliefs as part of the interactive process. This is not the law.

Rather, the plaintiff's duty to provide the employer with adequate information about his or her religious beliefs arises under the second prong of the prima facie case – that "they informed their employers of this belief." *Baker, supra*.

As the district court explained in *Hickey v. State Univ. of NY*, No. 10-CV-1282(JS), 2012 WL 3064170, at *7 (E.D.N.Y. July 27, 2012): "To satisfy the second element of his prima facie case, Plaintiff must show that he notified Defendant of his conflicting religious belief." The relevant question, then, is how much information is required? The answer is "only enough information about an employee's religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements." *Id.* (quoting *Brown v. Polk City, Iowa*, 61 F.3d 650, 654 (8th Cir. 1995) (quoting *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1439 (9th Cir. 1993)); also citing *Dixon v. The Hallmark Cos., Inc.*, 627 F.3d 849, 856 (11th Cir. 2010); *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1020 (4th Cir. 1996). The federal circuit courts agree that this is not a heavy burden. As the Seventh Circuit has explained: "[A]n employee who wants to invoke an employer's duty to accommodate his religion under Title VII must give the employer fair notice of his need for an accommodation and the religious nature of the conflict." *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 450 (7th Cir. 2013) (citation omitted); *see also id.* (explaining that "[t]he employee must make the request reasonably clear so as to alert the employer to the fact that the request is motivated by a religious belief.").

Here, Ms. Bergin's initial application for a religious exemption, which included her detailed personal statement and a supporting letter from her pastor, along with her response to UCS's follow-up questionnaire in the form of a second personal statement, plainly satisfied her obligation under Title VII to put UCS on notice of her religious beliefs and how they conflicted with the COVID-19 vaccination policy. (Not to mention her revised response to the follow-up questionnaire that UCS simply rejected.) Under existing case law from multiple federal circuits, no reasonable jury could find that Ms. Bergin failed to satisfy this minimal burden. Because this is the sum and substance of Defendant's defense, it loses as a matter of law. The only way in which Defendant can win is if the Court fashions new law imposing some kind of heightened burden on employees to answer detailed questionnaires about their religious beliefs. Such an approach is not supported by any existing Title VII case law.

Significantly, Defendant already is on record acknowledging Ms. Bergin's good faith religious objections to the COVID-19 vaccine and denying that granting her an exemption – which they granted to hundreds of employees – would have caused them an undue hardship. *See* attached interrogatory responses. Under the *Bake*r framework, therefore, Plaintiff is entitled to judgment as a matter of law.

Respectfully submitted,

/s/ *Steven M. Warshawsky*

Steven M. Warshawsky