UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JESSICA BERGIN,

Plaintiff,

v.

NEW YORK STATE UNIFIED COURT SYSTEM,

Defendant.

**22-CV-5264-BMC**

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

***Oral Argument Requested***

Steven M. Warshawsky, Esq.
The Warshawsky Law Firm
*Attorney for Plaintiff*

## TABLE OF CONTENTS


TABLE OF CONTENTS.......................................................................................1

TABLE OF AUTHORITIES ..................................................................................2

PRELIMINARY STATEMENT ............................................................................4

STANDARD OF REVIEW....................................................................................5

UNDISPUTED MATERIAL FACTS.....................................................................5

A. Defendant's Answer ......................................................................................5

B. Defendant's Interrogatory Responses............................................................8

C. Defendant's 30(b)(6) Deposition Testimony..................................................10

LEGAL FRAMEWORK .......................................................................................11

ARGUMENT.......................................................................................................12

1. There is no undue hardship defense in this case ..........................................12

2. It is undisputed that Bergin has a bona fide, good faith religious objection to the COVID-19 vaccine ................................................................13

3. It is undisputed that Bergin informed UCS of her religious objection to the COVID-19 vaccine..................................................................................14

4. It is undisputed that Plaintiff was fired because she did not take the COVID-19 vaccine.........................................................................................17

5. Bergin was not legally required to answer the supplemental questionnaire...................................................................................................17

CONCLUSION ..................................................................................................19

## TABLE OF AUTHORITIES

**Cases**


*Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444 (7th Cir. 2013) ............................ 15,16

*Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60 (1986)......................................................... 18

*Baker v. Home Depot*, 445 F.3d 541 (2d Cir. 2006) .....................................................12,15,17

*Brown v. Polk County, Iowa*, 61 F.3d 650 (8th Cir. 1995) (en banc) .................................... 15

*Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012 (4th Cir. 1996)................................... 15

*Cosme v. Henderson*, 287 F.3d 152 (2d Cir. 2002) .......................................................... 15,18

*County of Washington v. Gunther*, 452 U.S. 161 (1981) ...................................................... 17

*Dixon v. Hallmark Companies, Inc.*, 627 F.3d 849 (11th Cir. 2010) .................................... 15

*Elmenayer v. ABF Freight Sys.*, No. 98-CV-4061(JG),
2001 WL 1152815 (E.D.N.Y. Sept. 20, 2001) ................................................................. 18

*Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571 (2d Cir. 2006) ........................... 5

*Groff v. DeJoy*, ___ U.S. ___, 143 S. Ct. 2279 (2023)............................................................ 11

*Heller v. EBB Auto Co.*, 3 F.3d 1433 (9th Cir. 1993) ............................................................ 15

*Hickey v. State Univ. of New York at Stony Brook Hosp.*, No. 10-CV-1282(JS),
2012 WL 3064170 (E.D.N.Y. July 27, 2012)............................................................... 15,19

*Heublein, Inc. v. United States*, 996 F.2d 1455 (2d Cir. 1997)................................................. 5

*Jamil v.* Sessions, No. 14-CV-2355(PKC),
2017 WL 913601 (E.D.N.Y. Mar. 6, 2017)...................................................................... 18

*Knight v. Conn. Dept. of Pub. Health*, 275 F.3d 156 (2d Cir. 2001)...................................... 15

*Lenzi v. Systemax, Inc.*, 944 F.3d 97 (2d Cir. 2019) ............................................................. 17

*Morangelli v. Chemed Corp.*, 922 F. Supp.2d 278 (E.D.N.Y. 2013)........................................ 8

*Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476 (2d Cir. 1985),
*aff'd in part and remanded*, 479 U.S. 60 (1985)......................................................... 15,19

*Redmond v. GAF Corp.*, 574 F.2d 897 (7th Cir. 1978)......................................................... 15

*Sofia v. Esposito*, No. 17-CV-1829(KPF),
2019 WL 6529432 (S.D.N.Y. Dec. 4, 2019) ........ 8

*Thomas v. National Assoc. of Letter Carriers*, 225 F.3d 1149 (10th Cir. 2000)........ 18

*Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977)........ 11

*Ventresca-Cohen v. DiFiore*, 77 Misc.3d 652 (Albany Supr. Oct. 26, 2022)........ 13

*Wechsler v. Hunt Health Sys., Ltd.*, No. 94-CV-8294(PKL),
1999 WL 672902 (S.D.N.Y. Aug. 27, 1999)........ 8

**Statutes, Regulations, and Rules**

42 U.S.C. § 2000e *et seq.*........ 18

42 U.S.C. § 2000e-2(a)(1)........ 11

42 U.S.C. § 2000e(j) ........ 11

29 C.F.R. Part 1605........ 18

29 C.F.R. § 1605.2(c)........ 12

Fed. R. Civ. P. 56(a)........ 4,5

**Other Authorities**

Black's Law Dictionary (11th Ed. 2019) ........ 13,14

## PRELIMINARY STATEMENT

Plaintiff Jessica Bergin, by her undersigned attorney, respectfully submits this memorandum of law in support of her motion for summary judgment with respect to Count One of the Complaint (Violation of Title VII), and states as follows:

This is a highly unusual case. Not because it involves any unique claims or facts. The legal issue is straightforward: Whether Defendant discriminated against Plaintiff in violation of Title VII by denying her request for a religious exemption to its COVID-19 vaccination policy and terminating her employment. Rather, it is unusual because *Defendant admits every element of Plaintiff's claim* – that she has a bona fide, good faith religious objection to the COVID-19 vaccine, that she explained her belief to UCS, that she was terminated because she refused to take the vaccine, and that it would not have caused an undue hardship to grant her an exemption – yet not only continues to fight the case, it believes it is entitled to summary judgment!

The party entitled to summary judgment, however, is Plaintiff. Another highly unusual circumstance, perhaps, but in light of Defendant's Answer, responses to interrogatories, and 30(b)(6) deposition testimony – none of which was available when Defendant filed its motion to dismiss – "there is no genuine dispute as to any material fact and [Plaintiff] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Importantly, now that Defendant has answered the Complaint and the parties have completed discovery, this case stands on very different footing than it did at the beginning. As demonstrated below, the undisputed evidence shows that Defendant is liable for violating Plaintiff's right to a reasonable accommodation under Title VII. The only issue remaining for a jury to decide is damages.

## STANDARD OF REVIEW

The standard of review applicable to the present motion for summary judgment is well-established: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]hen both sides move for summary judgment, neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it. When faced with cross-motions for summary judgment, a district court is not required to grant judgment as a matter of law for one side or the other. Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1997) (internal quotation marks and citations omitted).

## UNDISPUTED MATERIAL FACTS

### A. Defendant's Answer:

The following facts alleged in the Complaint were admitted by Defendant in its Answer and thus "are judicial admissions that bind the defendant throughout this litigation." *Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2d Cir. 2006).[1]

Plaintiff Jessica Bergin was employed by Defendant New York State Unified Court System (UCS) as a court officer beginning July 14, 2016. Compl. ¶¶ 2, 3, 10, 12; Ans. ¶¶ 2,

[1] Because the Complaint and Answer already are on file with the Court, they are not annexed hereto, in accordance with the Court's Individual Practices § III.B.4. Likewise, the relevant evidentiary documents referred to in the Complaint (e.g., UCS's COVID-19 vaccination policy, Bergin's application for a religious exemption, Bergin's response to the supplemental questionnaire, the denial letter) previously were filed with the Court in connection with Defendant's motion to dismiss. *See* ECF Docs. 13, 16.

3, 10, 12. Bergin most recently was assigned to the Richmond Criminal Court in Staten Island. *Id.* ¶ 12.

On September 10, 2021, UCS notified employees by official memorandum that "the Unified Court System will require all judges and non-judicial personnel to be vaccinated by September 27, 2021, unless otherwise approved for an exemption due to medical reasons or sincerely held religious beliefs." Compl. ¶ 14; Ans. ¶ 14.

In a section with the heading Exemptions, the memorandum stated, in relevant part, that "[e]xemptions to the mandatory vaccination requirement will be considered for . . . employees with sincerely held religious beliefs and practices that prohibit them from receiving a COVID-19 vaccine." The memorandum further stated that "[a]pplications for religious exemption must contain the employee's written, signed and notarized statement detailing the religious basis for his/her objection to COVID-19 vaccination and the religious principle(s) that guide the objections to COVID-19 vaccination." Compl. ¶ 15; Ans. ¶ 15.

On September 26, 2021, Bergin submitted a request for a religious exemption, using the prescribed forms and following the prescribed procedures. Compl. ¶ 21; Ans. ¶ 21.

Bergin supported her request with a three-page personal statement that included an extensive list of scriptural citations, along with a personalized, signed letter from her pastor. Compl. ¶¶ 22, 23; Ans. ¶¶ 22, 23.

Bergin's personal statement explained, *inter alia*, that "I am sincerely devoted to God, His Word and the Holy Trinity"; "I have been a practicing, devoted servant of Christ my entire life"; "I have a right of conscience to choose what enters my body"; being forced to take the COVID-19 vaccine "disobeys my religious faith"; "I try to live each day as pure as possible and most of my consumption is organic or from the earth"; "I strongly believe in the sanctity of human life" and "cannot, with a clear conscience, take these vaccines as it has been confirmed that they have been developed using ingredients and methods, which

unequivocally violate my ethics"; and "after extensive prayer, and moral and spiritual counseling, my family and I have decided not to put anything into our bodies against our sincere beliefs." Compl. ¶ 22; Ans. ¶ 22.

The pastor's letter stated that "the following teaching of International Christian Center demonstrates the principled religious basis on which Jessica Bergin holds a conscientious religious objection to the current Covid-19 vaccines" and specifically noted that "International Christian Center supports its religious belief [that] receiving a vaccine that uses aborted fetal cell lines in the development or testing of the vaccine violates their sincerely held religious beliefs regarding the sanctity and protection of pre-born children." Compl. ¶ 23; Ans. ¶ 23.

On November 8, 2021, UCS sent Bergin a form letter and questionnaire requesting "more information before it can make a final determination," including about other medications and vaccines that were allegedly developed using fetal cell lines that Bergin may have taken in the past. Compl. ¶ 24; Ans. ¶ 24.

In response, Bergin submitted another personal statement, on or about November 16, 2021. Compl. ¶ 25; Ans. ¶ 25. In her response, Bergin emphasized, *inter alia*, that "God created me in His image and made me a vessel of the Holy Spirit. I cannot take this vaccine as it conflicts with my sincerely held religious beliefs. Upon praying to Jesus, I was directed to His truth and divine wisdom and I would like to exercise my religious freedoms." *Id.* Bergin declined to answer the questions about her use of other medications and vaccines on the grounds that "[m]y family and I strive to keep our individual medical information private." *Id.* She closed by reiterating "[p]olitely, I will never stray from my sincere beliefs because it has been prayed upon between myself and my God." *Id.*

On December 29, 2021, Bergin received a form letter stating that her request for a religious exemption "was considered by the UCS Vaccination Exemption Committee and

denied." Compl. ¶ 28; Ans. ¶ 28. No reason was given for the denial. *Id.* Bergin was given until January 10, 2022, to submit proof of taking the first dose of a COVID-19 vaccine. *Id.*

In the denial letter, UCS did not question or deny the sincerity of Bergin's religious objections to the COVID-19 vaccines. Compl. ¶ 29; Ans. ¶ 29.

In the denial letter, UCS did not state that Bergin's religious exemption was denied because it would have caused an undue hardship. Compl. ¶ 30; Ans. ¶ 30.

On or about January 3, 2022, Bergin submitted another response to the supplemental questionnaire. Compl. ¶ 32; Ans. ¶ 32.

On January 4, 2022, Bergin's supervisor received an email from UCS Administrative Counsel, Mindy M. Jeng, Esq., stating that "[t]he Committee's decisions are final, and the new request will not be considered." Compl. ¶ 33; Ans. ¶ 33. The email reiterated that Bergin was required "to submit proof of vaccination by January 10." *Id.*

On January 10, 2022, Bergin was served with a memorandum advising her that she was "unfit for service because of your failure to comply with the Vaccination Mandate." Bergin was instructed "not to report to work until you have submitted the required proof of vaccination and the submission has been confirmed by your supervisor." Compl. ¶ 36; Ans. ¶ 36. Starting on January 10, 2022, Bergin remained on administrative leave, using her accrued paid leave days, until she was terminated effective April 7, 2022, for "fail[ing] to timely comply with the Vaccination Mandate." Compl. ¶ 49; Ans. ¶ 49.

**B. Defendant's Interrogatory Responses:**

Defendant's responses to Plaintiff's contention interrogatories "are treated by courts in this Circuit as 'judicial admissions' that generally estop the answering party from later seeking to assert positions omitted from, or otherwise at variance with, those responses." *Wechsler v. Hunt Health Sys., Ltd.*, No. 94-CV-8294(PKL), 1999 WL 672902, at *2 (S.D.N.Y. Aug. 27, 1999); *Morangelli v. Chemed Corp.*, 922 F. Supp.2d 278, 311 (E.D.N.Y. 2013)

(same) (quoting *Wechsler*); *see also, e.g., Sofia v. Esposito*, No. 17-CV-1829(KPF), 2019 WL 6529432, at *7 (S.D.N.Y. Dec. 4, 2019) ("Multiple courts in this District and Circuit have recognized that answers to contention interrogatories can bind parties to their answers.") (citing cases).[2]

Interrogatory No. 6: Identify all reasons why Jessica's Bergin's application for a religious exemption to the UCS COVID-19 vaccination policy was denied.

Answer: [boilerplate objections omitted] "UCS contends that Plaintiff failed to provide sufficient information about her beliefs which would have allowed the committee to grant her request."

Interrogatory No. 7: If Defendant contends that Ms. Bergin lacked a bona fide, good faith religious objection to the COVID-19 vaccine, identify, with as much specificity as possible, the basis for this contention.

Answer: [boilerplate objections omitted] "Further, UCS does not contend that Plaintiff lacked a bona fide, good faith religious objection, see response to Int. #6."

Interrogatory No. 9: If Defendant contends that it would have caused an undue hardship to grant Ms. Bergin a religious exemption to the UCS COVID-19 vaccination policy, identify, with as much specificity as possible, the nature, scope, and cost of this alleged undue hardship.

Answer: [boilerplate objections omitted] "Further, UCS does not contend that it would have caused an undue hardship to grant Plaintiff a religious exemption. See response to Int. #6."

---

[2] Defendant's verified interrogatory responses previously were filed with the Court as an exhibit to Plaintiff's premotion letter. *See* ECF Doc. 25.

### C. Defendant's 30(b)(6) Deposition Testimony:

Defendant designated Justin Barry, UCS's Chief of Administration, to testify on its behalf in response to Plaintiff's 30(b)(6) deposition notice. *See* Justin Barry Deposition dated June 1, 2023, at 13-16, annexed hereto as Exhibit A (excerpts only). Mr. Barry testified, in relevant part, as follows:

It is the policy of UCS to grant religious exemptions "for sincerely held religious beliefs which prohibit a judge or employee from receiving a COVID-19 vaccine." *Id.* at 21.

As part of the evaluation process, UCS did not take into consideration whether granting a religious exemption would impose an undue hardship on the court system; the only consideration was whether "the objection to the vaccination [was] religious in nature and was it sincerely held[,] period." *Id.* at 25.

"[T]he supplemental form was always considered in conjunction as a part of a whole with the initial form." *Id.* at 41.

"Virtually all of them [employees who requested religious exemptions] were asked to fill out one or both of the sections of the supplemental form and the ground rules were that a working group would then review both the initial form and the supplemental form once it had been submitted . . . ." *Id.* at 49-50.

In situations where an employee's answers to the supplemental form were considered unresponsive by the UCS vaccination exemption committee, the committee did not engage in any follow-up communications with the employee asking him or her to provide responsive answers to the questions. *Id.* at 60-61.

Bergin's "initial submission was perfectly adequate and it explained a religious belief based upon a number of issues that she presents and we wanted to explore it some more." *Id.* at 73-74.

Bergin's response to the supplemental questionnaire was considered insufficient because she did not answer each of the questions asked on the form. *Id.* at 76-77.

The personal statement that Bergin submitted in response to the supplemental questionnaire is "a fine statement that we would have taken no objection to as an attachment to the supplemental form, but we were looking for direct answers to all the questions in [sections] A and B." *Id.* at 77.

There is no other reason besides the nonresponsiveness of her supplemental form for why Bergin's application for a religious exemption was denied. *Id.* at 79.

## LEGAL FRAMEWORK

Title VII declares it unlawful, *inter alia*, "for an employer . . . to discharge any individual . . . because of such individual's . . . religion . . . ." 42 U.S.C. § 2000e-2(a)(1). Title VII further defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 2000e(j). As the Supreme Court recognized nearly 50 years ago: "The intent and effect of this definition was to make it an unlawful employment practice . . . for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees . . . ." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977); *see also Groff v. DeJoy*, ___ U.S. ___, 143 S. Ct. 2279, 2286 (2023) ("Title VII of the Civil Rights Act of 1964 requires employers to accommodate the religious practice of their employees unless doing so would impose an undue hardship on the conduct of the employer's business.") (internal quotation marks and citation omitted).

To make out a prima facie case of failure to accommodate under Title VII, employees "must show that (1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement." *Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006) (internal quotation marks and citation omitted).

Once a prima facie case is established by the employee, the employer "must offer [him or her] a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *Baker*, 445 F.3d at 546 (citation omitted); 29 C.F.R. § 1605.2(c) ("After an employee . . . notifies the employer . . . of his or her need for a religious accommodation, the employer . . . has an obligation to reasonably accommodate the individual's religious practices. A refusal to accommodate is justified only when an employer . . . can demonstrate that an undue hardship would in fact result from each available alternative method of accommodation.").

## ARGUMENT

### 1. There is no undue hardship defense in this case.

As an initial matter, let's clear away the issue on which Title VII reasonable accommodation cases usually turn: There is no undue hardship defense in this case (which makes this case unique among COVID-19 vaccination cases). In response to Plaintiff's Interrogatory No. 9, Defendant unequivocally answered that "UCS does not contend that it would have caused an undue hardship to grant Plaintiff a religious exemption." Furthermore, Mr. Barry testified that, in evaluating applications for religious exemptions, UCS did <u>not</u> take into consideration whether granting an exemption would impose an undue hardship on the court system; rather, the only consideration was whether "the

objection to the vaccination [was] religious in nature and was it sincerely held[,] period." Indeed, UCS granted *hundreds* of religious exemptions (kudos to UCS). *See Ventresca-Cohen v. DiFiore*, 77 Misc.3d 652, 657 (Albany Supr. Oct. 26, 2022) (noting that UCS granted 555 religious exemptions out of 937 applicants).

Accordingly, the "undue hardship" defense is inapplicable to this case and irrelevant to the Court's analysis of the present motion. Only the prima facie case is at issue. As demonstrated below, because each element of Plaintiff's prima facie case is undisputed, Plaintiff is entitled to judgment as a matter of law.

**2. It is undisputed that Bergin has a bona fide, good faith religious objection to the COVID-19 vaccine.**

The first element of Plaintiff's prima facie case is that she held a bona fide religious belief conflicting with an employment requirement. *See Baker*, *supra*.

Here, it is *undisputed* that Bergin has a bona fide, good faith religious objection to the COVID-19 vaccines. Neither in response to Bergin's application nor during this litigation has Defendant disputed either the religious nature of Bergin's objections to the COVID-19 vaccine or the sincerity of her religious beliefs. Significantly, in response to Plaintiff's Interrogatory No. 7, Defendant unequivocally answered that "UCS does not contend that Plaintiff lacked a bona fide, good faith religious objection." Consequently, Defendant concedes that Bergin's objection was <u>religious</u>. Defendant concedes that it was <u>bona fide</u>, i.e., (1) made in good faith; without fraud or deceit; (2) sincere; genuine. *See* Black's Law Dictionary (11th Ed. 2019) (accessed via Westlaw). And Defendant concedes that it was made in <u>good faith</u>, i.e., a state of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one's duty or obligation, (3) observance of reasonable commercial standards of fair dealing in a given trade or business, or (4) absence of intent to

defraud or to seek unconscionable advantage. *Id.* Accordingly, there is nothing for a jury to decide with respect to this issue.

The first element of Plaintiff's prima facie case is established as a matter of law.

**3. It is undisputed that Bergin informed UCS of her religious objection to the COVID-19 vaccine.**

The second element of Plaintiff's prima facie case is that she informed her employer of her conflicting religious belief. *See Baker*, *supra*.

Here, it is undisputed that Bergin submitted an application for a religious exemption to UCS's COVID-19 vaccination policy using the prescribed forms and following the prescribed procedures. Bergin supported her application with a three-page personal statement that included an extensive list of scriptural citations, along with a personalized, signed letter from her pastor that demonstrated the "principled religious basis" for Bergin's objections to the COVID-19 vaccine. Bergin submitted another personal statement reiterating her religious objections in response to the supplemental questionnaire.

Significantly, Mr. Barry testified that Bergin's "initial submission was perfectly adequate and it explained a religious belief based on a number of issues that she presents and we wanted to explore it some more." Whether or not the committee "wanted to explore" Bergin's religious beliefs "some more," Bergin satisfied *her* obligation under Title VII when she submitted her "perfectly adequate" application that "explained a religious belief" conflicting with the COVID-19 vaccination policy. As Mr. Barry testified, an employee's answers to the supplemental questionnare were considered in conjunction with the initial application. Despite the alleged deficiencies in Bergin's response to the supplemental questionnaire, it is undisputed that her initial application adequately informed UCS about her religious objections to the COVID-19 vaccination policy. Nothing more was required.

To plaintiff counsel's knowledge, neither the Supreme Court nor the Second Circuit has opined regarding the quantum of information that an employee must provide in support of a request for a religious accommodation under Title VII. Neither the statute nor the regulations address this issue. The relevant Second Circuit precedents speak in generalities. *See Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985) ("informed the employer of this belief"), *aff'd in part and remanded*, 479 U.S. 60 (1985); *Knight v. Conn. Dept. of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001) ("informed their employers of this belief"); *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002) ("employer, once notified, must offer the aggrieved employee a reasonable accommodation"); *Baker*, 445 F.3d at 546 ("informed their employers of this belief").

Several other circuit courts have addressed this question more explicitly, and they unanimously agree that the informational burden on an employee is <u>low</u>:

In *Heller v. EBB Auto Co.*, 3 F.3d 1433 (9th Cir. 1993), the Ninth Circuit explained that "[a] sensible approach would require only enough information about an employee's religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements." *Id.* at 1439 (citing *Redmond v. GAF Corp.*, 574 F.2d 897, 902 (7th Cir. 1978)); *see also Brown v. Polk County, Iowa*, 61 F.3d 650, 654 (8th Cir. 1995) (en banc) (citing *Heller*); *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019-20 (4th Cir. 1996) (citing *Redmond* and *Heller*); *Dixon v. Hallmark Companies, Inc.*, 627 F.3d 849, 856 (11th Cir. 2010) (citing *Brown*). District Judge Seybert quoted and followed *Heller* and *Brown* in *Hickey v. State Univ. of New York at Stony Brook Hosp.*, No. 10-CV-1282(JS), 2012 WL 3064170, at *7 (E.D.N.Y. July 27, 2012). More recently, in *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444 (7th Cir. 2013), the Seventh Circuit explained that "an employee who wants to invoke an employer's

duty to accommodate his religion under Title VII must give the employer fair notice of his need for an accommodation and the religious nature of the conflict." *Id.* at 450. Likewise, "[t]he employee must make the request reasonably clear so as to alert the employer to the fact that the request is motivated by a religious belief." *Id.*

Thus, looking back over several decades of case law, there are three potential formulations of the plaintiff's burden on this issue: (1) whether or not the employee "informed" the employer of her belief; (2) whether or not the employee provided "enough information" to permit the employer to understand the existence of a conflict between the employee's religious beliefs and the employer's job requirements; and (3) whether or not the employee gave "fair notice" to the employer of her need for an accommodation based on religion. Whatever formulation is applied to the case at bar, no reasonable jury could find that Bergin failed to satisfy this burden, especially given Mr. Barry's acknowledgment that her initial application was "perfectly adequate" and "explained a religious belief."

In sum, however articulated, the appropriate standard under Title VII requires that only basic information about an employee's religious beliefs be provided to the employer. Bergin's multiple, thoughtful, detailed submissions in support of her application for a religious exemption were more than sufficient to meet her burden. Nothing in the statute, regulations, or controlling case law supports a more demanding standard. Certainly, there is no support for Defendant's position that employees are required – as a prerequisite for asserting reasonable accommodation claims under Title VII – to answer detailed questionnaires about how their religious beliefs impact other areas of their lives, including their personal healthcare decisions. Such an approach is blatantly inconsistent "with Title VII's broad remedial purpose, which counsels against 'interpretations of Title VII that deprive victims of discrimination of a remedy, without clear congressional mandate.'" *Lenzi*

*v. Systemax, Inc.*, 944 F.3d 97, 110 (2d Cir. 2019) (quoting *County of Washington v. Gunther*, 452 U.S. 161, 178 (1981)).

Accordingly, based on the undisputed facts in this case – including Mr. Barry's acknowledgement that Bergin's initial application was "perfectly adequate" and "explained a religious belief" – no reasonable jury could find that Bergin did not sufficiently inform UCS of her religious objections to the COVID-19 vaccination policy.

The second element of Plaintiff's prima facie case is established as a matter of law.

**4. It is undisputed that Plaintiff was fired because she did not take the COVID-19 vaccine.**

The third and final element of Plaintiff's prima facie case is that she was disciplined for failing to comply with the conflicting employment requirement. *See Baker*, *supra*. Again, this is undisputed. Bergin was fired for "fail[ing] to timely comply with the Vaccination Mandate."

The third element of Plaintiff's prima facie case is established as a matter of law.

**5. Bergin was not legally required to answer the supplemental questionnaire.**

As demonstrated above, each of the elements of Plaintiff's prima facie case has been established as a matter of law. Consequently, it is black letter law that Defendant "must offer [Bergin] a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *See Baker*, 445 F.3d at 546. Because there is no undue hardship defense in this case, *see* Point 1 above, Defendant is liable. Plaintiff wins.

Having conceded every element of Plaintiff's claim, Defendant's entire defense is based on the argument that Bergin was legally required to answer each of the questions on the supplemental questionnaire as set forth by the vaccination exemption committee. This is not correct. There is no such requirement anywhere in the statute, regulations, or controlling case law. As explained above, an employee's obligation under Title VII is

limited to informing the employer that she has a bona fide religious practice or belief conflicting with an employment requirement. Bergin satisfied this obligation.

Unlike the Americans With Disabilities Act, there is no formal "interactive process" under Title VII. *See* 42 U.S.C. § 2000e *et seq.*; 29 C.F.R. Part 1605. Moreover, where courts have imposed such a requirement under Title VII, it has been directed at *identifying an appropriate accommodation*, which is not at issue here. As the Supreme Court has explained: "[C]ourts have noted that bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986) (internal quotation marks and citations omitted); *see also*, *e.g.*, *Cosme v. Henderson*, 287 F.3d at 158 ("In formulating such an accommodation, both the employer and employee should remain flexible, with an eye toward achieving a mutually acceptable adjustment."); *Jamil v. Sessions*, No. 14-CV-2355(PKC), 2017 WL 913601, at *10 (E.D.N.Y. Mar. 6, 2017) ("The process of finding a reasonable accommodation is 'intended to be an interactive process in which both the employer and employee participate.'") (quoting *Elmenayer v. ABF Freight Sys.*, No. 98-CV-4061(JG), 2001 WL 1152815, at *5 (E.D.N.Y. Sept. 20, 2001)); *Thomas v. National Assoc. of Letter Carriers*, 225 F.3d 1149, 1154 (10th Cir. 2000) (same – the original source for *Elmenayer* language). This conception of the interactive process has no application to the case at bar, however, because it is undisputed that the reasonable accommodation to be provided was an exemption.

Importantly, Plaintiff is <u>not</u> arguing that an employer cannot make reasonable inquiries into the *sincerity* of an employee's asserted religious beliefs. Although the *verity* of an employee's religious beliefs cannot be questioned, "a sincerity analysis is necessary in order to differentiate between those beliefs that are held as a matter of conscience and

those that are held as a matter of deception and fraud." *Philbrook*, 757 F.2d at 482 (internal quotation marks, alterations, and citation omitted); *see also Hickey*, 2012 WL 3064170, at *6 (same). Presumably Defendant will argue that this was the purpose of the supplemental questionnaire, and that by not answering the questions Bergin forfeited her right to a reasonable accommodation.

The fatal flaw in this argument – besides there being no legal support for this draconian position – is that the sincerity of Bergin's religious objection to the COVID-19 vaccination policy is *not disputed* and has been established as a matter of law. *See* Point 2 above. In this case, Defendant has admitted that Bergin has a bona fide, good faith religious objection to the COVID-19 vaccine. Sincerity is not at issue. Whether or not Bergin properly answered the supplemental questionnaire, therefore, is legally irrelevant. Title VII is not a game of "gotcha." An employer cannot acknowledge an employee's bona fide, good faith religious belief but then refuse to provide a reasonable accommodation simply because the employee failed to answer a detailed questionnaire about her belief. This makes no sense, and it is not the law. Having admitted that Bergin has a bona fide, good faith religious objection to the COVID-19 vaccine, UCS cannot escape liability for failing to grant her a religious exemption.

## <u>CONCLUSION</u>

As noted at the outset, this is a unique case when compared to other reasonable accommodation cases under Title VII. Defendant does <u>not</u> dispute that Bergin has a bona fide, good faith religious objection to UCS's COVID-19 vaccination policy. Defendant does <u>not</u> contend that it would have imposed an undue hardship to grant Bergin a religious exemption. Furthermore, Defendant acknowledges that Bergin informed UCS of her

religious beliefs, yet argues that she "failed to provide sufficient information which would have allowed the committee to grant her request" (response to Interrogatory No. 6) because she did not properly answer the supplemental questionnaire. Nevertheless, Defendant concedes that Bergin's beliefs are religious in nature and are sincerely held, which was the alleged (and only valid) purpose of the questionnaire. Defendant's position is factually and legally untenable. Summary judgment should be entered in favor of Plaintiff finding Defendant liable with respect to Count One of the Complaint (Violation of Title VII), and this case should be scheduled for a trial on damages only.

Dated: July 28, 2023

Respectfully submitted,

By: /s/ Steven M. Warshawsky

STEVEN M. WARSHAWSKY
The Warshawsky Law Firm
*Attorney for Jessica Bergin*
118 North Bedford Road, Suite 100
Mount Kisco, New York 10549
T: (914) 864-3353
E: smw@warshawskylawfirm.com