*To commence the 30 day statutory time period for appeals as of right (CPLR 5513[a]), you are advised to serve a copy of this order, with notice of entry, upon all parties.*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND
----------------------------------------------------------------------X
CHERYL FERRELLI, JASON PASHOUKOS, MARIE ZWEIG, MELISSA MAINIERI, and SARAH SMITH

Plaintiffs-Petitioners,

-against-

THE STATE OF NEW YORK, THE NEW YORK STATE UNIFIED COURT SYSTEM, HON. LAWRENCE K. MARKS, NANCY J. BARRY, and JUSTIN A. BARRY

Defendants-Respondents.
----------------------------------------------------------------------X

**DECISION, ORDER and JUDGMENT**
Index No.: 031506/2022

ZUGIBE, J.

**PRELIMINARY STATEMENT**

CHERYL FERRELLI ("Ferrelli"), JASON PASHOUKOS ("Pashoukos"), MARIE ZWEIG ("Zweig"), MELISSA MAINIERI ("Mainieri") and SARAH SMITH ("Smith") (hereinafter collectively referred to as "Petitioners") make an application pursuant to N.Y. CIV. PRAC. L&R ("CPLR") Article 78 as against THE STATE OF NEW YORK ("NYS"), THE NEW YORK STATE UNIFIED COURT SYSTEM ("UCS"), the HON. LAWRENCE K. MARKS ("Judge Marks"), NANCY J. BARRY, and JUSTIN A. BARRY (hereinafter, with the exception of the STATE OF NEW YORK, collectively referred to as "Respondents"[1]) seeking a judgment declaring the termination of Petitioners' employment based on the policy that required them to

[1] Although the "STATE OF NEW YORK" is named as a party in the caption of this proceeding, the Court notes that no affidavit of service was filed indicating the State was ever served, nor has the state appeared in these proceedings. Further, counsel for the other named Respondents has indicated in his motion papers that his firm does not represent the State of New York in this proceeding. Therefore, as used in this Decision, the term "Respondents" does <u>not</u> include the State of the New York.

receive the COVID-19 vaccination to be arbitrary, capricious, and an abuse of discretion. In addition, Petitioners seek an Order reinstating their employment with UCS as well as for compensatory damages in the form of back pay, front pay, past and future employment benefits, damages for emotional distress, punitive damages, and counsel fees.

In addition, Respondents have filed a motion to dismiss the aforementioned Petition pursuant to CPLR §3211(a)(7) and §7804(f) based on Petitioners' failure to state a cause of action.

In connection with these applications, the Court has read and considered the following papers:

| | **NYSCEF DOC. NOS.:** |
|---|---|
| Notice of Petition/Verified Petition/Exhibits A-1 Through E-7 | 1-37 |
| Notice of Motion to Dismiss/Affidavit in Support/ Exhibits 1-7 | 44, 46-53 |
| Memorandum of Law in Support of Motion to Dismiss | 45 |
| Affirmation in Opposition[2]/Exhibits A-J | 59-69 |
| Memorandum of Law in Opposition | 58 |
| Memorandum of Law in Reply | 70 |

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

March of 2020 was an unprecedented time in the history of our nation and the world. By Administrative Order ("AO") of the Chief Judge of the State of New York dated March 17, 2020, said AO having been executed in response to the Centers for Disease Control and Prevention ("CDC") recommendations for preventing the spread of COVID-19, the New York State Courts adjourned all non-essential matters without date. Those were challenging days, to say the very least. Though Courts quickly responded by creating ways to litigate in a primarily virtual venue, life as we all knew it ceased to exist.

[2] This Affirmation was erroneously designated as an "Affirmation in Reply" however the Court notes that the document is an Affirmation in *Opposition* submitted in response to the Respondents' Motion to Dismiss. NYSCEF Doc. 59, ¶2.

Many circumstances surrounding the COVID-19 pandemic have changed since the early days of March 2020. This coronavirus has undergone a myriad of mutations and variations, always keeping health experts and the public guessing as to how each variant will impact our day to day lives. The relentless feeling of being "unsettled" puts it lightly. Further, and unfortunately, our society has had to learn ways to live with this ever-changing phenomenon, primarily through the use of various types of mitigation tactics in order to decrease the spread of the virus, such as installing better ventilation systems in buildings, wearing facemasks in certain settings where physical distancing is not practical or possible and in areas where transmission is high, increasing personal hygiene strategies (such as handwashing) and increasing the frequency of surface cleaning and disinfection, to name just a few. Most significantly, pharmaceutical companies worked swiftly to create vaccines with the goal of reducing one's chances of contracting the virus, mitigating the symptoms or severity of the virus, and/or decreasing the risk of spread.

In response to the COVID-19 virus, UCS administrative staff worked tirelessly to create policies and procedures that have allowed our courts to fully reopen in as safe a manner as possible so that justice need not be delayed any longer than absolutely necessary. Further, through said policies, officials endeavored to restore as many in-person proceedings as possible, as I think we can all agree that a return to some semblance of normalcy was necessary. Courthouses are public places that many people are required to enter every single day. The courtrooms themselves are enclosed spaces, and not all of them have windows. Jurors, whether seated in the jury box or deliberating in a jury room, are in close proximity to one another. The Court's many staff members and employees interact frequently with litigants and members of the public. It therefore goes without saying that it is no simple task to formulate policies and procedures that endeavor to keep everyone safe from a virus that spreads via airborne particles and droplets in this type of a setting.

On August 23, 2021, the U.S. Food and Drug Administration ("FDA") announced its final approval of the COVID-19 vaccine. On August 25, 2021, following the FDA's announcement, Chief Administrative Judge Marks communicated that UCS would be requiring all judicial and non-judicial employees to get vaccinated against COVID-19. The Court's vaccination policy was to take effect on September 27, 2021. *See*, NYSCEF Doc. 47, Ex. A.

On September 10, 2021, UCS issued a memorandum outlining the implementation of the mandatory vaccination policy. The memorandum also notified all UCS employees that exemptions to the vaccine requirement would be considered "for employees with underlying medical conditions that make receiving the COVID-19 vaccine unsafe for them and employees with sincerely held religious beliefs and practices that prohibit them from receiving a COVID-19 vaccine." NYSCEF Docs. 3 and 47 (Ex. B). The memorandum directed those seeking an exemption to the web portal containing the required forms and instructions. In addition, employees were notified that "[n]o exemption requests will be considered unless they are *fully completed on the appropriate form* and filed through the portal." *Id.* (emphasis added). Employees were further informed that they would be notified in writing of UCS' decision with respect to their request, or if more information was needed to consider the request. *Id.* The exemption requests were reviewed and considered by an eleven (11) member "Vaccination Exemption Review Committee" (the "Committee") comprised of individuals with diverse and varied backgrounds and areas of expertise. *See*, NYSCEF Doc. 49, ¶8. Employees who submitted exemption requests were notified in writing of the Committee's ultimate decision. On March 21, 2022, those who remained noncompliant with the policy were notified that termination would result absent UCS' receipt of proof of vaccination by April 4, 2022. *See,* NYSCEF Doc. 46, ¶23.

It is the denial of the five (5) named Petitioners' religious exemption requests, same having resulted in their termination from employment with UCS, that is the subject of the instant Article 78 proceeding.

Petitioner Ferrelli is a certified court reporter who began working for UCS in 1993. NYSCEF Doc. 1, ¶16. On or about October 18, 2021, in accordance with the vaccination policy referred to above, Ferrelli applied for a religious exemption from the mandate. *Id.* at ¶18. On November 18, 2021, UCS requested Ferrelli provide additional information with respect to her exemption request. *Id.* at ¶20. Ferrelli responded to the supplemental information request on December 1, 2021. *Id.* at ¶21; NYSCEF Doc. 6. On January 6, 2022, Ferrelli was informed in writing that her request for a religious exemption was denied. *See*, NYSCEF Doc. 7.

Petitioner Mainieri is a secretary who began working for UCS in 1999. NYSCEF Doc. 1, ¶27. On or about September 21, 2021, in accordance with the vaccination policy referred to above, Mainieri applied for a religious exemption from the mandate. *Id.* at ¶29. On November

5, 2021, UCS requested Mainieri provide additional information with respect to her exemption request. *Id.* at ¶31. Mainieri responded to the supplemental information request on November 16, 2021. *Id.* at ¶32; NYSCEF Doc. 13. On December 23, 2021, Mainieri was informed in writing that her request for a religious exemption was denied. *See*, NYSCEF Doc. 14.

Petitioner Pashoukos is a court officer who began working for UCS in 2015. NYSCEF Doc. 1, ¶38. On or about September 23, 2021, in accordance with the vaccination policy referred to above, Pashoukos applied for a religious exemption from the mandate. *Id.* at ¶40. On November 15, 2021, UCS requested Pashoukos provide additional information with respect to his exemption request. *Id.* at ¶42. Pashoukos responded to the supplemental information request on November 24, 2021. *Id.* at ¶43; NYSCEF Doc. 20. On January 7, 2022, Pashoukos was informed in writing that his request for a religious exemption was denied. *See*, NYSCEF Doc. 21.

Petitioner Zweig is a principal appellate court attorney who began working for UCS in 2001. NYSCEF Doc. 1, ¶48. On or about September 20, 2021, in accordance with the vaccination policy referred to above, Zweig applied for a religious exemption from the mandate. *Id.* at ¶50. On November 5, 2021, UCS requested Zweig provide additional information with respect to her exemption request. *Id.* at ¶52. Zweig responded to the supplemental information request on November 17, 2021. *Id.* at ¶53; NYSCEF Doc. 27. On December 29, 2021, Zweig was informed in writing that her request for a religious exemption was denied. *See*, NYSCEF Doc. 28.

Petitioner Smith is a judicial secretary who began working for UCS in 2004. NYSCEF Doc. 1, ¶59. Smith avers that she submitted a timely request for a religious exemption from the vaccine mandate in accordance with the vaccination policy referred to above, though the Court notes that said request is undated. NYSCEF Doc. 32. On November 19, 2021, UCS requested Smith provide additional information with respect to her exemption request. NYSCEF Doc. 1, ¶63. Smith responded to the supplemental information request, though the response is also undated. *Id.* at ¶64; NYSCEF Doc. 34. On January 14, 2022, Zweig was informed in writing that her request for a religious exemption was denied. *See*, NYSCEF Doc. 35.

Despite the denial of their religious exemption requests, the Petitioners, with the exception of Pashoukos, elected not to comply with the vaccination requirement by the allotted deadline. Each was sent a notification that they failed to meet their job qualifications, and that as

a result, they would not be permitted to report to work unless and until submission of proof of vaccination. Further, Petitioners were advised that their absences from work as a result of their failure to comply with the vaccination requirement would be charged to their accrued leave balances. *See generally*, NYSCEF Docs. 9, 15, 16, 22, 23, 29, 30, 36, 37. Pashoukos opted to obtain the vaccination and submitted proof of same either on or before the deadline. Accordingly, Pashoukos remains employed as a court officer by UCS. *See*, NYSCEF Doc. 46, ¶25. The remainder of the Petitioners do not. Though Pashoukos was not, therefore, terminated from employment, he still seeks damages against Respondents.

The Respondents herein include UCS, as well as the Hon. Lawrence K. Marks, Chief Administrative Judge of the New York State Courts, Nancy J. Barry, the Chief of Operations for UCS, and Justin A. Barry, the Chief of Administration for UCS. The individuals are named in their official capacities *only*. NYSCEF Doc. 1, ¶6-8.

**CONTENTIONS OF THE PARTIES**

The Petition asserts three causes of action. The first cause of action alleges that UCS' actions were violative of the New York State Constitution, were arbitrary and capricious and irrational in their implementation, and constituted an abuse of discretion. Petitioners contend that the policy as applied relies upon a subjective process of evaluating narrative explanations provided to support one's religious belief system and that UCS' supplemental requests for information were aggressive and interrogative in nature (NYSCEF Doc. 1, at ¶20, 22, 31, 42, 52, 63), that they caused embarrassment and humiliation, and that they demonstrated hostility and bias (NYSCEF Doc. 1, at ¶22, 33, 44, 54, 65).

Petitioners point to federal case law that they assert indicates once someone alleges that they sincerely hold a particular religious belief, any further inquiry into the validity of those beliefs violates the First Amendment. In addition, Petitioners contend the policy as applied violates the free exercise clause of the New York State Constitution insofar as they are subject to termination from employment if they do not submit to a vaccination that violates their sincerely held religious beliefs. Since, Petitioners submit, UCS can achieve their safety goals through less restrictive means (i.e. masking, distancing, testing), and because the mandate does not extend to members of the public who are freely able to enter the courthouse with or without being vaccinated, the mandate constitutes an abuse of discretion.

Second, Petitioners contend that the Respondents' actions in general infringe upon Petitioners constitutional rights to privacy and bodily integrity as guaranteed by Article 1, section 6 of the N.Y.S. Constitution and New York common law. Petitioners aver that the vaccine is tantamount to a "permanent medical procedure" and that to require employees to submit to same is violative of their "liberty interest in their right of bodily integrity." NYSCEF Doc. 1, ¶89.

Finally, Petitioners allege that UCS' actions in issuing a vaccine mandate exceed their delegation of authority from the Legislature. Petitioners contend that matters of public policy are reserved for the legislature, and not the Courts.

In opposition to the Petition, Respondents move to dismiss. They assert that one of the Petitioners herein, Ms. Ferrelli, already challenged the Court's vaccine policy in U.S. District Court, Northern District of New York, on many of the same grounds. Respondents point out that that she withdrew her case after unsuccessfully moving the Court for a temporary restraining order and preliminary injunction (NYSCEF Doc. 51) and that she re-filed here along with the other four (4) Petitioners in an attempt to forum shop.

Allegations of forum shopping aside, Respondents argue that Petitioners' contention that the vaccine mandate violates their free exercise clause is irrelevant, as the policy is facially neutral, and satisfies rational basis review. Further, Respondents point out that there is United States Supreme Court precedent indicating due process rights may be limited in some regard by policies enacted to address a public health crisis. In response to the allegation that the Courts have exceeded their delegation of authority from the state legislature, Respondents point to the New York State Constitution itself, which they contend clearly allows UCS to "establish standards and administrative policies for general application throughout the state." NYS Constitution, Art. VI, sec. 28. Finally, Respondents contend that the Petition was untimely filed based on their contention that the statute of limitations began to run upon the issuance of the challenged policy. For all the reasons set forth in their motion, Respondents request that the Petition be dismissed in its entirety.

In determining the motion to dismiss, the Court shall address each of Respondents' points separately, *infra*.

**STANDARD OF REVIEW**

"On a motion pursuant to CPLR 3211(a)(7) to dismiss for failure to state a cause of action, the court must afford the pleading a liberal construction, accept all facts as alleged in the

pleading to be true, accord the plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory[.]" *Phillips v. Taco Bell Corp*., 152 A.D.3d 806, 807, 60 N.Y.S.3d 67, 69 (2d Dept. 2017) (internal references omitted). The same holds true in a pre-answer motion to dismiss commenced pursuant to CPLR 7804(f). *In the Matter of 1300 Franklin Avenue Members, LLC v. Board of Trustees of Incorporated Village of Garden City*, 62 A.D.3d 1004, 1006, 880 N.Y.S.2d 133 (2d Dept. 2009). Bare legal conclusions, however, need not be presumed true by the Court. *See, Brown v Foster*, 73 A.D.3d 917, 900 N.Y.S.2d 432 (2d Dept. 2010). Further, "'factual claims either inherently incredible or flatly contradicted by documentary evidence' are not entitled to any presumption of truth[.]" *Levy v. Stony Point*, 185 A.D.3d 689, 690, 127 N.Y.S.3d 504, 506 (2d Dept. 2020) (internal citations omitted). "Accordingly, '[w]hen evidentiary material outside the pleading's four corners is considered, and the motion is not converted into one for summary judgment, the question becomes whether the pleader has a cause of action, not whether the pleader has stated one and, unless it has been shown that a material fact as claimed by the pleader is not a fact at all, and unless it can be said that no significant dispute exists regarding it, dismissal should not eventuate'" *Id.* at 690-91 (internal citations omitted).

As relevant here, it is noted that judicial review of an administrative agency's action is limited to determining whether same was made in violation of lawful procedures, was affected by an error of law or was arbitrary and capricious. In determining whether the action was in fact arbitrary and capricious, the Court notes that generally "[t]his standard is, of course, an extremely deferential one: 'The courts cannot interfere [with an administrative tribunal's exercise of discretion] unless there is *no rational basis* for [its] exercise ... or the action complained of is arbitrary and capricious,' a test which 'chiefly relates to whether a particular action should have been taken or is justified ... and whether the administrative action is *without foundation in* fact'" *Beck Nichols v. Bianco,* 20 N.Y.3d 540, 559, 964 N.Y.S.2d 456, 465-66 (2013) *citing Matter of Pell v. Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County,* 34 N.Y.2d 222, 231, 356 N.Y.S.2d 833 (1974) (emphasis in original).

Indeed, the Court is not permitted to substitute its judgment for that of the agency that made the determination, but rather, "'must ascertain *only* whether there is a rational basis for the decision or whether it is arbitrary and capricious'" *Cohen v. State*, 2 A.D.3d 522, 525, 770

N.Y.S.2d 361, 363 (2d Dept. 2003) (internal citation omitted). "Consequently, even if different conclusions could be reached as a result of conflicting evidence, a court may not substitute its judgment for that of the agency where the agency's determination is supported by the record[.]" *Id.* (internal citations omitted).

## LEGAL ANALYSIS

*A. The Free Exercise Clause*

Petitioners contend that UCS' vaccine policy violates their free exercise rights and that it does not satisfy the "strict scrutiny" test. In opposition, Respondents argue that the mandate does not violate Petitioners' free exercise rights, as it does not force them to accept a vaccination against their will, and that in any event, the mandate is not subject to strict scrutiny review.

Freedom of religion is guaranteed by the United States Constitution and the Constitution of the State of New York. U.S. CONST. Amend. 1; N.Y. CONST. Art. 1, § 3. The Free Exercise Clause acts to ensure that individuals enjoy the freedom to practice the religious faith of their choice, without government interference. *See, School Dist. of Abington Tp., Pa. v. Schempp*, 374 U.S. 203, 83 S.Ct. 1560 (1963). The Free Exercise Clause does not, however, "'relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his [or her] religion prescribes (or proscribes).'" *Central Rabbinical Congress of U.S. & Canada v. NYC Dept. of Health & Mental Hygiene*, 763 F.3d 183, 193 (2d. Cir. 2014) (internal citation omitted). As opposed to laws that are not both neutral and generally applicable which are subject to strict scrutiny review by the Court, laws that are *both* neutral *and* generally applicable are "subject to rational basis review." *Id.*

In cases where there are allegations that a particular law or policy is violative of the Free Exercise Clause as applied specifically to the plaintiffs (or petitioners), substantial deference is due to the Legislature or policy maker. *Catholic Charities of the Diocese of Albany v. Serio,* 7 N.Y.3d 510, 825 N.Y.S.2d 653 (2006). The party asserting the exemption has the burden of establishing the challenged law or policy, as aplied to that party, constitutes an unreasonable interference with their religious freedom. *Id.*

*1. Is the Policy Neutral and Generally Applicable?*

To determine neutrality, the Court must first examine whether the policy is discriminatory on its face. *Kane v. DeBlasio*, 19 F.4th 152, 164 (2d Cir. 2021). The Court must also consider whether the policy targets any certain religious conduct, whether plainly or subtly. *Id.*

The analysis for determining whether the policy is generally applicable is slightly more involved. A law may not be generally applicable if it either: "'invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions' or… 'if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interest in a similar way.'" *Kane v. DeBlasio*, *supra*, at 165 (internal citation omitted).

The fact that a policy contains express exceptions for objectively defined categories does not mean the regulation is not generally applicable. *Id.* Rather, "there must be some showing that the exemption procedures are secularly motivated conduct to be favored over religiously motivated conduct." *Id; see also, We The Patriots, USA, Inc. v. Hochul*, 17 F.4th 266, 288-89 (2d Cir. 2021) (determining that "[t]he mere existence of an exemption procedure, absent any showing that secularly motivated conduct could be impermissibly favored over religiously motivated conduct, is not enough to render a law not generally applicable and subject to strict scrutiny" (internal quotation omitted)). A law need not apply "to all people, everywhere, at all times" to be considered "generally applicable;" rather, being applicable to an "entire class of people" is sufficient. *Kane*, *supra*, at 166.

The vaccine mandate presently at issue before the Court has already been determined by the United States District Court, Northern District of New York, to be *both* facially neutral *and* generally applicable. *Ferrelli, et al. v. State of New York Unified Court System, et al*., 2022 WL 673863, at *6 (N.D.N.Y. March 7, 2022). The policy is facially neutral because it expressly applies to "all judges and non-judicial personnel" and requires that they all be vaccinated by September 27, 2021, "unless otherwise approved for an exemption due to medical reasons or sincerely held religious beliefs" (NYSCEF Doc. 3). This policy does not target any certain religious conduct, nor does it single out any group of people based on religious beliefs or their decision to decline to receive the vaccine on religious grounds.

The policy is also generally applicable. The NDNY in *Ferrelli, et al. v. State of New York Unified Court System, et al*., relies on the reasoning set forth in *Kane*, *supra*, in determining that the mandate does not cease to become generally applicable based merely on the availability of an exemption process. 2022 WL 673863, at *6. Petitioners would need to establish the exemption process itself "allows secularly motivated conduct to be favored over religiously motivated conduct." *Kane*, *supra*, at 165. Petitioners have failed to plead, much less actually demonstrate, that UCS' religious exemption process favors secularly motivated conduct.

Further, it is not relevant that the policy only applies to UCS employees, and not members of the general public. As set forth above a law need not apply "to all people, everywhere, at all times" to be considered "generally applicable;" rather, being applicable to an "entire class of people" is sufficient. *Kane*, *supra*, at 166. In this instance, the "entire class of people" that are subject to this policy are the UCS employees. UCS has a legal obligation to provide members of the public with access to justice. Indeed, that is the entire purpose of the court system. UCS has asserted – and properly so, in this Court's opinion, that it has no legal right to require members of the public at large to submit to a vaccine before entering. Indeed, vaccine mandates that apply *only to employees* who work in public buildings, and not members of the general public who enter those buildings, have been upheld by the Second Circuit. *See generally*, *Kane v. DeBlasio*, 19 F.4th 152 (2d Cir. 2021); *We The Patriots, USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021).

Petitioners' reliance on *Fulton v. City of Philadelphia* is somewhat misplaced. 141 S.Ct. 1868, 210 L.Ed.2d 137 (2021). In *Fulton*, the United States Supreme Court determined that a law lacks generally applicability for purposes of determining whether it should be subject to the strict scrutiny test under the Free Exercise Clause when it allows for individualized exemptions to an agency law or policy to be made at "the sole discretion" of a particular agency official. *Id.* at 1878. This type of policy cannot be deemed not generally applicable because it allows for the possibility of the official to favor secular justifications for exemptions over religious justifications. *Id.*

The U.S. District Court in *Ferrelli*, *supra*, determined that the Supreme Court's reasoning as expressed in *Fulton* is not tantamount to a ruling that anytime a policy or law has a religious exemption process, strict scrutiny review is required. *Ferrelli*, *supra*, at *7. This would, as the Hon. Judge Kahn appropriately concluded, "create a perverse incentive for government entities

to provide no religious exemption process in order to avoid strict scrutiny." *Id.*; *see also, We The Patriots, USA, Inc. v. Hochul, supra.* Moreover, Respondents herein have not, as noted by the U.S. District Court in *Ferrelli*, created a system of individualized exemptions wherein a sole decision maker has refused to extend the exemption for those with sincerely held religious beliefs.

Here, the decisions at issue were made by a Committee comprised of individuals with diverse and varied backgrounds and areas of expertise. *See*, NYSCEF Doc. 49, ¶8. Employees who had their exemption requests denied by the Committee were notified of same in writing. Indeed, a significant part of the Petitioners' claims in the present proceeding involve their dispute over why their requests for exemptions were denied, while many other UCS employees' requests were granted. This Court will address the Petitioners' claim regarding the arbitrary and capricious denial of their specific exemption requests *infra*.

In sum, this Court hereby determines that this policy is both facially neutral and generally applicable.

*2. Level of Scrutiny Applicable ~ Rational Basis Review*

As UCS' vaccine policy is facially neutral and generally applicable, contrary to Petitioners' assertion otherwise, rational basis review applies. *Kane, supra*, at 166. "Rational basis review requires [the policymaker] to have chosen a means for addressing a legitimate goal that is rationally related to achieving that goal." *Id.* Preventing the spread of the novel and potentially fatal COVID-19 virus, both to protect the general public and to help facilitate the safe re-opening of public courthouses, is rationally related to the requirement that all UCS employees receive the vaccination. *We The Patriots, USA, Inc. v. Hochul, supra*, at 290 (determining that the vaccination policy "easily" meets the rational basis standard as a chosen by the State as a means to address a legitimate goal); *see also, Strong v. Zucker*, __ F.Supp.3d___, 2022 WL 896525, at *5 (W.D.N.Y. 2022) ("[w]hatever their merits or efficacy, it cannot be said that the State's policies are an irrational means to achieve the legitimate goal of curbing the spread of COVID-19").

It is of no moment that there may be other and/or additional ways to minimize the spread of the virus and protect the public, or if different conclusions can be reached as a result of conflicting evidence. *See, Cohen v. State, supra* at 525 (the existence of conflicting expert

opinions on the environmental impact of a construction project was not sufficient to determine that the agency's decision was not rational, or was somehow arbitrary and capricious); *see also*, *C.F. v. New York City Dept. of Health & Mental Hygiene*, 191 A.D.3d 52, 69 (2d Dept. 2019) (the Board of Health's resolution requiring any person over six (6) months of age living/working/attending school in certain areas of Brooklyn to obtain the MMR vaccine, was not arbitrary, capricious or lacking in rational basis based on the Board's reliance on the conclusions of its own experts, rather than the contradictory conclusions of other experts).

This Court is aware of all the wide array of opinions that presently exist regarding COVID-19 mitigation tactics, including the vaccine. However, the function of the Court is not to determine whether UCS' policy perfectly achieves the desired results, but rather, the Court is only concerned with whether their decisions "have a legitimate end, and a rational basis for achieving that end." *Strong v. Zucker*, *supra*, at *5.

Petitioners' claims as asserted under the New York State Constitution are equally unpersuasive. "[W]hen the [s]tate imposes 'an incidental burden on the right to free exercise of religion' [this Court] must consider the interest advanced by the [policy] that imposes the burden, and that 'the respective interests must be balanced to determine whether the incidental burdening is justified'" *F.F. v. State of New York*, 194 A.D.3d 80, 88, 143 N.Y.S.3d 734 (3d Dept. 2021) (internal citations omitted). Given the State's well recognized "substantial interest in protecting the public health" (*Id*.), the Court holds that Petitioners fall short of establishing such a claim.

Therefore, the Court determines that UCS' policy survives rational basis review.[3]

*3. The Religious Exemption "As Applied" to Petitioners*

A law or policy that is facially neutral and generally applicable may still be violative of the Constitution "as applied" to a certain group of individuals.

UCS created a clear and unambiguous process by which employees could apply for an exemption based on medical circumstances or sincerely held religious beliefs. *See*, NYSCEF

[3] It is noted that the U.S. District Court in *Ferrelli* went on to determine that even if UCS' vaccination policy was subject to strict scrutiny, it would satisfy that rigorous test, <u>as well</u>. *Ferrelli*, *supra*, at *8-9; *see also*, *C.F. v. New York City Dept. of Health & Mental Hygiene*, *supra*, at 78 (determining that even if strict scrutiny were applied to the policy at issue, there exists "a plain and compelling interest in controlling" the outbreak of the disease).

Docs 3, 47 (Ex. B). All five (5) Petitioners herein applied for exemptions based on their purported sincerely held religious beliefs. All five (5) Petitioners' requests were denied. Therefore, the Petitioners contend that this religious exemption policy was violative of their rights "as applied" specifically *to them*. In order to succeed on a claim of this nature, Petitioners, as the parties seeking the exemption, must establish that the challenged policy as applied *to them* constitutes an unreasonable interference with religious freedom. *See generally*, *Catholic Charities of the Diocese of Albany v. Serio*, 7 N.Y.3d 115, 808 N.Y.S.2d 653 (2006). This Court determines that no such showing has been made by way of this Petition.

Although in analyzing a motion to dismiss the Court must accept as true all allegations in the Petition, allegations that are "either inherently incredible or flatly contradicted by documentary evidence' are not entitled to any presumption of truth[.]" *Levy v. Stony Point*, 185 A.D.3d 689, 690, 127 N.Y.S.3d 504, 506 (2d Dept. 2020).

Upon consideration of the exemption requests submitted by each of the Petitioners as attached to the Petition, as well as the Affidavit of Justin Barry, sworn to on April 18, 2022 (NYSCEF Doc. 46), it is abundantly clear that the Petitioners were *not* denied a religious exemption based on their professed beliefs, or because some religious beliefs were favored over others, but rather, because their applications were either incomplete or failed to identify an actual religious belief upon which an exemption should be granted.[4]

Petitioner Ferrelli failed to complete the supplemental information form utilized by UCS in evaluating requests for religious exemptions. *See*, NYSCEF Doc. 6. Instead of answering the questions posed, Ferrelli submitted a letter from her attorney asserting that UCS' inquiry was unlawful. *Id.* Petitioner Maineri also failed to complete the supplemental information form, and instead wrote a letter to the Committee stating her belief that UCS' request for additional information was unlawful. *See*, NYSCF Doc. 13. Petitioner Smith responded exactly as Petitioner Maineri- she failed to complete the supplemental information form and instead wrote her own letter. *See*, NYSCEF Doc. 34.

[4] Indeed, the U.S. District Court already came to this conclusion in its determination that the policy at issue was constitutional as applied to UCS employees generally, one of which was specifically Petitioner Ferrelli, as well as the other Plaintiffs in that particular action. *Ferrelli*, *supra*, at *8.

Petitioner Pashoukos, who received the vaccine and therefore remains a UCS employee, completed the supplemental information form, however, he failed to include therein any *religious based* objection to receiving the vaccine. *See*, NYSCEF Doc. 20. Personal beliefs and unsupported safety concerns are not the same as religious based beliefs, and cannot simply be couched or labelled as such to try and circumvent the policy.[5]

Petitioner Zweig also completed her supplemental information form, however, like Pashoukos, failed to identify a religious based objection to the vaccine. *See*, NYSCEF Doc. 27. Zweig affirmed therein that she understood that the over-the-counter medications she admittedly uses, as well as other vaccines she has received, contain the exact same fetal cell line that forms the basis of her purported religious exemption request. *Id.* Thus, Zweig's own exemption request contradicts itself and undermines the basis for her request.

As of April 12, 2022, UCS had granted 60% of its employees' requests for religious exemptions. NYSCEF Doc. 46, ¶18. UCS' decision to deny the requests at issue based on these reasons was not arbitrary and capricious, or an infringement upon Petitioners' sincerely held religious beliefs, but rather it was a purely appropriate decision based on the contents (or lack thereof) of these Petitioners' deficient requests. Ferrelli, Maineri, and Smith failed to complete, and in some instances even sign, the supplemental information forms. Pashoukos and Zweig failed to identify sincere religious beliefs that support their request for an exemption. The fact that others may disagree with UCS' decision is not sufficient to conclude that same was arbitrary or capricious.

Further, to the extent Petitioners attempt to allege that the supplemental information form itself was somehow improper, the Court must point out that the U.S. District Court, in evaluating the same supplemental information form, pointed out that the questions contained thereon did not "presuppose the illegitimacy of [religious] concerns about use of fetal cell lines" but rather, it "merely seeks to determine whether such concerns are the applicant's true motivation" for seeking the exemption. *Ferrelli, supra*, at *8; *see also*, *U.S. v. Seeger*, 380 U.S. 163, 185, 85 S.Ct. 850, 863 (1965) (noting that "while the 'truth' of a belief is not open to question, there

[5] Respondents contend that this specific Petitioner's claim should be dismissed based on his lack of standing as a result of his ultimate compliance with the vaccine policy. The Court, however, declines to address the standing argument, as the Petition is being dismissed on its merits for all the reasons set forth in this Decision.

remains the significant question of whether it is 'truly held'..[and] [t]his is the threshold question of sincerity which must be resolved in every case"); *Turner v. Liverpool Cent. School*, 186 F.Supp.2d 187, 193 (N.D.N.Y. 2022) (determining that an inquiry as to whether professed religious beliefs are genuine or sincere does not require an assessment as to the actual validity of said beliefs).[6]

Therefore, the request to have an applicant for a religious exemption complete the supplemental information form in no way interferes with the neutrality of UCS' exemption process. *Ferrelli, supra*, at *8. To determine otherwise would essentially be tantamount to a determination that UCS must grant every request for a religious exemption, even where the request is incomplete or contains inconsistent or contradictory responses that undermine the stated reason for the request. That would, in this Court's opinion, completely dilute the import of the exemption process.

Based on the foregoing, this Court finds that the policy 'as applied' to the Petitioners was neutral and generally applicable, and as detailed, *supra*, satisfies rational basis review. In addition, the UCS' decision to deny these Petitioners' requests for religious exemptions was neither arbitrary nor capricious.

*B. Substantive and Procedural Due Process Claims*

Petitioners assert that UCS' vaccine policy violates their substantive and procedural due process rights insofar as it "strikes at the very heart of [their] liberty interest in their right of bodily integrity" NYSCEF Doc. 1, ¶89. To the extent that the policy at issue requires a vaccination, or a "permanent medical procedure" as it is referred to it the Petition, Petitioners

[6] The Court does not agree that the New York County Supreme Court determined in its recent Decision in *Loiacono v. The Board of Education of the City of New York, et al*., that "questioning the sincerity of the [Petitioner's] religious beliefs was improper" as indicated by Petitioners' counsel in his post-submission letter of July 14, 2022 (NYSCEF Docs. 71, 72). *Loiacono v. The Board of Education of the City of New York, et al.,*Index No.: 154875/2022 (Sup. Ct. N.Y. Cnty 2022). Indeed, the Judge specifically notes in her Decision in *Loiacono* that the petition at issue before her did not ask the Court to opine on the validity of vaccine mandates *or the process by which accommodations were considered by the Respondent*. The Judge's Decision was expressly limited to the stated reason for the denial of Petitioner's accommodation request having been based on an unspecified "undue hardship" to the employer. These are not the facts presently before this Court.

allege that it impedes their right to maintain their job while at the time exercise their right to bodily autonomy. *Id.* at ¶88-89.

"Substantive due process rights are intended to safeguard individuals 'against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective.'" *Southerland v. City of New York*, 680 F.3d 127, 151 (2d Cir. 2012) (internal citations omitted) *citing Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999) (internal quotation omitted). The substantive due process doctrine bars certain state actions regardless of the fairness of the mechanisms and procedures used to implement them. *People v. Bell*, 3 Misc.3d 773, 778 N.Y.S.2d 837 (Sup. Ct. Bronx Cnty. 2003).

In order to establish a violation of substantive due process rights, a plaintiff must establish that the state action at issue was "'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Southerland*, *supra* (internal citations omitted). Further, the interference with the protected right must be "'so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection.'" *Id.* at 153 (internal citations omitted). The only rights, however, that are afforded such protection under substantive due process are those rights which are "fundamental or implicit in the concept of ordered liberty." *Maniscalco v. New York City Dept. of Education,* 563 F.Supp.3d 33, 38 (E.D.N.Y. 2021).

Procedural due process is, loosely stated, a guarantee of a fair procedure. It is intended to afford notice of a possible deprivation of a protected interest and a meaningful opportunity to contest the deprivation prior thereto. *People v. Bell, supra*, at 777. In order to state a claim that one's procedural due process rights have been violated, it must be established that the individual possessed a protected property or liberty interest, and that they were deprived of that interest without constitutionally adequate process. *See, W.D. v. Rockland County*, 521 F.Supp.3d 358, 380-81 (S.D.N.Y. 2021). It is not until the property or liberty interest is established that the Court looks to whether the procedure or policy at issue that interferes with that interest meets constitutional standards. *Id*.

To the extent that the Petition attempts to assert either a substantive or a procedural due process violation, Respondents move to dismiss on the basis that Petitioners have not established by way of their Petition the deprivation of a constitutionally protected right. This Court agrees.

This Court acknowledges that UCS' vaccination policy requires all employees who do not receive an exemption to get vaccination or else face the potential of losing their employment. NYSCEF Doc. 3. This Court does not take for granted that it is not always easy or convenient to find new employment. However, it is well established that the right to occupational choice is *only* afforded due process protection when a plaintiff is "'*completely prohibited* from engaging in his or her chosen profession.'" *Maniscalco, supra, citing, Hu v. City of New York*, 927 F.3d 81, 102 (2d Cir. 2019) (emphasis supplied); *see also, New York City Municipal Labor Committee v. City of New York*, 73 Misc.3d 621, 631, 156 N.Y.S.3d 681, 689 (Sup. Ct. N.Y. Cnty. 2021) (noting that, in accordance with Second Circuit precedent, property interests that are related to employment are "not among protected fundamental rights, [but] are 'simple contractual rights, without more'"). Accordingly, there is no fundamental liberty or property interest in continuing one's employment, and a state action is therefore not considered a due process violation unless its actions go as far as to completely bar a plaintiff from pursuing their chosen occupation. Without establishing such a deprivation, no due process claim may lie.

Further, it does not matter that there may exist other means besides vaccination that can be used to mitigate the spread of COVID-19, and protect health and welfare of those in the courthouses. It has already been established that the State, in this case UCS, has the right to implement a vaccine mandate in order to control the outbreak of a disease "without violating the liberty secured by the Fourteenth Amendment of the United States Constitution." *C.F. v. New York City Dept. of Health & Mental Hygiene*, *supra*, at 71; *see also*, *Brignall, et. al. v. New York State Unified Court System, et. al*., Index No.: E2022-0241cv (Sup. Ct. Steuben Cnty. 2022) (NYSCEF Doc. 52). In any event, this Court determines that the vaccine policy afforded UCS employees both notice and an opportunity to be heard, as mandated by the Constitution.

Petitioners' reliance on the Court of Appeals ruling in *Rivers v. Katz* is inapposite, as the facts in *Rivers* are completely distinct from the facts in the instant proceeding. 67 N.Y.2d 485, 504 N.Y.S.2d 74 (1996). The specific issue in *Rivers* was "whether and under what circumstances the State may forcibly administer antipsychotic drugs to a mentally ill patient who has been involuntarily confined to a State facility." *Id.* at 489-90. Indeed, this Court agrees wholeheartedly that individuals suffering from a mental illness should in no way be determined to have forfeited their civil rights, however this is not the issue presently before the Court.

In sum, the Court finds that Petitioners have not stated a substantive or procedural due process claim against Respondents.

C. *The Authority to Issue the Policy*

In their third and final cause of action, Petitioners contend that Judge Marks lacked the legal authority to issue the policy because "nothing in [22 NYCRR § 80.1 and Article VI, Section 28, of the N.Y.S. Constitution] permits Judge marks to require [UCS] employees to be vaccinated against the Covid-19 virus." NYSCEF Doc. 1, ¶91-92.

Respondents move to dismiss based on their contention that UCS is an independent branch of government with its own inherent constitutional authority, and that UCS has the authority to implement certain policies and procedures through its Administrative Chief Judge. Further, Respondents point out that agencies have been upheld in imposing mandates that were deemed necessary for public health and safety reasons.

In opposition to the motion, Petitioners aver that the New York State Judiciary Law applies to all personnel decisions, and that therefore, the policy at issue could not have properly been enacted by UCS without a public hearing. In reply, Respondents distinguish the vaccine policy at issue with other types of civil service and personnel policies as contemplated by section 211 of the Judiciary Law. Further, Respondents argue that the determination that a hearing was required with respect to this type of policy decision would lead to an untenable and, frankly, illogical result.

Pursuant to Article VI, Section 28, of the New York State Constitution, "[t]he chief judge, after consultation with the administrative board, shall establish standards and administrative policies for general application throughout the state…" N.Y.S. CONST., Art. VI, Sec. 28(c); *see also*, *Brignall*, *supra*, at 5. Indeed, it has never been doubted that "[s]upervision of the courts [is an] administrative function[] 'incidental to the performance of judicial duties' and may be intrusted [sic] to judicial officers." *Matter of Rosenthal v. McGoldrick*, 280 N.Y.11, 14, 19 N.E. 660 (1939) (internal citation omitted).

Judge Marks, as the current Chief Administrative Judge, is therefore expressly authorized to "supervise the administration and operation of the unified court system" and, therefore, he "shall have such powers and duties as may be delegated to him or her by the chief judge and such additional powers and duties as may be provided by law." N.Y.S. CONST., Art. VI, Sec.

28(b). It has been acknowledged time and again by the Court of Appeals that the administrative powers of the Administrative Chief Judge's powers are "complete" and may be employed to him or her "fully when and while and to the extent that they have been delegated to him." *Matter of Bellacosa v. Classification Review Bd. of Unified Ct. Sys. Of State of N.Y.*, 72 N.Y.2d 383, 388, 534 N.Y.S.2d 119 (1988). In accordance with this section of the New York State Constitution, 22 NYCRR § 80.1 delineates a list of specific powers that the Chief Administrator "*shall* supervise on behalf of the Chief Judge" that pertain to the "administration and operation of the unified court system[.]" 22 NYCRR § 80.1(a) (emphasis supplied). These powers are conspicuously broad and include "any additional powers and …duties" as assigned by the Chief Judge. 22 NYCRR § 80.1(b)(17).

This Court is aware that the Judiciary Law sets forth that "[s]tatewide standards and policies concerning personnel practices related to nonjudicial personnel shall be consistent with the civil service law, and shall be promulgated *after* a public hearing at which affected nonjudicial employees or their representatives shall have the opportunity to submit criticisms, objections and suggestions related to the proposed standards and policies." N.Y. Jud. Law §211(1)(d) (emphasis supplied). However, this section of the Judiciary Law appears to limit the types of personnel practices that require a public hearing specifically to "title structure, job definition, classification, qualifications, appointments, promotions, transfers, leaves of absence, resignation and reinstatements, performance ratings, removal, sick leaves, vacations." *Id.*

The Judiciary Law, like any other law, "must be read together with, and be applied consistently with, the Constitution." *Matter of Met. Council v. Crosson*, 84 N.Y.2d 328, 335, 618 N.Y.S.2d 617 (1994). Although the policy at issue may have negative employment consequences attached to it should there be non-compliance (i.e. removal), the policy itself is a *health and safety policy* intended to address the need to safely reopen the Courts during the pandemic. This Court agrees with Respondents that the policy is not of the sort that must go through the public comment process before implementation. This is especially true in light of the unprecedented and urgent situation the courts were faced with in its effort to safely restore as many in-person proceedings as possible. It bears repeating that courthouses are public buildings, and a significant number of people are required to enter each and every day. The Courts have an obligation to provide safe access to justice for everyone.

It would therefore seemingly undermine the intent of the New York State Constitution if the Chief Administrative Judge, who has such broad supervisory authority over the entirety of the UCS, had no authority to enact time sensitive health and safety policies for the purposes of restoring in person proceedings in our courthouses. The cases cited by Petitioners in their opposition papers do not convince this Court otherwise, as they all pertain to administrative agencies, and not UCS. The agency determinations that were challenged in those cases were not made by the Chief Administrative Judge. The Court is not, therefore, convinced of their applicability to the instant situation.

Therefore, based on the foregoing, the Court determines that Chief Administrative Judge, Judge Marks, did not exceed his broad grant of authority, and that UCS had had the legal authority to enact the policy at issue.

*D. Statute of Limitations*

One of the last points raised in Respondents' motion raises a statute of limitations issue. Respondents argue that since Petitioners were notified of the policy on (or around) September 27, 2021, the four (4) month statute of limitations lapsed, at the latest, on January 27, 2022. NYSCEF Doc. 45, p.20. Since the Petition was filed on April 5, 2022, Respondents contend this proceeding is time-barred.

In opposition, Petitioners contend that "the action does not challenge the vaccination policy itself, it challenges <u>the practice of termination upon denial of religious exemption requests in an arbitrary manner</u>." NYSCEF Doc. 58, p. 20 (emphasis in original). Petitioners point out that their causes of action did not accrue until they were aggrieved by the challenged agency action.

"An article 78 proceeding must be commenced within four months after the administrative determination to be reviewed becomes 'final and binding upon the petitioner'" *Yarbough v. Franco*, 95 N.Y.2d 342, 346, 717 N.Y.S.2d 79, 81 (2000) *referencing* CPLR § 217(1). "An administrative determination becomes 'final and binding' when the petitioner seeking review has been aggrieved by it." *Id.*; *see also, Matter of Village of Westbury v. Department of Transp. of State of N.Y.,* 75 N.Y.2d 62, 72, 550 N.Y.S.2d 604 (1989)). To the extent that there is any ambiguity or uncertainty caused by the public body or officer regarding whether a final and binding determination was render, courts should resolve that ambiguity

against the public body "in order to reach a determination on the merits and not deny a party his day in court[.]" *Rocco v. Kelly*, 20 A.D.3d 364, 366, 799 N.Y.S.2d 469, 471 (3d Dep't 2005).

The Court agrees with Petitioners on the statute of limitations argument. Though some of the arguments raised in the petition attack the policy itself, the crux of this proceeding turns on the fact that the policy resulted in Petitioners' termination from employment. Although the policy at issue was indeed intended to be final and binding upon UCS employees when it was issued, the application of the policy to those seeking a religious (or medical) exemption could not have been declared to be final and binding until such time as those who sought exemptions pursuant to the policy were notified their requests were denied. *See, e.g. Raffaele v. Town of Orangetown*, 224 A.D.2d 430, 431, 637 N.Y.S.2d 755 (2d Dep't 1996) (a determination cannot be deemed to be "binding" until the aggrieved party is notified of same). Had the Petitioners commenced this application *before* they were notified that their exemption requests were denied, it would technically not have been ripe for judicial determination. In any event, to the extent that there is any ambiguity or uncertainty as to when the determinations at issue became final and binding, this Court determines it appropriate to err on the side of the Petitioners and determine this case on its merits.

Therefore, the Court declines to dismiss the Petition on timeliness grounds, despite the fact that it is being dismissed on its merits, as set forth above.

**CONCLUSION**

Accordingly, based on the foregoing, it is hereby

***ORDERED and ADJUDGED***, that Respondents' motion to dismiss the Petition is granted in its entirety, and Petitioners' Petition is dismissed.

Dated: New City, New York
August 2, 2022

Hon. Thomas P. Zugibe, J.S.C.

To: *All counsel of record with NYSCEF*