**STATE OF NEW YORK**
**SUPREME COURT: COUNTY OF STEUBEN**

---

**AMY BRIGNALL,**
**FRAN-MARIE CHERESNOWSKY,**
**PAUL DIPIERRO,**
**JAMIE HAWLEY,**
**GERARD KAELIN,**
**GWEN NANIA,**
**MEREDITH PRATT,**
**NYS COURT EMPLOYEES FOR MEDICAL FREEDOM, INC.,**

Petitioners,

v.

**NEW YORK STATE UNIFIED COURT SYSTEM,**
**OFFICE OF COURT ADMINISTRATION,**
**HON. LAWRENCE K. MARKS**
**CHIEF ADMINISTRATIVE JUDGE,**
**NEW YORK STATE UNIFIED COURT SYSTEM,**
**JUSTIN A. BARRY**
**CHIEF ADMINISTRATOR**
**NEW YORK STATE UNIFIED COURT SYSTEM,**
**NANCY J. BARRY**
**CHIEF OF OPERATIONS**
**NEW YORK STATE UNIFIED COURT SYSTEM,**

Respondents.

---

**DECISION, ORDER and JUDGMENT**

Index No. E2022-0241cv

Petitioners having filed an order to show cause on March 15, 2022, and upon reading and considering the affirmation of Corey J. Hogan, Esq. filed March 15, 2022, and exhibits A – B thereto; petitioners' Verified Petition and Complaint filed March 8, 2022, and exhibits A – L thereto; the expert affidavit of Clayton J. Baker, M.D., C.M. dated February 19, 2022, and exhibit A thereto; the expert affidavit of Paulette Niewczyk, MPH, PhD dated March 4, 2022, and exhibit A thereto; notice of cross-motion filed March 29, 2022, the affidavit of Justin A. Barry dated March 29, 2022, and exhibits 1 – 10 thereto; and this matter having come before this court for oral argument on April 4, 2022, the following constitutes the decision, order and judgment of this court.

## BACKGROUND

In September 2021, the Unified Court System ("UCS") issued a policy requiring all UCS employees to be vaccinated against COVID-19 ("Vaccination Policy"). The Vaccination Policy allowed employees to seek both medical and religious exemptions from the Vaccination Policy, which included a multilayered review by a committee. Petitioners seek to enjoin respondents from enforcing the Vaccination Policy. Petitioners filed the foregoing special proceeding pursuant to CPLR Article 78, 42 USC 1983, and 42 USC 1988 seeking: (i) injunctive relief for violations of petitioners' rights under the United States and New York State Constitutions; (ii) challenges to the constitutionality and applicability of the vaccine mandate for employees promulgated by respondents; and (iii) reimbursement of attorney's fees, costs, and expenses incurred by petitioners in seeking to protect against the violation of their rights. (NYSCEF Doc. No. 1).

Petitioners thereafter filed an order to show cause seeking a preliminary injunction pursuant to CPLR 6301, 6311, and 7805, enjoining respondents from enforcing the Vaccination Policy for UCS employees issued by way of memorandum dated September 10, 2021, on the grounds that: (i) the Vaccination Policy is arbitrary, capricious, irrational, unnecessary and an abuse of respondents' discretion in this matter; (ii) respondents have proceeded in excess of their jurisdiction; and (iii) the Vaccination Policy violates the Free Exercise Clause of the First Amendment and is void and unenforceable. In response, respondents filed a cross-motion to dismiss pursuant to CPLR 3211(a)(7), on the ground that the Verified Petition and Complaint fail to state a cause of action.

## DECISION

### I. Preliminary Injunction

Petitioners argue that they are entitled to a preliminary injunction because the vaccine mandate is arbitrary and capricious. Petitioners assert that the penalty for UCS employees who fail to comply with the Vaccination Policy is, in effect, termination.

To prevail on a motion for a preliminary injunction, the moving party has the burden of establishing by clear and convincing evidence: "(1) a likelihood of success on the merits; (2) irreparable injury in the absence of injunctive relief; and (3) a balance of equities in its favor." *Eastman Kodak Co. v. Carmosino*, 77 AD3d 1434, 1435 [4th Dept 2010], citing *Nobu Next Door, LLC. v. Fine Arts Hous., Inc.*, 4 NY3d 839, 840 [2005]; *Sutherland Global Servs., Inc. v. Stuewe*,

73 AD3d 1473, 1474 [4th Dept 2010]; *Marcone APW, LLC v. Servall Co.*, 85 AD3d 1693, 1695 [4th Dept 2011]; *Doe v. Axelrod*, 73 NY2d 748, 750 [1988]. A preliminary injunction is a drastic remedy and should be issued sparingly. *Eastman Kodak*, 77 AD3d at 1435, citing *Sutherland*, 73 AD3d at 1474. The decision to grant or deny a preliminary injunction is within the sound discretion of the court. *Nobu*, 4 NY3d at 840; *Masjid Usman, Inc. v. Beech 140, LLC*, 68 AD3d 942, 942 [2d Dept 2009]. However, if any one of the three requirements are not satisfied, the application for a preliminary injunction will be denied as a matter of law without the need to address the remaining prongs of the test. *Axelrod*, 73 NY2d at 751; *Matter of Rochester Police Locust Club, Inc. v. City of Rochester*, 176 AD3d 1646, 1647 [4th Dept 2019].

### A. Preliminary Injunction on Petitioners' CPLR Article 78 Cause of Action

#### i. Success on the Merits

Petitioners argue that they have made a *prima facie* showing of their right to relief. Petitioners argue that Article 78 of the CPLR allows petitioners to seek injunctive relief from "arbitrary and capricious" determinations made by the Unified Court System ("UCS"), Office of Court Administration ("OCA"), and their officers. Petitioners argue that the Vaccination Policy arbitrarily deemed petitioners, who are unvaccinated against COVID-19, as "unfit to work" and is without sound basis in reason, logic, law, or fact. Petitioners argue that the Vaccination Policy requires UCS employees, including those who have developed natural immunity from COVID-19, to be vaccinated, despite having at least equally as strong protection from the virus. Petitioners also argue that respondents proceeded without and/or in excess of their jurisdiction in adopting the Vaccination Policy, and failed to articulate the authority for such implementation.

The first prong of a preliminary injunction review is whether the moving party has established a likelihood of ultimate success on the merits. *Axelrod*, 73 NY2d at 750. The moving party need not demonstrate a certainty of success on the merits, only the likelihood of success. *Holdsworth v. Doherty*, 231 AD2d 930, 930 [4th Dept 1996]. However, "when the facts necessary to establish the cause of action are, as here, in sharp dispute," a preliminary injunction should not be issued. *Holdsworth*, 231 AD2d at 930, quoting *Sutton, DeLeeuw, Clark & Darcy v. Beck*, 155 AD2d 962, 963 [4th Dept 1989]. On judicial review of an administrative action under CPLR Article 78, courts must uphold the administrative exercise of discretion unless it has "no rational basis" or the action is "arbitrary and capricious." *Pell v. Bd. of Educ. Union Free Sch. Dist.*, 34

NY2d 222, 230-231 [1974]. Judicial review of an administrative determination under CPLR Article 78 is limited to the "evaluation of whether the determination is consistent with lawful procedure, whether it is arbitrary or capricious, and whether it is a reasonable exercise of the agency's discretion." *Dist. Council 37, Am. Fedn. of State, County & Mun. Empl., AFL-CIO v. City of New York*, 804 NYS2d 10, 14 [1st Dept 2005]; citing *Pell*, 34 NY2d at 230-231. Where the administrative interpretation is founded on a rational basis, the interpretation should be affirmed. *Mid-State Mgt. Corp. v. New York City Conciliation and Appeals Bd.*, 112 AD2d 72, 76 [1st Dept 1985]. A court may not substitute its judgment for that the of the agency. *Mid-State Mgt. Corp.*, 112 AD2d at 76; *Matter of Ignizio v. City of New York*, 85 AD3d 1171, 1174 [2d Dept 2011].

Throughout the COVID-19 pandemic, UCS followed the guidance of public health authorities at the federal, state, and local levels, in order to take what it deemed appropriate steps to provide the safest and healthiest environment possible for individuals who need to access the legal system, as well as for judicial and non-judicial employees of UCS. (NYSCEF Doc. Nos. 39, ¶3-4, ¶31; 41, pg. 21, ¶26). As UCS's constitutionally mandated mission is to provide an accessible forum for justice for litigants who use the court system, UCS determined that the most important element to restart in-person operations and to maintain a safe environment for judges, non-judicial employees, and court users, was the widespread vaccination of its employees against COVID-19. (NYSCEF Doc. No. 39, ¶3-5). UCS implemented the Vaccination Policy as a means of minimizing the spread of COVID-19 throughout the UCS courtrooms, protecting the safety of UCS employees and the public, avoiding shortages of essential staff members, and enabling UCS to maintain an accessible forum for justice. (NYSCEF Doc. No. 39, ¶5). While petitioners do not agree with the appropriateness of the Vaccination Policy, such is not a basis to disturb the determination. UCS had a rational basis for implementing the Vaccination Policy as a means for achieving its goal of minimizing the spread of COVID-19 through the UCS facilities and maintaining an accessible forum for justice. *Ferrelli v. State of New York Unified Ct. Sys.*, 2022 US Dist LEXIS 39929, *19, 2022 WL 673863, *6 [ND NY March 7, 2022, No. 1:22-CV-0068].

Petitioners' argument regarding respondents' authority to impose the Vaccination Policy is also without merit. Access to the legal system is an inherent right of citizenship guaranteed by the First, Fifth, and Fourteenth Amendments. *Matter of Lippman v. Pub. Empl. Relations Bd.*,746 NYS2d 77, 81 [3d Dept 2002]. UCS issued the Vaccination Policy pursuant to its constitutionally delegated authority to enact policies that enable it to meet its constitutional obligations of

facilitating public access to the courts. The New York State Constitution specifically states that there shall be a unified court system for the state. NY Const, art VI § 1 (a). The New York State Constitution further provides that the chief judge of the court of appeals shall be the chief judge of the state of New York and shall be the chief judicial officer of the unified court system, and shall appoint a chief administrator of the courts. NY Const, art VI § 28 (a). The chief judge, after consultation with the administrative board, shall establish standards and administrative policies for general application throughout the state. NY Const, art VI § 28 (c). The Court of Appeals has recognized that there is some overlap between the three separate branches of power which does not violate the constitutional principal of separation of powers. *Clark v. Cuomo*, 66 NY2d 185, 189 [1985], citing *County of Oneida v. Berle*, 49 NY2d 515, 523 [1980]. Further, some administrative functions may be entrusted to judicial officers, such as supervision of the courts. *Rosenthal v. McGoldrick*, 280 NY 11, 14 [1939]; Judiciary Law § 211.

While petitioners argue that there is no rational basis for requiring persons with natural immunity from COVID-19 to vaccinate against the virus, this issue was, in fact, considered. (NYSCEF Doc. Nos. 7 and 39, ¶21). Petitioners' own submission demonstrates that after having tested positive for COVID-19, based upon CDC guidance, immunity to COVID-19 is presumed for the next 90 days. (NYSCEF Doc. No. 7). This document produced by UR Medicine[1] did not indicate that natural immunity was presumed for longer than 90 days or that it is deemed an underlying medical condition that would make receiving the COVID-19 vaccine unsafe. In fact, petitioners' argument of natural immunity as a basis for an injunction has repeatedly been rejected by the courts. *Broecker v. New York City Dept. of Educ.*, 2022 US Dist LEXIS 25104, 2022 WL 426113 [ED NY February 11, 2022, No. 21-CV-6387]; *Marciano v. De Blasio*, 2022 US Dist LEXIS 41151, 2022 WL 678779 [SD NY March 8, 2022, No. 21-CV-10752]; *Strong v. Zucker*, 2022 US Dist LEXIS 15037, 2022 WL 245351 [WD NY January 27, 2022, No. 21-CV-6532L]; *Abadi v. City of New York*, 2022 US Dist LEXIS 21815, 2022 WL 347632 [SD NY February 4, 2022, No. 21 Civ. 8071]. "An agency's decision to rely on the conclusions of its experts, rather than conflicting conclusions of challenger's experts, does not render its determination arbitrary, capricious, or lacking in a rational basis." *C.F. v. New York City Dept. of Health & Mental Hygiene*,

[1] The document provided by UR Medicine [NYSCEF Doc. No. 7] was redacted by petitioners so that the individual who electronically signed the letter is unknown. Accordingly, it is unknown whether the document was signed by a doctor, nurse, physician assistant, or secretary.

191 AD3d 52, 69 [2d Dept 2020], citing *Matter of 278, LLC v. Zoning Bd. of Appeals of the Town of E. Hampton*, 159 AD3d 891, 894 [2d Dept 2018].

Petitioners have failed to demonstrate that UCS acted arbitrarily and capriciously, or without legal authority to require the Vaccination Policy as a condition of employment during the ongoing COVID-19 pandemic. Consequently, petitioners have failed to demonstrate a likelihood of success on the merits of their CPLR Article 78 cause of action.

**ii. Irreparable Harm**

Petitioners argue that as UCS employees are obligated to comply with the Vaccination Policy, they will suffer irreparable harm if the preliminary injunctive relief is not granted.

The second prong of the preliminary injunction test is whether there will be irreparable injury if the provisional relief is withheld. *Axelrod*, 73 NY2d at 750. The irreparable harm prong of the preliminary injunction test requires a clear showing that the claimed harm is imminent. *New York State Inspection, Sec. & Law Enforcement Empl., Dist. Council 82 v. Cuomo*, 64 NY2d 233, 240 [1984]; *Matter of Civil Serv. Empl. Assn., Inc., Local 1000, AFSCME, AFL-CIO v. County of Erie*, 43 AD3d 1341, 1342 [4th Dept 2007]. Conclusory allegations that the moving party will suffer irreparable harm if the preliminary injunction is not granted are insufficient. *Sutton*, 155 AD2d at 963; *Falls St. Leasing Corp. v. City of Niagara Falls*, 295 AD2d 1005, 1006 [4th Dept 2002].

**a. Irreparable Harm Due to Loss of Employment**

Petitioners aver that they, as UCS employees, have been deemed "unfit to work" and are facing termination from their current positions and will be unable to obtain similar employment at other UCS facilities for an indefinite amount of time.

A request for a preliminary injunction may be sought in the context of a CPLR Article 78 proceeding. *Matter of Riccelli Enter., Inc. v. State of New York Workers' Compensation Bd.*, 117 AD3d 1438, 1439 [4th Dept 2014]. However, the loss of employment, although most likely to cause severe hardship, does not constitute irreparable harm. *Armitage v. Carey*, 49 AD2d 496, 498 [3d Dept 1975]; *Dhillon v. Healthnow New York, Inc.*, 32 AD3d 1197, 1198 [4th Dept 2006]; *Abramo v. Healthnow New York*, 305 AD2d 1009, 1010 [4th Dept 2003]; *Suffolk County Assn. of Mun. Empl. v. County of Suffolk*, 163 AD2d 469, 471 [2d Dept 1990]; *Cohen v. Dept. of Social Servs. of State of New York*, 323 NYS2d 603, 605 [2d Dept 1971]. Injunctive relief is both

unnecessary and unwarranted where the moving party has an adequate remedy in the form of monetary damages. *Mangovski v. DiMarco*, 175 AD3d 947, 948 [4th Dept 2019]. Accordingly, a preliminary injunction is not warranted where the affected workers would be entitled to reinstatement and back pay in the event they ultimately prevail.

Petitioners aver that they have been deemed "unfit to work" and are facing termination from their current positions. Petitioners further allege that they will be barred from seeking similar employment at other UCS facilities for an indefinite amount of time, and therefore will suffer not only economic loss, but have their careers interrupted or ended. Petitioners' allegations of potential loss of employment from being deemed "unfit to work" does not constitute an irreparable harm. Petitioners' conclusory allegations that their positions are increasingly likely to be filled during the pendency of this action and therefore, they will be precluded from seeking reinstatement if they ultimately prevail is insufficient. Accordingly, the alleged harm of the loss of employment does not constitute irreparable harm.

**b. Irreparable Harm to Constitutional Rights**

Petitioners further assert that they have protected rights under the New York State Constitution, which justify injunctive relief. Petitioners allege in their Verified Petition and Complaint that the Vaccination Policy is a compulsory vaccination requirement and that an employee who wishes to continue his employment with UCS has no option but to get the COVID-19 vaccine, terminate their employment, or retire. (NYSCEF Doc. No. 1, pg. 37). Respondents in opposition argue that the presumption of irreparable harm arises only when a party alleges injury from a rule or regulation that directly limits a First Amendment right. Respondents further argue that petitioners are not required to perform or abstain from any action that violates their religious beliefs.

The Vaccination Policy does not force UCS employees to be vaccinated. (NYSCEF Doc. Nos. 6; 41, pg. 26). "The choice between accepting a vaccination that one is strongly against on the one hand and the loss of employment on the other, may appear to have no choice at all. But in reality, it is just that. Nobody under the challenged policy will be forced to accept a vaccination against his or her will." *Civil Serv. Empl. Assn. v. New York State (Unified Ct. Sys.)*, 73 Misc3d 874, 894 [Sup Ct, Albany County 2021, Silverman, J.]. Moreover, UCS employees are not forced to abstain from any action that violates his or her religious beliefs. The Vaccination Policy allows

for UCS employees with valid bases to seek religious and medical exemptions. (NYSCEF Doc. Nos. 6; 41, pg. 26). While UCS employees who choose not to comply with the Vaccination Policy do face the possibility of termination, that termination does not result in irreparable harm necessary to justify injunctive relief.

**iii. Balance of Equities**

Petitioners allege that the balance of equities clearly favor petitioners. Petitioners argue that the harm to petitioners without the injunction will be greater than the harm to respondents if the injunction is granted.

The third prong of the preliminary injunction review is a balancing of the equities. *Axelrod*, 73 NY2d at 750. The courts must weigh the interests of the general public and the parties to the litigation. *Destiny USA Holdings, LLC v. Citigroup Global Mkts. Realty Corp.*, 69 AD3d 212, 223 [4th Dept 2009].

Petitioners allege that during the COVID-19 epidemic, petitioners continued to work in their capacity as UCS employees despite having been unvaccinated. Petitioners aver the Vaccination Policy will result in the termination of hundreds of UCS employees. "The defining mission of UCS is to provide an accessible forum to every litigant seeking redress of grievances", as guaranteed by the First, Fifth and Fourteenth Amendments of the United States Constitution. *Lippman*, 296 AD2d at 204. The balance of the equities favors the Vaccination Policy, as the hardships faced by petitioners are outweighed by the court system's interest in preventing the spread of COVID-19 within the state court system, its interest in protecting the health of the many individuals who use the court system,[2] promoting efficient access to justice, and maintaining a safe and operational court system while minimizing health risks to individuals accessing the court system and its facilities. Accordingly, petitioners have failed to demonstrate that the balance of the equities clearly favors petitioners.

---

[2] Including but not limited to judges, staff, attorneys, litigants, witnesses, juror, journalists, members of the public, and criminal defendants. (NYSCEF Doc. No. 41, pg 5).

**B. Preliminary Injunction on Petitioners' Free Exercise Clause Cause of Action**

**i. Success on the Merits**

Petitioners assert that the evaluation of applications for religious exemptions are not neutral or generally applicable. Petitioners additionally assert that the Vaccination Policy violates the Free Exercise Clause of the First Amendment and is void and unenforceable. Petitioners state that they have applied for religious exemptions under the Vaccination Policy and those requests have all been denied.

As stated above, the first prong of a preliminary injunction review is whether the moving party has established a likelihood of ultimate success on the merits. *Axelrod*, 73 NY2d at 750. The moving party need not demonstrate a certainty of success on the merits, only the likelihood of success. *Holdsworth*, 231 AD2d at 930. However, "when the facts necessary to establish the cause of action are, as here, in sharp dispute," a preliminary injunction should not be issued. *Holdsworth*, 231 AD2d at 930, quoting *Sutton,* 155 AD2d at 963.

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof..." US Const Amend I; *Cantwell v. Connecticut*, 310 US 296, 303 [1940]; *Kane v. De Blasio*, 19 F4th 152, 163 [2d Cir 2021]. The Free Exercise Clause protects an individual's private right to religious belief, as well as "the performance of (or abstention from) physical acts that constitute the free exercise of religion." *Kane*, 19 F4th at 163-164, quoting *Cent. Rabbinical Cong. of the United States v. New York City Dept. of Health & Mental Hygiene*, 763 F3d 183, 193 [2d Cir 2014]. However, the Free Exercise Clause "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Ferrelli*, 2022 US Dist LEXIS 39929 at *15, 2022 WL 673863 at *5, quoting *Cent. Rabbinical*, 763 F3d at 193, quoting *Empl. Div. v. Smith*, 494 US 872, 879 [1990]. "Such laws are subject to a rational basis review." *Id.* Where challenged restrictions are not neutral and of general applicability, they must satisfy strict scrutiny, and must be narrowly tailored to serve a compelling state interest. *Ferrelli*, 2022 US Dist LEXIS 39929 at *15-16, 2022 WL 673863 at *5, *R.C. Diocese v. Cuomo*, 141 SCt 63, 67 [2020].

**a. Neutrality**

Petitioners argue that although the Vaccination Policy permits both medical and religious exemptions, the requests for religious exemptions made by petitioners have all been denied. Petitioners argue that the state fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature.

In evaluating whether a mandate is neutral, the court first considers whether the mandate is facially discriminatory. *Kane*, 19 F4th at 160. While facial neutrality alone is not determinative, the court also considers whether there are "'subtle departures' from religious neutrality, as well as 'the historical background of the decision under challenge, the specific events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decision-making body.'" *Kane*, 19 F4th at 164. A law is not neutral if it is "specifically directed at [a] religious practice." *Cent. Rabbinical Cong*. 763 F3d at 193.

The Vaccination Policy requires that "all judges and non-judicial personnel" be "vaccinated by September 27, 2021, unless otherwise approved for an exemption due to medical reasons or sincerely held religious beliefs." (NYSCEF Doc. No. 6). Accordingly, as indicated in the September 10, 2021 Memorandum sent to all non-judicial personnel,[3] the Vaccination Policy applies to all judicial and non-judicial UCS employees. The Vaccination Policy does not single out employees who decline the vaccination on religious grounds. Nor do petitioners allege or cite to any statements by the respondents which would render the Vaccination Policy non-neutral. Accordingly, this court finds that the Vaccination Policy is neutral.

**b. General Applicability**

In arguing that the Vaccination Policy is not neutral, petitioners assert that the Vaccination Policy must therefore satisfy the strict scrutiny test, without discussing the general applicability of the Vaccination Policy.

"A law is not generally applicable if either 'it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized

[3] According to the Memorandum, the Chief Administrative Judge outlined the program for judges in a separate document.

exemptions;' or 'it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way.'" *Ferrelli*, 2022 US Dist LEXIS 39929 at *17, 2022 WL 673863 at *6, quoting *Kane*, 19 F4th at 165. To demonstrate that a law is not generally applicable, "there must be some showing that the exemption procedures allow secularly motivated conduct to be favored over religiously motivated conduct." *Ferrelli*, 2022 US Dist LEXIS 39929 at *17-18, 2022 WL 673863 at *6, quoting *Kane*, 19 F4th at 165.

UCS allowed employees to seek medical or religious exemptions from the Vaccination Policy. Petitioners have not demonstrated that respondents have created a system of individualized exemptions and refused to extend it to religious hardships. Nor have petitioners made a showing that the medical exemption has been favored over the religious exemption. Particularly, as of March 21, 2022, UCS has granted 549 religious exemptions (59.4%), while denying 375 religious exemptions (40.6%), and has granted 94 medical exemptions (32.3%), and denied 197 medical exemptions (67.7%). (NYSCEF Doc. No. 39, ¶15). Accordingly, this court finds that the Vaccination Policy constitutes one of general applicability.

**c. Application of the Religious Exemption Procedure to Petitioners**

Petitioners argue that UCS evaluated applications for religious exemptions in a way specifically designed to pass judgment on the legitimacy of the exemption applicants' professed religious beliefs, and therefore invited UCS to decide which professed religious belief is "worthy of solicitude."

Applications for religious exemptions to the Vaccination Policy were considered to determine if UCS employees had sincerely held religious beliefs and practices that prohibited them from receiving a COVID-19 vaccine. (NYSCEF Doc. No. 6). UCS employees seeking a religious exemption were to "submit their request by 5:00 p.m. on September 27, 2021, using the appropriate exemption form." (NYSCEF Doc. No. 6). The exemption request form was to be uploaded through the UCS Employee Web Portal. (NYSCEF Doc. No. 6). The Memorandum clearly stated that "[n]o exemption requests will be considered unless they are fully completed on the appropriate form and filed through the Portal." (NYSCEF Doc. No. 6). "Applications for religious exemption must contain the employee's written, signed and notarized statement detailing the religious basis for his/her objection to COVD-19 vaccination and the religious principle(s) that guild the objections to COVID-19 vaccination." (NYSCEF Doc. No. 6). Further, upon submitting an exemption

application, some employees were asked to fill out Supplemental Forms. (NYSCEF Doc. No. 6). Upon receipt of the supplemental form, employees were to upload the form to the UCS Employee Web Portal within 10 days. (NYSCEF Doc. No. 8). Employees were warned that "[f]ailure to submit this completed notarized supplemental form within the ten-day timeframe may result in your request for an exemption to be rejected." (NYSCEF Doc. No. 8). Furthermore, any judge or UCS employee who refuses to provide the requested information in the supplemental form is required to comply with the Vaccination Policy. (NYSCEF Doc. No. 8).

This court finds unavailing petitioners' argument that UCS's evaluation of religious exemptions is designed to pass judgment on the legitimacy of the exemption and invites UCS to decide which religious belief is "worthy of solicitude". "While a state.is not entitled to evaluate the legitimacy of religious beliefs, courts have made clear that the state is permitted to assess whether a belief is sincerely held and religious in nature." *Ferrelli*, 2022 US Dist LEXIS 39929 at *26, 2022 WL 673863 at *8, citing *United States v. Seeger*, 380 US 163, 185 [1965]; *Kane v. De Blasio*, 2021 US Dist LEXIS 239124, *13-14, 2021 WL 5909134, *5 [SD NY December 14, 2021 No. 21-CV-7863; 21-CV-8773].

Petitioners were not extended the religious exemptions based upon the following:

1) Petitioner Brignall did not answer the questions on the Supplemental Form and indicated that she had previously obtained vaccinations. (NYSCEF Doc. Nos. 1, ¶115; 7 and 39, ¶21).
2) Petitioner Cherenowsky submitted a late request for a religious exemption on October 18, 2021, and only partially completed the Supplemental Form. (NYSCEF Doc. Nos. 1, ¶127; 8 and 39, ¶22).
3) Petitioner DiPierro failed to state any nexus between his refusal to get the COVID-19 vaccine and his religious beliefs. (NYSCEF Doc. Nos. 1, ¶140; 9 and 39, ¶23).
4) Petitioner Hawley failed to include any discussion of her religious beliefs, and her post-denial untimely supplemental submissions dated November 22, 2021, failed to comply with the procedures established for the review process. (NYSCEF Doc. Nos. 1, ¶153; 10 and 39, ¶24).
5) Petitioner Kaelin submitted only a partially completed Supplemental Form. (NYSCEF Doc. Nos. 1, ¶164; 11 and 39, ¶25).

6) Petitioner Nania refused to complete the Supplemental Form requested by the Committee. (NYSCEF Doc. Nos. 1, ¶179; 12 and 39, ¶26).
7) Petitioner Pratt's untimely exemption request dated October 29, 2021, and supplemental submission dated December 6, 2021, failed to provide any information about what religious beliefs she held, as well as failed to comply with the procedures established for the review process. (NYSCEF Doc. Nos. 1, ¶192; 13 and 39, ¶27).

While petitioners raise concerns over the religious exemption process, in that the review process included consideration of: (i) whether the expressed belief was religious; (ii) whether the express belief was sincerely held; (iii) whether there was a nexus between the employee's religious belief and the decision to abstain from the COVID-19 vaccination; and (iv) whether the expressed beliefs were personal feelings against vaccination akin to a secular philosophy, such review falls within UCS's authority to determine whether a belief is sincerely held and religious in nature. *Seeger*, 380 US at 185. Accordingly, this court finds that the UCS Vaccination Policy exemption as applied to petitioners was neutral and generally applicable.

**d. Rational Basis Standard**

In arguing that the Vaccination Policy is not neutral, petitioners assert that the Vaccination Policy must therefore satisfy the strict scrutiny test, without discussing the rational basis standard. Respondents argue that the Vaccination Policy easily meets the rational basis standard in that UCS has chosen a means for addressing a legitimate goal that is rationally related to achieving the goal.

Where a mandate is deemed neutral and generally applicable, only a rational basis review is warranted. *Ferrelli*, 2022 US Dist LEXIS 39929 at *18, 2022 WL 673863 at *6. The rational basis standard "requires only that Defendants have chosen a 'means for addressing a legitimate goal that is rationally related to achieving that goal.'" *Ferrelli*, 2022 US Dist LEXIS 39929 at *19, 2022 WL 673863 at *6, quoting *Kane*, 19 F14th at 166.

As this court has found that the Vaccination Policy is neutral and generally applicable, the rational basis standard applies. UCS determined that to restart in-person operations and to maintain a safe environment for judges, non-judicial employees, and court users, it was necessary to implement the widespread use of vaccinations among its employees. (NYSCEF Doc. No. 39, ¶4-5). UCS deemed the Vaccination Policy essential to minimize the spread of COVID-19 throughout

UCS courtrooms and facilities, thereby protecting the safety of UCS employees and the public, avoiding shortages of essential staff members due to COVID-19 related illness and isolation periods, and enabling UCS to maintain an accessible forum for the administration of justice in accordance with its core mission. (NYSCEF Doc. No. 39, ¶5). Accordingly, implementing the Vaccination Policy for all judicial and non-judicial UCS employees is rationally related to achieving the goal of protecting the safety and health of UCS employees and the public, as well as maintaining an accessible forum for the administration of justice. *Ferrelli*, 2022 US Dist LEXIS 39929 at *19, 2022 WL 673863 at *6 [ND NY 2022], quoting *Kane*, 19 F14th at 166. Accordingly, the Vaccination Policy satisfies the rational basis standard. Petitioners have therefore failed to demonstrate a likelihood of success on the merits of their freedom of expression cause of action. [4]

**ii. Irreparable Harm**

Here, petitioners argue that they are entitled to injunctive relief due to the loss of constitutional freedoms.

The second prong of the preliminary injunction test is whether there will be irreparable harm if the provisional relief is withheld. *Axelrod*, 73 NY2d at 750. "A presumption of irreparable injury flows from a violation of constitutional rights." *We the Patriots USA, Inc. v. Hochul*, 17 F4th 266, 294 [2d Cir 2021], quoting *Agudath Isr. v. Cuomo*, 983 F3d 620, 636 [2d Cir 2020]. Moreover, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Agudath*, 983 F3d at 636.

As discussed above, petitioners have failed to demonstrate that they are likely to succeed on their claim that the manner in which respondents considered their applications for religious exemptions violate the Free Exercise Clause. Accordingly, petitioners are not entitled to a presumption of irreparable injury which would entitle them to injunctive relief. Furthermore, as the court has not found a likelihood of success on the merits, it need not consider whether

---

[4] Even assuming strict scrutiny applies, the Court finds that the religious exemption process utilized by UCS satisfies that rigorous test. *Ferrelli*, 2022 US Dist LEXIS 39929 at *25-26, 2022 WL 673863 at *8. Minimizing the spread of COVID-19 in UCS facilities is a compelling interest. *Id.* Moreover, UCS's religious exemption process, including a limited factual inquiry, is narrowly tailored to grant exemptions only to those UCS employees with sincerely held religious objections. *Id.*

petitioners have shown irreparable harm. *Ferrelli*, 2022 US Dist LEXIS 39929 at *27-28, 2022 WL 673863 at *9.

**iii. Balance of Equities**

Petitioners allege that it is never in the public interest to enforce a policy which violates the constitution. Petitioners further allege that UCS will not be harmed by permitting petitioners to return to work.

The third prong of the preliminary injunction review is a balancing of the equities. *Axelrod*, 73 NY2d at 750. The courts must weigh the interests of the general public and the interest of the parties to the litigation. *Destiny USA Holdings*, 69 AD3d at 223.

However, as the court has not found a likelihood of success on the merits or irreparable harm, it need not consider whether the balance of equities weigh in favor of granting an injunction. *Ferrelli*, 2022 US Dist LEXIS 39929 at *27-28, 2022 WL 673863 at *9.

**II. Motion to Dismiss**

Respondents in opposition to petitioners' order to show cause, filed a cross-motion to dismiss petitioners' Verified Petition and Complaint on the basis that it fails to state viable causes of action or allege the required elements of each cause of action. Petitioners, in opposition, assert that their Verified Petition and Complaint does assert detailed factual allegations in support of their cause of action, and that essential facts may be discovered and utilized to supplement opposition to a CPLR Rule 3211 motion to dismiss.

"A party may move for judgment dismissing one or more causes of action asserted against him on the ground that...the pleading fails to state a cause of action." CPLR 3211(a)(7). On a motion to dismiss pursuant to CPLR 3211, the court must accept each and every allegation as true, and liberally construe the allegations in the light most favorable to the pleading party and determine only whether the facts as alleged fit any cognizable legal theory. *Godino v. Premier Salons, Ltd*, 140 AD3d 1118, 1119 [2d Dept 2016]; *Leon v. Martinez*, 84 NY2d 83, 87-88 [1994]; *Nenno v. Blue Cross & Blue Shield*, 303 AD2d 930, 932 [4th Dept 2003]. However, bare legal conclusions which lack factual specificity and factual claims which are flatly contradicted by the evidence are not sufficient to withstand a motion to dismiss. *Vanscoy v. Namic USA Corp.*, 234 AD2d 680, 682 [3d Dept 1996]; *Scarfone v. Village of Ossining*, 23 AD3d 540, 541 [2d Dept 2005]; *Olszewski v. Waters of Orchard Park*, 303 AD2d 995, 995 [4th Dept 2003]. Even if the

facts as alleged in a complaint are accepted by the court as true, a complaint may still be dismissed if those allegations fail to give rise to a cause of action cognizable under the law. *Rosner v. Paley*, 65 NY2d 736, 738 [1985]. Additionally, failure to oppose an argument seeking to dismiss a claim constitutes abandonment of such claim. *Ellis v. Emerson*, 34 AD3d 1334, 1335 [4th Dept 2006]; *Kronick v. L.P. Thebault Co., Inc.*, 70 AD3d 648, 649 [2d Dept 2010]; *Genovese v. Gambino*, 309 AD2d 832, 833 [2d Dept 2003].

### A. Fourteenth Amendment – 42 USC 1983 Claims

Respondents move to dismiss petitioners' claims that the Vaccination Policy violated their Fourteenth Amendment rights.

#### i. Dismissal of Petitioners' 42 USC 1983 Claim against Respondent Unified Court System

Respondents argue that petitioners' Section 1983 claim against respondent UCS should be dismissed as it is not a "person" within the meaning of the statute.

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory....or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..." 42 USC 1983.

UCS is not a "person" within the meaning of 42 USC 1983. *Brown v. New York State Unified Ct. Sys.*, 261 Fed Appx 307, 307-308 [2d Cir 2008]; *Zuckerman v. Appellate Div., Second Dept., Supreme Ct. of New York*, 421 F2d 625, 626 [2d Cir 1970]. Consequently, petitioners' Verified Petition and Complaint fails to state a 42 USC 1983 claim for relief against respondent UCS. Moreover, petitioners failed to specifically oppose respondents' motion to dismiss as it relates to respondent UCS. Accordingly, respondents' motion to dismiss petitioners' 42 USC 1983 claim against respondent UCS is granted.

**ii. Dismissal of Petitioners 42 USC 1983 Claim against Respondents Justin A. Barry and Nancy J. Barry**

Respondents further argue that petitioners' 42 USC 1983 claim against respondents Justin A. Barry and Nancy J. Barry should also be dismissed. Respondents argue that in order to obtain any prospective injunctive relief, petitioners must show that respondents Justin A. Barry and Nancy J. Barry have a particular duty to enforce the Vaccination Policy and demonstrated a willingness to exercise that duty.

Where the moving party is seeking injunctive relief, there must be "both a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Roberson v. Cuomo*, 524 FSupp3d 196, 223 [SD NY 2021].

Petitioners' Verified Petition and Complaint alleges, in part, that respondents Nancy J. Barry and Justin A. Barry "had a duty to enforce the Vaccine Mandate as promulgated by Judge Marks" and further "demonstrated willingness to exercise their duty by ordering the termination of unvaccinated UCS employees." (NYSCEF Doc. No. 1, pg. 23). In support of their cross-motion, respondents submitted the affidavit of Justin A. Barry dated March 29, 2022, in which he asserts that neither he nor Nancy J. Barry have authority to unilaterally enforce the Vaccination Policy or to cause UCS to refrain from enforcing it, or to implement employment consequences which may flow from an employee's non-compliance with the Vaccination Policy. (NYSCEF Doc. No. 39, ¶7). Petitioners' bare legal conclusions as stated in their Verified Petition and Complaint are insufficient to state a cause of action. *Vanscoy*, 234 AD2d at 682; *Scarfone*, 23 AD3d at 541. Additionally, petitioners failed to specifically oppose respondents' motion to dismiss as it relates to respondents Justin A. Barry and Nancy J. Barry. Accordingly, respondents' cross-motion to dismiss petitioners' 42 USC 1983 claim against Justin A. Barry and Nancy J. Barry is granted.

**iii. Right to Privacy**

Respondents argue that petitioners' right to privacy claim should be dismissed, as such claims are analyzed within the due process framework. Respondents argue that petitioners cannot show that a protected interest is at issue.

Petitioners allege in their Verified Petition and Complaint that they are guaranteed the right to privacy, personal dignity, and individual autonomy which "are central to the liberty protected by the Fourteenth Amendment." (NYSCEF Doc. No. 1, pg. 37). Petitioners' Verified Petition and

Complaint alleges that respondents have forced petitioners to choose between continued employment and their constitutional right to privacy and personal autonomy in violation of the Fourteenth Amendment. (NYSCEF Doc. No. 1, pg. 38). However, the right to privacy is not absolute, and a constitutional violation will only be found when "the individual's interest in privacy outweighs the government's interest in breaching it." *Braden v. Sturges*, 139 NYS3d 400, 402 [3d Dept 2020]. Petitioners have failed to state a basis for concluding that the Vaccination Policy violates a fundamental constitutional right that is outweighed by UCS's interest in curbing COVID-19 in UCS facilities. "The Constitution embodies no fundamental right that in and of itself would render vaccine requirements imposed in the public interest, in the face of a public health emergency unconstitutional", including 'medical freedom' and 'bodily autonomy.' *We The Patriots*, 17 F4th at 293; *Donohue v. Hochul*, 2022 US Dist LEXIS 40138, *26, 2022 WL 673636, *9 [SD NY March 7, 2022, No. 21-CV-8463]; *Jacobson v. Massachusetts*, 197 US 11, 25-31, 37 [1905]; *Phillips v. City of New York*, 775 F3d 538, 542-543 [2d Cir 2015]. Consequently, respondents' motion to dismiss petitioners' right to privacy claim is granted.

**iv. Substantive Due Process**

Respondents argue that petitioners' substantive due process claims should be dismissed, as such claim requires a deprivation of a constitutionally protected right, and that property interests related to employment are not among protected fundamental rights.

"Substantive due process rights safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Guettlein v. United States Merchant Marine Academy*, 2021 US Dist LEXIS 244966, *10, 2021 WL 6015192, *4 [ED NY December 20, 2021, No. 21-CV-6443], quoting *Southerland v. City of New York*, 680 F3d 127, 151 [2d Cir 2012]. In analyzing a substantive due process claim, the constitutional right at stake must be identified and the moving party "'must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience' such that the Due Process Clause 'would not countenance it even were it accompanied by full procedural protection.'" *Guettlein*, 2021 US Dist LEXIS 244966 at *10-11, 2021 WL 6015192 at *4, quoting *Hurd v. Fredenburgh*, 984 F3d 1075, 1087 [2d Cir 2021]. However, "not all rights are entitled to protection. Only rights that are fundamental or implicit in the concept of ordered liberty are accorded protection under substantive due process." *Maniscalco v. New York*

*City Dept. of Educ.*, 2021 US Dist LEXIS 184971, *5, 2021 WL 4344267, *2 [ED NY September 23, 2021, No. 21-CV-5055], citing *Washington v. Glucksberg*, 521 US 702, 720-721 [1997].

Petitioners allege in their Verified Petition and Complaint that they have a liberty and/or property interest in continuing their employment while maintaining bodily autonomy free from "arbitrary deprivation from the state." (NYSCEF Doc. No. 1, pg. 39). The Memorandum distributed to non-judicial UCS employees, including petitioners, stated that "employees who fail to comply with the provisions of this Policy are prohibited from reporting to work and may be considered absent without authorization...Continued failure to comply may result in disciplinary action, up to and including termination." (NYSCEF Doc. No. 6). The Due Process Clause "secures the liberty to pursue a calling or occupation, and not the right to a specific job." *Maniscalco*, 2021 US Dist LEXIS 184971 at *6, 2021 WL 4344267 at *3. Although petitioners make an argument that the Vaccination Policy may end their careers, the Vaccination Policy does not completely prohibit petitioners from engaging in their chosen profession. Petitioners were given a choice, get vaccinated, request an exemption, or pursue similar employment at another public entity or a private entity without such mandates. Accordingly, any liberty and/or property interest in petitioner's continue public employment does not rise to the level of a fundamental right protected by substantive due process. *Guettlein*, 2021 US Dist LEXIS 244966 at *13-14, 2021 WL 6015192 at *5; *Maniscalco*, 2021 US Dist LEXIS 184971 at *5-6, 2021 WL 4344267 at *2. Moreover, mandating vaccination after the vaccine was given FDA approval in order to minimize the spread of COVID-19 throughout the UCS courtrooms and its facilities, during a public health crisis, is not so outrageous that it would violate petitioners' substantive due process rights. *Maniscalco*, 2021 US Dist LEXIS 184971 at *7-9, 2021 WL 4344267 at *3. Although petitioners assert that there are other less restrictive means for protecting UCS employees' health and welfare, it does not shock the conscience for UCS to conclude that vaccination was the best course of action, especially in light of the emergence of new COVID-19 variants at that time. *Maniscalco*, 2021 US Dist LEXIS 184971 at *8-9, 2021 WL 4344267 at *3. "A State may mandate vaccinations without violating the liberty secured by the Fourteenth Amendment of the United States Constitution." *C.F.*, 191 AD3d at 71, citing *Jacobson*, 197 US at 29-30; *New York City Mun. Labor Comm. v. City of New York*, 73 Misc3d 621, 626 [Sup Ct, New York County 2021, Laurence, J.]; *Phillips*, 775 F3d at 542. Consequently, respondents' motion to dismiss petitioners' substantive due process claim is granted.

**v. Procedural Due Process**

Respondents argue that petitioners' procedural due process claims should be dismissed, as such claims require a deprivation of a constitutionally protected right. Respondents argue that property interests related to employment are not among protected fundamental rights, and that constitutional rights may be reasonably restrained to protect public health.

A claim under procedural due process requires petitioners to establish the possession of a protected liberty or property interest, and a deprivation of that interest without constitutionally adequate process. *Broecker*, 2022 US Dist LEXIS 25104 at *14, 2022 WL 426113 at *5; citing *O'Connor v. Pierson*, 426 F3d 187, 195-196 [2d Cir 2005]. Petitioners allege in their Verified Petition and Complaint that they are public employees of UCS and have a liberty and/or property interest in their continued employment. (NYSCEF Doc. No. 1, pg. 41). Petitioners allege that by way of the Vaccination Policy, petitioners were given an ultimatum to submit to the vaccination or lose their employment. The right to Due Process protection arises when the moving party is "completely prohibited from engaging in his or her chosen profession." *Maniscalco*, 2021 US Dist. LEXIS 184971 at *6, 2021 WL 4344267 at *2, citing *Hu v. City of New York*, 927 F3d 81, 102 [2d Cir 2019]. Petitioners arguably have a protected property interest in their continued employment if the employee is guaranteed continued employment subject to discharge only for cause. *Marciano*, 2022 US Dist LEXIS 41151 at *25, 2022 WL 678779 at *9; *O'Connor*, 426 F3d at 196; *Broecker*, 2022 US Dist LEXIS 25104, *14, 2022 WL 426113 at *5. However, petitioners fail assert that they possess guaranteed continued employment subject to discharge only for cause. Accordingly, petitioners have failed to sufficiently assert that they have a protected property interest in their continued public employment in support of their procedural due process claim.

Petitioners additionally argue that they were not given fair notice of the Vaccination Policy because the Vaccination Policy failed to specify the need for all UCS employees to be vaccinated from COVID-19 and was therefore defective. However, only upon the finding of a protected property interest, must the court determine whether available processes are adequate. *Broecker*, 2022 US Dist LEXIS 25104 at *14, 2022 WL 426113 at *5. Nevertheless, petitioners' own exhibit (NYSCEF Doc. No. 6) demonstrates that a Memorandum was sent to all non-judicial personnel, including petitioners, providing them ample notice. The Vaccination Policy Memorandum formalized the requirement that all judges and non-judicial personnel were to be vaccinated by September 27, 2021. (NYSCEF Doc. No. 6). The Vaccination Policy Memorandum further

advised UCS employees of their ability to seek an exemption for medical reasons or sincerely held religious beliefs, with the exemption request submission due by September 27, 2021, at 5:00 p.m. (NYSCEF Doc. No. 6). The Vaccination Policy Memorandum additionally advised UCS employees that failure to comply with the Vaccination Policy prohibits that employee from reporting to work and that continued failure to comply may result in disciplinary action, up to and including termination. Accordingly, this court finds that "petitioners were provided sufficient notice and afforded an opportunity to be heard through the exemption process. The Constitution mandates only that such a process include, at a minimum, notice and opportunity to respond." *Marciano*, 2022 US Dist LEXIS 41151 at *27, 2022 WL 678779 at *10, quoting *O'Connor*, 426 F3d at 198. Petitioners fail to articulate how such a process was constitutionally inadequate. Consequently, this court finds that the Vaccination Policy provided notice and an opportunity to respond, and grants respondents' motion to dismiss petitioners' procedural due process cause of action.

**vi. Violation of the Equal Protection Clause**

Respondents aver that petitioners' equal protection claims fail as a matter of law since the assertion that vaccination status is a suspect class is without merit. Respondents further assert that the Vaccination Policy satisfies the rational basis standard as it is rationally related to preserving public health and safety.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." US Const. amend XIV, § 1. "To establish an equal protection violation, a § 1983 plaintiff must prove '(1) [that he], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Abadi*, 2022 US Dist LEXIS 21815 at *15-16, 2022 WL 347632 at *7; quoting *Freedom Holdings, Inc. v. Spitzer*, 357 F3d 205, 234 [2d Cir 2004]. "Where the law at issue 'neither burdens a fundamental right nor targets a suspect class,' the Court will uphold a 'classification so long as it bears a rational relation to some legitimate end.'" *Andre-Rodney v. Hochul*, 2021 US Dist. LEXIS 210105, *8, 2021 WL 5050067, *3 [ND NY November 1, 2021, No. 1:21-CV-1053]; quoting *Winston v. City of Syracuse,* 887 F3d 553, 560 [2d Cir 2018].

Petitioners' Verified Petition and Complaint alleges that the Vaccination Policy violates their rights under the Equal Protection Clause. (NYSCEF Doc. No. 1, pgs. 42-45). Petitioners, in their Verified Petition and Complaint, allege that the Vaccination Policy is solely directed at unvaccinated employees and discriminates against them on the basis of their immunity status. (NYSCEF Doc. No.1, pg. 43). Petitioners allege that respondents deprived unvaccinated, naturally immune UCS employees' access to their chosen careers and professions, while permitting vaccinated UCS employees to maintain their respective job positions and careers. (NYSCEF Doc. No. 1, pg. 43). Petitioners allege that such discrimination against identically situated individuals is without any rational basis. (NYSCEF Doc. No. 1, pg. 43). Although petitioners assert that the Vaccination Policy discriminates against them on the basis of their immunity status, petitioners do not allege that the Vaccination Policy discriminates against a protected class. The Vaccination Policy applies to all UCS employees. And as previously discussed, petitioners' asserted interest in continued public employment does not rise to the level of a fundamental right. Accordingly, "[w]here the law at issue 'neither burdens a fundamental right nor targets a suspect class,' the Court will uphold a 'classification so long as it bears a rational relation to some legitimate end.'" *Andre-Rodney*, 2021 US Dist LEXIS 210105 at *8, 2021 WL 5050067 at *3, quoting *Winston*, 887 F3d at 560; *Maniscalco*, 2021 US Dist LEXIS 184971 at *12, 2021 WL 4344267 at *5. As discussed above, the Vaccination Policy has a rational relation to the legitimate goal of curbing COVID-19 in UCS facilities. *Kane*, 19 F4th at 166; *Ferrelli*, 2022 US Dist LEXIS 39929 at *19, 2022 WL 673863 at *6. Consequently, respondents' motion to dismiss petitioners' equal protection clause cause of action is granted.

**B. Dismissal of Petitioner NYS Court Employees for Medical Freedom, Inc.**

Respondents assert that the claims by petitioner NYS Court Employees for Medical Freedom, Inc. should be dismissed for the independent reason that it has no standing to assert them. Based upon the foregoing decision of this court, respondents' motion relating to the dismissal of petitioner NYS Court Employees for Medical Freedom, Inc. is rendered moot.

**C. Attorneys' Fees**

Based upon the foregoing, petitioners' request for attorneys' fees pursuant to 42 USC § 1988(b), is denied, as their Verified Petition and Complaint is dismissed.

**ORDER AND JUDGMENT**

Accordingly, it is hereby:

**ORDERED and ADJUDGED** that petitioners' request for a preliminary injunction on their CPLR Article 78 cause of action is **DENIED**; and it is further

**ORDERED and ADJUDGED** that petitioners' request for a preliminary injunction on their Free Exercise Clause cause of action is **DENIED**; and it is further

**ORDERED and ADJUDGED** that respondents' cross-motion to dismiss petitioners' Verified Petition and Complaint pursuant to CPLR 3211 (a)(7) is **GRANTED**. Petitioners' Order to Show Cause and Verified Petition and Complaint are **DISMISSED**.

Dated: April 13, 2022

**HON. KEVIN M. NASCA**
**Supreme Court Justice**