J. Barry

A We were looking for really just yes-or-no answers in the questions to number one, two and three. We were looking for an explanation if the answers were yes in the subsequent question.

Again, we were looking for yes-or-no answers in four, five, six, seven and eight, and if the answer to eight was no, we were looking for an explanation as to how she would square her taking one vaccine or these vaccines rather than COVID-19 vaccines.

In Section B, we were looking for answers to those specific questions. She referred us to her statement which did not address any of those particular questions, and it's a fine statement that we would have taken no objection to as an attachment to the supplemental form, but we were specifically looking for direct answers to all the questions in A and B.

Q Why didn't anybody from UCS respond to Ms. Bergin and tell her that the committee was looking for specific answers to the questions in Section A and Section B and that what she gave, while fine in and of itself, was not the information you needed to make a final decision on her



J. Barry

application?

A Again, it was part of the process that we developed for the large amounts of applications that were made. We felt that the information and instructions on each of the forms that we asked the individuals to submit were very specific and clear, and if an individual refused to answer them, it was clear to us that they didn't want to answer them and that's fine, but it went to whether the individual was sincere in their explanation -- their religious beliefs and that's what we were trying to gauge.

Q Would it therefore have been the committee's assessment that Ms. Bergin was not sincere in her objection to the -- in her religious objection to the COVID-19 vaccination, or rather that the committee didn't have enough information to make that decision?

MR. SIUDZINSKI: Objection. You can answer.

A I can't get into the head of each committee member. It could be one or both.

Q Either way, ultimately this submission was considered insufficient in order to grant her an approval for her religious exemption?



J. Barry

A Correct.

Q Are you aware of any other reason besides the nonresponsiveness of her supplemental form for why her religious exemption application was denied?

A No.

Q If we can take a look please at Exhibit 12.

(Plaintiff's Exhibit 13, Marked for Identification.)

BY MR. WARSHAWSKY:

Q Strike that. Exhibit 13. Exhibit 13, I will describe for the record. This is a six-page document. It's not Bates-stamped. It is another supplemental affidavit form from Ms. Bergin, and this one for identification purposes was notarized on the 3rd of January 2022.

Do you have Plaintiff's Exhibit 13 in front of you?

A I do.

Q Do you know whether or not this copy of Ms. Bergin's supplemental form was ever submitted to any members of the committee to review?

A I have no direct knowledge of it, but I would doubt it.

Q Why would you doubt it?



J. Barry

A It looks like a second submission, which we did not entertain.

Q Did you entertain any second submissions from any employees during this process?

A Not to my knowledge, no.

Q Now, granted this is a hypothetical question, but had Ms. Bergin submitted the answers to the supplemental form that we see in Exhibit 13 as part of her original submission in response to the committee's query, would her application have been approved?

A I would have --

MR. SIUDZINSKI: Objection. You can answer.

A I would have voted for the application to be approved.

Q Thank you very much. I have a few wrap-up questions.

Mr. Barry, during today's deposition, have you testified truthfully and to the best of your knowledge in preparation as a 30(b)(6) witness?

A Yes.

Q Did you understand my questions today?

A Yes.