UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JESSICA BERGIN,

Plaintiff, Ind. No. 22-CV-5264 (BMC)

-against-

NEW YORK STATE UNIFIED COURT SYSTEM,

Defendants.
-------------------------------------------------------------------X

**DECLARATION OF MINDY JENG**

I, Mindy Jeng, declare:

1. I am employed as Administrative Counsel in the Office of Court Administration ("OCA"), the administrative arm of the New York State Unified Court System ("UCS") and have held that position since July 8, 2021.

2. In my role as Administrative Counsel, I assist the OCA Chief of Administration, Justin Barry, and the OCA Chief of Operations, Nancy Barry, in the oversight and administration of UCS. My responsibilities include assisting on various projects spearheaded by the Chief of Administration and the Chief of Operations, working on pending litigation cases, acting as a liaison with various UCS boards, and acting as Director of the Pro Bono Scholars Program.

3. I am submitting this declaration in support of UCS' motion for summary judgment and in opposition to plaintiff's proposed motion for summary judgment. I have personal knowledge of the facts set forth in this declaration.

***The Unified Court System's COVID-19 Employee Vaccination Policy and the Creation of the Vaccination Exemption Committee***

4. On September 10, 2021, UCS implemented its COVID-19 vaccine policy, applicable to all judicial and non-judicial staff. *See*, ECF #13-1, (UCS's "Ex. A")

5. In accordance with Title VII of the Civil Rights Act of 1964 and other

applicable laws, UCS gave its employees the opportunity to apply for medical and religious exemptions from the vaccination policy.

6. In order to review and consider employee applications for exemptions, UCS created its Vaccination Exemption Review Committee ("VEC"). The VEC's responsibilities and process for reviewing employee exemption applications is discussed in more detail in Justin Barry's Affidavit ("Barry Aff.") submitted in support of UCS' Motion for Summary Judgment.

7. Specifically, my role as attorney and counsel for the VEC included advising the VEC members of logistical and legal matters, oversight of the process for employees to submit their applications, redactions of applications (before review by the VEC voting members), coordinating and leading VEC meetings for purposes of reviewing employee applications and making determinations by committee vote, and recording the determinations of the VEC.

***UCS Employee Medical and Religious Exemption Applications***

8. Between September 10 and October 18, 2021—the deadline for submitting an application—approximately 1,200 UCS employees (out of approximately 16,000 total UCS employees) sought exemptions from UCS' vaccination policy on either medical or religious grounds. After October 18, 2021, UCS and the VEC allowed a limited number of employees to submit exemption applications under exceptional circumstances such as if the employee was on a leave of absence during the application period, newly hired employees, or if the employee recently developed or was diagnosed with a medical condition for which vaccination was contra-indicated.

9. In October 2021, after receiving and reviewing scores of completed application forms, the VEC found that the vast majority of applications seeking a *religious*

exemption professed one or both of the following reasons for not wanting to get the COVID-19 vaccine: (1) the applicant expressed a concern about the connection between fetal cells and the development of the COVID-19 vaccine; and or (2) the applicant expressed a concern about the sanctity or purity of his or her body.

10. The VEC also found in many cases that the applicants' statements did not provide sufficient information to adequately assess the requests, specifically to determine such things as whether an applicant's opposition to being vaccinated was based on a religious belief, as opposed to a philosophical belief or a concern about safety, and whether the applicant adhered to his or her belief consistently in regard to other vaccines and medical treatments, or if only in opposition to the COVID-19 vaccine.

11. As a result, the VEC created a supplemental form, titled Supplemental Affidavit of Religious Objection to COVID-19 Vaccination (the "supplemental form"), to obtain additional information from applicants in order to evaluate their exemption requests. Section A of the Supplemental Affidavit was designed to obtain additional information about the applicant's beliefs regarding the connection between COVID-19 vaccines and fetal cells. Section B was designed to obtain additional information about the applicant's beliefs concerning the sanctity or purity of his or her body.

12. The VEC granted or denied a very small number of applications based solely on an applicant's initial form. The VEC, however asked the vast majority of applicants seeking a religious exemption—more than 960—to submit the supplemental form by a date certain, approximately a week after being notified.

***The Religious Exemption Application Review Process***

13. Given the significant number of applications (over 1,200 or approximately 7.5% of all UCS staff) and the time needed by the VEC members needed to review, meet, and vote

on each application, the VEC divided itself into two working groups (Working Group A and Working Group B), with each group responsible for reviewing at least half of the total number of applications.

14. During the busiest period of time reviewing applications from October through December 2021, each VEC member, whether part of group A or group B, was required to review over 50-100 applications per week. With the VEC working as quickly as possible, it took the VEC approximately 12 weeks to review all 1,200 applications submitted.

15. To ensure impartiality and to avoid any pretense of bias or favoritism, the VEC determined that all employee applications would be anonymized to exclude identifying information before they were reviewed by the VEC voting members. Accordingly, I oversaw a separate team of three UCS employees tasked with redacting identifying information from all employee applications and supporting documentation. Similar to VEC voting members, these three UCS employees also had other full-time work responsibilities. I estimate that myself and the other three employees each spent on average four to five hours per week redacting employee applications and supporting documentation during this time period.

16. Both the full VEC and the working groups adopted a "blind" review process. In addition to redacting identifying information from the employees' applications and supporting documents before they were reviewed, VEC members did not speak with or communicate with applicants about their applications, and all applications were kept confidential. The blind review process was important to prevent bias or favoritism, but it also would have been logistically burdensome—if not impossible—for VEC voting members to meet with applicants as part of the review process.

17. During the same period, each working group would meet at least once per

week to discuss the applications and vote whether to grant or deny them. In light of each VEC voting members' regular job responsibilities, particularly during late 2021 when UCS administrators were still working to bring the court system back to full operation, it was often difficult to coordinate schedules to meet. A quorum of at least three working group voting members was required at each review meeting. Additionally, UCS's in-house Deputy Counsel Anthony Perri attended the majority of meetings of both working groups. A majority of the members of each working group present at a meeting was required to grant or deny an application.

18. If one of the working groups voted to deny an application, the application then went to the full VEC for further review. An application based on religious beliefs could be denied only if a *majority of a quorum of the full VEC* agreed—based on a second vote—that it should be denied. Due to the difficulties in scheduling meetings, the VEC decided that a quorum for a full VEC meeting was five out of the eleven voting members.

19. In sum, for the vast majority of applications, there were three levels of review before a religious exemption request could be denied (initial and supplemental working group review, and full VEC review); all reviews were done on a "blind" basis; and the review was solely to determine whether the applicant's opposition to being vaccinated was based on a sincerely held religious belief. Applications were not denied based on an employee's religious beliefs, the source thereof, or whether the applicant identifies with a particular religion. Employee applications professed adherence to a wide variety of religious beliefs and faiths, and the VEC granted exemptions for employees across the spectrum of such beliefs. The VEC did not in any way seek to assess the validity of any employee's beliefs.

***Granted Employee Applications***

20. The VEC granted a majority of employee applications.

21. Specifically, in regard to the requests for exemptions on religious grounds,

UCS records show that, through February 2, 2022,[1] the VEC had granted 536 of such requests (approximately 60% of those ruled upon) and had denied 363 (approximately 40% of those ruled upon). For instances in which the employee either retired, quit, was vaccinated, or applied for a medical exemption, the VEC did not issue decisions on their original requests.

22. The VEC granted a greater percentage of requests for religious exemptions than it did requests for medical exemptions. As of February 2, 2022, the VEC had granted 82 requests for medical exemption (approximately 33% of those ruled upon) and denied166 such requests (approximately 67% of those ruled upon).

23. Employees whose exemption requests were granted were notified of the approved exemption. In order to maintain the exemption, the employee was then required to submit proof of a weekly COVID test (whether the application was granted on religious or medical grounds) and continue wearing a mask and engage in social distancing while at work, all of which required monitoring by supervising staff. Each employee was provided with one hour of paid excused leave time to be tested until UCS ended its vaccination policy on February 15, 2023.

***Plaintiff's Application***

24. In accordance with UCS' vaccination policy, plaintiff made an application to be exempt from the UCS' vaccination on the basis of her religious beliefs.

25. On September 26, 2021, plaintiff submitted her application to be exempt from UCS' COVID-19 vaccination policy. *See*, ECF #13-2, (UCS's "Ex. B").

26. On November 8, 2021, UCS requested that plaintiff complete a supplemental form, including both Sections A and B thereof. *See*, ECF #13-3, (UCS's "Ex. C").

27. On November 26, 2021, plaintiff submitted her supplemental form. *See*,

[1] The vast majority of these applications were reviewed and voted on before December 31, 2021, except for limited circumstances as discussed above. *See* ¶ 8.

ECF #13-4, (UCS's "Ex. D")

28. Thereafter, VEC Working Group B reviewed plaintiff's application and supplemental form. Working Group B voted to deny plaintiff's application. Thereafter, pursuant to the VEC's internal procedures (*see* ¶ 18), plaintiff's application was reviewed by five members of the VEC who then voted and ultimately denied her request. According to my personal notes, kept as counsel for the VEC, the VEC denied her request on the basis that she had failed to adequately answer the questions in the supplemental form.

29. By letter, dated December 29, 2021, UCS informed plaintiff that her application had been denied and that she had until January 10, 2022 to submit evidence of receiving her vaccination dose or she would be considered unfit for duty on the basis that she could not enter UCS courthouses or facilities as an employee. *See*, ECF #13-5, (UCS's "Ex. E").

30. On January 3, 2022, plaintiff submitted a second version of the supplemental affidavit. *See*, ECF #16-1, (Plaintiff's "Ex. 1"). The VEC treated plaintiff's second submission as a new application to be exempt from its vaccination policy. Given that plaintiff was not on leave during the original application period, not a new hire, nor was her new application made on a medical basis, I informed her supervisors by email on January 4, 2022 that the new submission that she submitted on January 3, 2022 would not be considered by UCS or the VEC. Siudzinski Decl., UCS Ex. J.

31. On or about April 1, 2022, UCS found that plaintiff was not in compliance with its vaccination policy and that she did not intend to become vaccinated, nor had she been granted a religious or medical exemption. Accordingly, UCS terminated plaintiff's employment, along with 102 other employees, for failure to comply with the policy.

32. On February 15, 2023, UCS announced that it would be ending its COVID-19 vaccination policy effective February 17, 2023 and offered reinstatement to any

employee who had been terminated from employment—including plaintiff—or had quit in lieu of becoming vaccinated.

33. On or about June 22, 2023, plaintiff was reinstated to her position as Court Officer in the Richmond County Criminal Courthouse.

Pursuant to 28 U.S.C § 1746, I declare under penalty of perjury pursuant that the foregoing is true and correct.

Executed on July 28, 2023.

Mindy Jeng