UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
JESSICA BERGIN,

Plaintiff, Ind. No. 22-CV-5264 (BMC)

-against-

NEW YORK STATE UNIFIED COURT SYSTEM,

Defendants.
----------------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**


DAVID NOCENTI
Counsel
Office of Court Administration

Attorney for UCS
25 Beaver Street
New York, New York 10004
(212) 428-2150

MICHAEL J. SIUDZINSKI
Assistant Deputy Counsel
Of Counsel

ROBYN L. ROTHMAN
Associate Counsel
Of Counsel

## **Preliminary Statement**

Defendant New York State Unified Court System ("UCS") respectfully submits this Reply Memorandum of Law in opposition to plaintiff's motion for summary judgment and in further support of its motion for summary judgment. Plaintiff, by her motion for summary judgment, argues that there are no material facts in dispute concerning whether she has demonstrated a prima facie claim of Title VII failure to accommodate and whether UCS can assert a defense of undue hardship. *See*, Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment (hereinafter "Plaintiff's Memo"), p. 12-19.

UCS renews its arguments in favor of granting its motion for summary judgment and in opposition to plaintiff's motion because: (i) there are no genuine issues of material facts in dispute; (ii) plaintiff cannot demonstrate a prima face claim of failure to accommodate; (iii) UCS acted in good faith and reasonably under the exigent circumstances in refusing to consider late submissions and appeals for religious requests; and (iv) consideration of late submissions and appeals would have been an undue hardship on UCS operations.

## **Summary Judgment Standard of Review**

In opposing a summary judgment motion, the non-moving party "must come forward with 'specific facts showing that there is a *genuine issue for trial*[.]'" *Chiang v. Donahoe*, 579 Fed. App'x 39, 40 (2d Cir. 2014) (italics in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)). "[W]hen the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim, in which case the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact . . . to avoid summary judgment." *Berry v. Marchinkowski*, 2015 U.S. Dist. LEXIS

133764, at *55 (S.D.N.Y. Sept. 30, 2015) (internal quotations omitted). There are no genuine issues of material facts in this matter for a trial.

## ARGUMENT

In support of plaintiff's motion, she argues that: (i) UCS does not have an undue hardship defense; (ii) plaintiff has a bona fide, good faith religious objection to being vaccinated; (iii) plaintiff informed UCS of her religious objection; (iv) plaintiff was fired because she was not vaccinated; and (v) plaintiff was not required to answer UCS's questions in the supplemental form. Plaintiff's arguments (ii), (iii), and (iv) concern the three elements of a prima facie Title VII failure to accommodate claim are addressed collectively. *See*, *infra*, Point I.

## POINT I

### PLAINTIFF HAS NOT ESTABLISHED A PRIMA FACIE TITLE VII CLAIM FOR FAILURE TO ACCOMMODATE BECAUSE SHE FAILED TO TIMELY INFORM UCS OF HER ALLEGED RELIGIOUS BELIEFS

To establish a failure to accommodate claim under Title VII a plaintiff must demonstrate three elements: 1) she held a bona fide religious belief conflicting with an employment requirement; 2) she informed her employers of this belief; and 3) she was disciplined for failure to comply with the conflicting employment requirement. *See Baker v. Home Depot*, 445 F.3d 541, 543 (2d Cir. 2006)).

For purposes of UCS and plaintiff's respective motions for summary judgment, UCS has not raised as a defense any argument or facts concerning whether plaintiff has a bona fide religious belief (element 1) or whether she was disciplined for failing to comply (element 3). In contrast to plaintiff's arguments (Plaintiff's Memo, p. 13-14, 17), UCS does not "concede" either

point.[1] In contrast, there is no dispute that plaintiff failed to inform UCS of her alleged religious beliefs when she withheld information solely within in possession in response to UCS's supplemental form. *See* Compl. ¶¶ 23-25; UCS Exs. B, C, and D.[2]

Furthermore, plaintiff provides no legal or other argument that UCS was obligated to accept and consider her tardy second submission, made after UCS denied her first request. Indeed, plaintiff argues that there are essentially no specific requirements under Title VII, regulations, or case law, concerning the number, frequency, and timing of communications between employee and employer. UCS agrees with plaintiff and asserts that the parties are obligated to act reasonably and in good faith. *See Elmanayer v. ABF Freight Sys*., 2001 WL 1152815, at *5 (E.D.N.Y. Sept. 20, 2001) (*citing Thomas v. Nat'l Assoc. of Letter Carriers*, 225 F.3d 1149 (10th Cir. 2000)); *Cosme v. Henderson*, 2000 WL 1682755, at *6 (S.D.N.Y. Nov. 9, 2000). For all of the reasons detailed in UCS's motion for summary judgment, including the facts stated in the Barry Affidavit and Jeng Declaration, UCS acted reasonably and in good faith when it set deadlines for employee submissions and refused to consider late submissions and appeals, neither of which is prohibited under Title VII, regulations, or any case law. It was reasonable for UCS to set deadlines to avoid having employees conferring with each other and copying co-workers' requests after the fact. Knowing that its employees would discuss their submitted requests and which ones had been granted by UCS, it was reasonable for defendant to

[1] Indeed, UCS's response to plaintiff's contention interrogatory # 7, asking whether UCS contends that plaintiff did not have a bona-fide religious belief, holds no weight because discovery had not yet occurred concerning plaintiff's religious beliefs and UCS had no information to make a sufficient determination. Indeed, at the time of responding to plaintiff's interrogatories, UCS maintained its position that plaintiff had failed to adequately inform it of her religious beliefs and referred plaintiff to its answer in response to interrogatory #6, which asked for "all reasons" why UCS had denied her request. *See also*, *infra*, Point III (concerning plaintiff's contention interrogatory #9).

[2] Plaintiff's refusal to answer the questions on the supplemental form prevented UCS from assessing her sincerity. UCS could not previously dispute the sincerity of plaintiff's alleged beliefs ***because it had no basis of information to do so***, one way or the other. In contrast to plaintiff's argument, the sincerity of her beliefs, ***to be determined on what she provided at the time of her first request***, has not been established as a matter of law, nor can she backfill this requirement through tardy submissions and discovery during litigation.

preclude late submissions and appeals. Indeed, plaintiff concedes that she did this very thing before submitting her second request. *See*, *infra*, Point III, p. 9-10.

Plaintiff has failed to demonstrate a Title VII failure to accommodate claim. By her own admission, she cannot demonstrate that she informed UCS of her alleged religious beliefs—a necessary element of a religious discrimination claim—until after her request was denied and only after speaking with other UCS employees about their submissions. *See*, *infra*, Point III.

Lastly, the employer cannot be motivated to avoid providing an accommodation. *See EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015). Even if plaintiff satisfies all the elements for a Title VII failure to accommodate claim, she must also demonstrate that UCS had such a motive. *See id.* Plaintiff fails to identify any facts, or even allege, that UCS was motivated to avoid providing her—or any of its employees—with a reasonable accommodation. Whether or not UCS acted reasonably and in good faith, and whether or not UCS has demonstrated an undue hardship, the lack of any evidence suggesting a motive herein is fatal to plaintiff's claim. Accordingly, the Court should grant UCS's motion and dismiss this action.

## POINT II

### STATE AND FEDERAL COURTS HAVE PREVIOUSLY DETERMINED THAT UCS WAS WITHIN ITS RIGHTS TO REQUIRE ITS EMPLOYEES TO COMPLETE THE SUPPLEMENTAL FORM

Plaintiff argues that she "was not legally required to answer [UCS's] supplemental questionnaire." Plaintiff's Memo, p. 17-19. In order to establish a prima facie claim for failure to accommodate, plaintiff must inform her employer of her alleged beliefs, including answering all reasonable questions related thereto. This issue, as it pertains specifically to UCS's supplemental form, has already been addressed by federal and state courts, all of which have ruled that UCS was well within its rights to require its employees to complete the supplemental

form to obtain a religious exemption. *See Ferrelli v. State of New York Unified Court System*, 2022 WL 673863, at *6-9 (N.D.N.Y. Mar. 7, 2022) (finding that UCS's process for reviewing and determining employee vaccination exemption requests, including its requirement of completing both the original and supplemental forms, was constitutional and did not infringe on its employees' rights); *Ferrelli v. State of New York*, No. 031506/2022, at *16 (Sup. Ct. Rockland Co., Aug. 2, 2022) (finding that UCS was not required to "grant every request for a religious exemption, even where the request is incomplete or contains inconsistent or contradictory responses that undermine the stated reason for the request."); *Brignall v. Unified Court System*, Index No. E2022-0241CV (Sup. Ct. Steuben Co. 2022); *Ventrasca-Cohen v. DiFiore*, 77 Misc.3d 652 (Sup. Ct. Albany Co. 2022). Plaintiff's argument that she did not have to complete the supplement form is barred by collateral estoppel.

Plaintiff, in support of her argument, argues that neither Title VII, regulations, nor case law mandate any specific requirements to satisfy the interactive process and that the process is intended solely to determine what reasonable accommodation may be provided, if any. Plaintiff's Memo, p. 17-18. UCS agrees that the apparent purpose of the interactive process may be limited to finding a reasonable accommodation, not necessarily to determine if the employee (i) has a bona fide religious belief, and (ii) has informed her employer of her beliefs. *See* UCS's Memorandum of Law (ECF #31), p. 9, n. 4.

Regardless, the threshold burden is still on plaintiff to demonstrate each of the three elements of a prima facie case. Plaintiff argues, however, that an employee need only ask for a religious accommodation, citing a sincere belief, and the employer must then grant it (unless it has an undue hardship). Plaintiff then seemingly conflates issues of sincerity with verity, arguing that UCS could not ask additional questions concerning its employees' alleged religious beliefs.

In contrast to plaintiff's argument, neither Title VII nor case law require an employer to accept bald statements alleging "sincere" beliefs. Courts have repeatedly held, including as it pertains to UCS's vaccination policy and supplemental form, that it is reasonable and appropriate for an employer to ask follow-up questions in response to an employee's religious accommodation request and to expect honest and complete answers. *See Ferrelli v. NYS Unified Ct. System*, 2022 WL 673863, at *8-9; *see also Kane v. de Blasio*, 2021 WL 5909134, at *5 (S.D.N.Y. Dec. 14, 2021) (finding that a request for supplemental information was "geared towards developing a factual basis for reach a conclusion as to whether any particular Plaintiff's beliefs are sincerely held and religious in nature, both of which are permissible inquiries").

Furthermore, plaintiff's argument parsing sincerity versus verity is unclear, but to the extent she is arguing that an employer cannot question the truthfulness *of the belief itself*, that was never UCS's goal. *See Ferrelli*, 2022 WL 673863, at *8, *citing U.S. v. Seeger*, 380 U.S. 163, 185 (1965). UCS's stated purpose in requiring its employees to answer basic questions about their beliefs (the original request form) and how they follow those beliefs (the supplemental form) was to gauge consistency in order to evaluate the sincerity of its employees' claims. *See id.* Plaintiff's argument that she did not have to complete the supplemental form is barred by collateral estoppel.

## POINT III

### DEFENDANT'S CONTENTION INTERROGATORY RESPONSE DOES NOT FORECLOSE IT FROM ASSERTING UNDUE HARDSHIP AS A DEFENSE

Plaintiff premises her first argument that she is entitled to summary judgment on the notion that there is no dispute between the parties regarding undue hardship. Plaintiff's argument rests entirely on UCS's interrogatory response that was provided before the parties had

engaged in discovery. *See* Plaintiff's Memo, p. 12-13. Plaintiff is mistaken. As demonstrated in its motion for summary judgment, the issue is not whether providing plaintiff with an exemption would have been an undue hardship for UCS, but whether creating exceptions to its policy to allow late submissions and appeals was an undue hardship. *See* UCS's Memorandum of Law (ECF #31), p. 18-23. In any event, UCS's answer to the interrogatory should not be determinative of this issue, especially when compared to the detailed description of the limitations and hurdles UCS was facing in trying to balance its employees' rights with the operational goals and needs of New York's judiciary branch during the pandemic.

Courts within this district generally disfavor parties from seeking to elicit contentions through interrogatories before substantial discovery is conducted. *See Quinlo v. Aala*, 2021 WL 9561320 at *1 (E.D.N.Y. April 9, 2021). "Contention interrogatories are generally disfavored in the early stages of litigation." *See Suffolk County v. Lilco*, 1988 WL 69759 at *1 (E.D.N.Y. June 13, 1988). Plaintiff's interrogatory sought to elicit both a contention and facts to support a legal position before the parties had exchanged discovery or engaged in depositions.[3] Although UCS did contend that it would not have been an undue hardship to grant plaintiff's exemption, it did not admit it would not have been an undue hardship to allow a review of late submissions in general, *like* plaintiff's second submission. The interrogatory specifically asked, "if defendant contends that it would have caused an undue hardship to grant Ms. Bergin a religious exemption to the UCS COVID-19 vaccination policy…" Indeed, the question implicitly asks if it would have been an undue hardship for UCS to allow plaintiff to come to work wearing a mask and being subject to weekly COVID-19 testing in lieu of vaccination. Had plaintiff provided

[3] On February 16, 2023, this Court ordered that both parties exchange responses to demands on or before April 8, 2023. UCS responded to Plaintiff's demands on April 7, 2023. It did not receive Plaintiff's responses until April 10, 2023.

substantive answers in the supplemental form before the deadline, UCS would likely have granted the request as it did for some 663 other employee requests. *See e.g.*, Ex. K, Barry Transcript, p. 80. At the time, and without the knowledge obtained during discovery, UCS answered an overly broad and vague question to the best of its ability.

Throughout this case, UCS's position has been clear—plaintiff has failed to establish a prima facie case in the first instance because she failed to inform UCS of her religious beliefs. If this court were to find that plaintiff has established a prima facie case, however, UCS is entitled to assert undue hardship if it were required to allow late submissions, appeals, or other exceptions to its vaccination policy and review protocols.[4] In any event, UCS's answer to plaintiff's interrogatory is a prior inconsistent statement, and such statements are not determinative by themselves, but instead are weighed against latter statements. UCS's inarticulate response to plaintiff's interrogatory—provided after objecting thereto—pales in comparison to the overwhelming evidence produced demonstrating the undue hardship on UCS if it were required to accept late submissions and employee appeals of denials.

Whether UCS has demonstrated an undue hardship in this matter is a legal question, not factual. Mr. Barry's affidavit and his testimony establish that the process in and of itself was an undue hardship on UCS and, under the circumstances, the necessity of quickly re-opening all 220 UCS courthouses and facilities required that all employees comply with the policy in a timely

---

[4] In denying UCS's prior motion to dismiss (Order denying ECF #12, dated Nov. 27, 2022), this Court opined about the issue of the interactive process between the parties, further placing plaintiff on notice that the issues would come down to whether it was reasonable for UCS to deny her request despite her attempt to re-submit her supplemental affidavit or whether it would have been an undue hardship to allow for an exception to the UCS policy in considering her second submission, received after UCS denied her first request. It is UCS' contention that the issue for resolution by this Court would be whether plaintiff has established a prima facie claim and, if so, whether it was reasonable for UCS to reject her second submission and or whether it would have been an undue hardship on UCS to allow plaintiff to resubmit her exemption request after being denied and not whether granting Plaintiff's exemption request in the first instance would have been an undue hardship upon UCS.

manner. The undue hardship would have been to allow *any* submissions of exemption requests that were submitted past the deadlines, including plaintiff's late second submission. Mr. Barry testified about the policy at length during his deposition testimony which established how burdensome the process was for UCS. No rational factfinder could conclude that UCS's one-sentence answer to the interrogatory is more persuasive than the detailed description of UCS's process for reviewing vaccine exemption requests and its need for strict deadlines proscribing late submissions and appeals.[5]

By its motion for summary judgment, UCS has demonstrated that the establishment of its vaccination policy, its process allowing employees to seek an exemption, and its process for reviewing such employee submissions, were a significant undue hardship on UCS given the urgency of the circumstances and quantity of exemption requests received. UCS established that the purpose of setting deadlines was to further its goal of a quick and orderly return to in-person operations to obviate any further effects on the rights of litigants who were suffering harm resulting from the state-wide closure of all UCS courthouses due to the pandemic. UCS further demonstrated that the imposition of deadlines and prohibition on considering late submissions or appeals was necessary to prevent employee malfeasance by foreclosing any opportunity to copy submissions of other employees or speak with other employees about the substance of their requests.

Plaintiff's own discovery reflect that immediately upon receiving her denial, and before submitting her second supplemental affidavit, she was sharing and engaging with groups of UCS employees who were against the COVID-19 policy. *See* Siudzinski Supplemental Declaration,

---

[5] Furthermore, UCS's response to plaintiff's interrogatories were provided by defendant's attorneys who are not fact witnesses herein and did not have full knowledge of the underlying circumstances at the beginning of discovery in this action.

Ex. L (Bergin emails to "NYScourtemployees.nomandate@gmail.com", dated Dec. 29-30, 2021). By her own testimony she admits that throughout the process, from initial submission through the submission of her second supplemental, she discussed the substance of her and other exemption requests, including reviewing copies of requests that were being circulated. *Id.*, Ex. N, (Bergin Dep. T., p. 84-95, 150-54, 162, 167). Indeed, by plaintiff's own admission to UCS's Director of Human Resources, Carolyn Grimaldi, she was aware as early as January 1, 2022 that she had "been informed" that the denial of her request was based on "format" of her non-answers to the supplemental affidavit. *See id.*, Ex. M (Bergin email to C. Grimaldi, dated Jan. 1, 2021); Ex. N., Bergin T., p. 185-187.

UCS has sufficiently demonstrated that if it had not imposed strict deadlines, it would have faced an undue hardship by allowing a potentially endless string of employee submissions and appeals, further complicated by applicants who were discussing their responses with other colleagues in order to have their requests granted. Furthermore, had UCS made exceptions to its policy by entertaining late submissions and appeals, the already burdensome nature of the exemption review process would have been indefinitely extended. As such, UCS has firmly established that plaintiff cannot sustain her request for summary judgment because she failed to inform UCS of her religious beliefs in the first instance because she refused to provide the requested information and UCS has established that making an exception to only plaintiff out of the 363 applicants who were denied exemptions would have created a further undue hardship on its operations during the pandemic.

## **CONCLUSION**

For all of the foregoing reasons plaintiff's motion for summary judgment should be denied and UCS' motion to for summary judgment should be granted.

Dated: New York, New York
August 11, 2023

Respectfully submitted,

DAVID NOCENTI
Counsel – Office of Court Administration
Attorney for UCS
By:

/S/
MICHAEL J. SIUDZINSKI
Assistant Deputy Counsel
25 Beaver Street
New York, New York 10004
(212) 428-2150

MICHAEL J. SIUDZINSKI
Assistant Deputy Counsel
Of Counsel

ROBYN L. ROTHMAN
Associate Counsel
Of Counsel