UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JESSICA BERGIN,

Plaintiff,

v.

NEW YORK STATE UNIFIED COURT SYSTEM,

Defendant.

**22-CV-5264-BMC**

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

***Oral Argument Requested***

Steven M. Warshawsky, Esq.
The Warshawsky Law Firm
*Attorney for Plaintiff*

Plaintiff Jessica Bergin, by her undersigned attorney, respectfully submits this memorandum of law in opposition to Defendant New York State Unified Court System's motion for summary judgment (ECF Docs. 27-31) and states as follows[1]:

Defendant's motion for summary judgment – including a 24-page brief, a 27-page affidavit from Justin Barry (UCS Chief of Administration), and an 8-page declaration from Mindy Jeng (UCS Administrative Counsel) – amounts to the argument that Plaintiff's complaint should be dismissed because Bergin did not answer (the first time) each of the highly specific questions on the UCS supplemental questionnaire, but instead submitted another personal statement reiterating her religious objections to the COVID-19 vaccine [*see* UCS Ex. D]. This is an utterly preposterous position, for which Defendant does not offer <u>any</u> relevant legal support.

Despite Title VII having been enacted in 1964, and despite the Supreme Court recognizing nearly 50 years ago that Title VII imposes an affirmative obligation on employers "to make reasonable accommodations, short of undue hardship, for the religious practices of [their] employees," *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977), Defendant does not cite *a single case* holding that an employee who requests a religious accommodation under Title VII has a legal duty to answer an employer's detailed questions about his or her religious beliefs and practices. No Supreme Court precedents. No Second Circuit precedents. No other circuit court precedents. Not even any district court precedents. Furthermore, nothing in the Title VII statutes and regulations supports this extreme position. So where does this supposed legal duty come from?

According to Defendant, it is part of the so-called "interactive process" – for which Defendant quotes from a hodgepodge of cases, most of which arise under the Americans

[1] Plaintiff respectfully refers the Court to her own motion for summary judgment and incorporates herein the factual and legal arguments set forth in her supporting memorandum of law (ECF Doc. 26-1), which, in the interest of brevity, will not be repeated in this brief.

With Disabilities Act and none of which is on point. The only Title VII cases cited by Defendant – *Elmenayer v. ABF Freight Sys.*, No. 98-CV-4061(JG), 2001 WL 1152815 (E.D.N.Y. Sept. 20, 2001), and *Cosme v. Henderson*, 98-CV-2754(VM), 2000 WL 1682755 (S.D.N.Y. Nov. 9, 2000), *aff'd*, 287 F.3d 152 (2d Cir. 2002) – have nothing to do with the facts of this case.

In *Elmenayer*, the district court dismissed (on summary judgment) the plaintiff's religious accommodation claim for two reasons: first, because the plaintiff "had not informed [his employer] of his religious practice of participating in Friday prayers until after [he] was disciplined for violating work rules," 2001 WL 1152815, at *5; and, second, because the employer in fact offered him a reasonable accommodation, *id.* at *6. In *Cosme*, the district court ruled in favor of the defendant (after a bench trial) because "it made good faith efforts to accommodate Cosme reasonably." 2000 WL 1682755, at *6. Neither of these cases involved the employer asking, or the employee failing to answer, detailed questions about the employee's religious beliefs and practices. (Nor do any of the other cases cited by Defendant.) It is truly striking that despite 50 years of case law – all of which is accessible via Westlaw – this is all Defendant offers in support of its position. Striking but not surprising, because Defendant's position is not the law.

Here, unlike in *Elmenayer*, Bergin notified UCS of her religious objections to the COVID-19 vaccination policy using the prescribed forms and following the prescribed procedures. Compl. ¶ 21; Ans. ¶ 21. Bergin supported her request with a three-page personal statement that included an extensive list of scriptural citations, along with a personalized, signed letter from her pastor. Compl. ¶¶ 22, 23; Ans. ¶¶ 22, 23. Defendant's 30(b)(6) witness – Chief of Administration Justin Barry – testified that Bergin's application for a religious exemption was "perfectly adequate" and "explained a religious belief based upon a number of issues that she presents . . . ." Barry Depo. at 73-74. Mr. Barry also

testified that the personal statement Bergin submitted in lieu of answering the supplemental questionnaire was "a fine statement that we would have taken no objection to as an attachment to the supplemental form . . . ." *Id.* at 77. Furthermore, Defendant does not dispute that Bergin has a bona fide, good faith religious objection to the COVID-19 vaccines. *See* Def. Response to Interrogatory No. 7. Nor does Defendant contend that granting Bergin a religious exemption would have caused an undue hardship. *See* Def. Response to Interrogatory No. 9; *see also* Barry Depo. at 25 (testifying that "undue hardship" was not considered by UCS when deciding whether or not to approve religious exemptions). Yet, in sharp contrast with both *Elmenayer* and *Cosme*, UCS did not offer Bergin a reasonable accommodation.

As stated in Plaintiff's opening brief – in light of the undisputed evidence as admitted in the Answer, in Defendant's responses to Plaintiff's interrogatories, and in Defendant's 30(b)(6) deposition testimony – Defendant's position in this case is factually and legally untenable. Defendant argues that "Plaintiff cannot establish a prima facie claim of Title VII religious discrimination based on her first exemption request because she failed to inform UCS of her religious beliefs through the interactive process." (Def. Memo. at 8.) False. It is undisputed that Bergin informed UCS of her religious objection to the COVID-19 vaccines in her initial application. Defendant cites no cases showing that Bergin's initial application was insufficient as a matter of law – on the contrary, Mr. Barry testified it was "perfectly adequate."[2]

[2] *Cf. Quadir v. New York State Dep't of Labor*, 39 F. Supp.3d 528, 540 (S.D.N.Y. 2014) (cited by Defendant at 11) (noting that "[w]hat matters under the ADA [and Rehabilitation Act] are not formalisms about the manner of the request, but whether the employee . . . provides the employer with enough information that, *under the circumstances*, the employer can be fairly said to know of both the disability and desire for an accommodation") (brackets and italics in original) (citation omitted) (denying motion to dismiss). Here, it is undisputed that UCS knew that Bergin was asserting a religious objection to the COVID-19 vaccination policy and requesting an exemption.

At most, Bergin's failure to answer (the first time) each of the highly specific questions on the supplemental questionnaire might support UCS's argument that she lacks a bona fide, good faith religious objection to the COVID-19 vaccines – except that Defendant already conceded this point. Bergin's sincerely held religious belief is undisputed.

Defendant next argues (actually, the first argument in its brief) that Plaintiff "must demonstrate that UCS was actively trying to avoid providing her with a reasonable accommodation." (Def. Memo. at 7.) This rather confusing argument is based on a misreading of *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015). The *Abercrombie* case was a *failure to hire* case, not a failure to accommodate case, although the issues were intertwined because the plaintiff argued that she was not hired because the store did not want to provide her with a religious accommodation to its dress code. In *Abercrombie* the Supreme Court explained that the plaintiff was required to show that the decision not to hire her was "taken with the *motive* of avoiding the need for accommodating a religious practice." *Id.* at 774.

But the case at bar is not a failure to hire case. Here, it is undisputed that Bergin requested a religious accommodation to UCS's COVID-19 vaccination policy, that UCS considered but denied her request, and that Bergin was terminated as a result of not complying with the policy. This is a textbook *failure to accommodate* case, for which a plaintiff is not required to show some kind of discriminatory motive in addition to the denial of a reasonable accommodation. Plaintiff counsel is aware of no cases involving failure to accommodate claims in which such a requirement is articulated. *See*, *e.g.*, *Patel v. NYU Langone Hospitals*, 2021 WL 4852426 (2d Cir. Oct. 19, 2021) (sum.) (describing elements of failure to accommodate claim, citing *Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006)) (post-*Abercrombie*).

Next, after much discussion the relevance of which is unclear, Defendant argues that "neither Title VII not prior caselaw mandate, much less suggest, that UCS should have given plaintiff another opportunity to be forthcoming in her submissions." (Def. Memo. at 14.) Plaintiff agrees. UCS was not legally required to accept and consider Bergin's second set of answers to the supplemental questionnaire.

Nevertheless, Bergin provided more than sufficient information to notify UCS about her religious objections to the COVID-19 vaccination policy in her original application and in her initial response to the supplemental questionnaire. Under well-established Title VII law, UCS could have decided to deny Bergin's exemption on the grounds either that she lacks a sincerely held religious belief or that granting an exemption would have caused an undue hardship (both of which Bergin would have disputed, of course). What's notable about this case is that UCS *proffered neither of these defenses*. Instead, Defendant relies on some strict "interactive process" rule – whereby Bergin supposedly was legally required to answer each of the highly specific questions on the supplemental questionnaire – a rule that does not exist under Title VII (and would be contrary to the remedial purpose of the statute). Defendant is trying to fashion a defense despite conceding the only grounds for denying a religious accommodation. Again, this is factually and legally untenable.

Next, Defendant engages in a lengthy discussion of other cases upholding the legality of UCS's COVID-19 vaccination policy. (Def. Memo. at 14-18.) This is beside the point. Plaintiff is not challenging the policy, only the decision to deny *her* a reasonable religious accommodation. Although Defendant states in its argument heading (at 14) that "Courts have deemed UCS' process reasonable under the law and therefore plaintiff's claim is barred by collateral estoppel," there's no analysis in the body of the brief as to how Plaintiff's failure to accommodate claim would be barred by collateral estoppel. Rather, it

appears that this argument is aimed at the question whether "UCS should have allowed late submissions" (Def. Memo. at 15), which is not Plaintiff's contention.

Lastly, Defendant engages in a lengthy discussion of undue hardship. (Def. Memo. at 18-23.) This also is beside the point. Defendant is not asserting an undue hardship defense in this case. Again, it appears that this argument is aimed at the question whether "UCS should have extended its deadlines or considered late requests and submissions" (Def. Memo. at 23), which is not Plaintiff's contention.

Although the factual and legal significance of Bergin's second set of answers to the supplemental questionnaire was an important issue at the start of the case, now that Defendant has answered the Complaint and the parties have completed discovery, it no longer is relevant. As demonstrated in Plaintiff's opening memorandum of law, *Defendant admits every element of Plaintiff's claim* – that she has a bona fide, good faith religious objection to the COVID-19 vaccine, that she notified UCS of her belief, that she was terminated because she refused to take the vaccine, and that it would not have caused an undue hardship to grant her an exemption. Nothing more is required for Plaintiff to prevail – as shown by all existing Title VII caselaw. There is no support for Defendant's argument that Bergin violated some strict "interactive process" rule – because there is no such rule. Even if there were such a rule, it would not apply here because Defendant concedes that Bergin has a bona fide, good faith religious objection to the COVID-19 vaccine. Plaintiff hardly can be faulted, let alone have her case dismissed, for supposedly interfering with her employer's inquiry into the sincerity of her beliefs, when Defendant does not dispute that her beliefs are sincere.

Accordingly, for the reasons set forth above and in Plaintiff's opening memorandum of law, Defendant's motion for summary judgment should be denied and summary judgment should be entered in favor of Plaintiff with respect to Count One of the Complaint (Violation of Title VII), and this case should be scheduled for a trial on damages only.

Dated: August 11, 2023

Respectfully submitted,

By: /s/ *Steven M. Warshawsky*

STEVEN M. WARSHAWSKY
The Warshawsky Law Firm
*Attorney for Jessica Bergin*
118 North Bedford Road, Suite 100
Mount Kisco, New York 10549
T: (914) 864-3353
E: smw@warshawskylawfirm.com